*Exhibit 9*

AFFIDAVIT OF BHARAT M. TOLIA, M.D.

1. I, Bharat M. Tolia, M.D. ("Bharat Tolia"), have personal knowledge of the facts and circumstances set forth in this affidavit, and if called as a witness, am competent to testify as set forth.

2. I offer the facts in this affidavit voluntarily and I have consulted with counsel as to the facts set forth herein.

3. I have provided this affidavit to place into context some of my experiences while working as an independent contractor for Universal Health Group, also known as Michigan Spine & Rehabilitation during the approximate period of 2010 through 2011.

4. During that period, I was paid on a per case/patient basis to perform patient neurological evaluations and conduct electro-diagnostic testing for that practice's patients.

5. I understood that Scott Zack and David Katz directed the operations at Universal Health Group.

6. During that time as an independent contractor, I received directions from David Katz that I was to include the phrase "*continue chiropractic care*" on my reports, regardless of the fact that in my professional practice, I do not make such chiropractic care recommendations to patients. I routinely disregarded this instruction.

7. I also recall that there were several occasions when several Universal patients told me that someone had called them after their auto accident for the purpose of directing them to Universal for treatment arising out of the auto accident. Based on this, I surmised that Universal may have used such a system to obtain patients.

8. During my tenure as an independent contractor, I also noticed that a number of Universal patients had several MRI's ordered. Dr. Chintan Desai, a Florida radiologist, nearly always read these MRI's. Based on my approximately 30 years of experience of review of neurological treatment of patients, it was my distinct impression that virtually all of the reports issued by this radiologist were "over-read," i.e., the report noted findings that were too excessive to be consistent with my clinical evaluation, such as often containing abnormalities that likely either did not exist or had no clinical significance, or that did not correlate with my clinical findings.

9. I related this issue to David Katz, that the films were being "over-read". I suggested that the practice obtain another radiologist to read the films. I never received any response from David Katz.

10. I was aware that Dr. Loren Chudler was the Medical Director at Universal. Although I consulted for many Universal patients, Dr. Chudler never contacted me to discuss findings, conclusions, or to coordinate any care with any patient.

11. Universal paid me approximately $100-$150/patient to evaluate each Universal patient, $250/patient for electronic diagnostic testing, and

$75 for follow-up testing, and $75.00/patient for follow-up consultation.

12. I had no knowledge of their charges to any insurer or patient for my services, and I was shocked when I was told at a deposition out that Universal was billing thousands of dollars for these same services. I do not bill these amounts for the same services in my own practice, nor in my experience would any insurer pays such fees directly to me for these services.

13. My employment was terminated during 2011. My impression was that I was terminated because it was felt by those at Universal that I was not referring a sufficient number of patients for additional care, or a sufficient number of tests or procedures, or because I did not include the "chiropractic instructions" as I have been requested.

FURTHER, AFFIANT SAITH NOT

_____
Bharat M. Tolia, M.D.

Subscribed and Sworn to before
me this 6th day of November, 2013
_____
Danella J. Woods, Notary Public
Oakland County, Michigan
My Commission Expires: 07/16/2019

DANELLA J WOODS
Notary Public, State of Michigan
County of Oakland
My Commission Expires Jul. 16, 2019
Acting in the County of _____