UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                Plaintiff,                    Civil Action No. 2:14-cv-10266

v.                                      Hon. Stephen J. Murphy III

UNIVERSAL HEALTH GROUP, INC.
A/K/A MICHIGAN SPINE AND REHAB,
UHG MANAGEMENT, LLC,
PROFESSIONAL HEALTH SYSTEMS,
LLC A/K/A PROFESSIONAL MEDICAL
BILLING, LLC, SCOTT P. ZACK, D.C.,
DAVID M. KATZ, D.C., LOREN C.
CHUDLER, D.O., JOSEPH F. DESANTO,
HORIZON IMAGING, LLC, CLEAR
IMAGING, LLC, JEFF S. PIERCE, D.O.,
THOMAS D. CARUSO, D.O., and
KATHERINE H. KARO, D.O.,

                Defendants.

_____/

**DEFENDANTS ZACK AND KATZ'S**
**MOTION TO DISMISS THE COMPLAINT**

      Defendants Scott P. Zack, D.C. and David M. Katz, D.C., by their attorneys,

Butzel Long, a professional corporation, move for dismissal of the Complaint

pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

Defendants rely on the arguments and legal authority set forth in their Brief filed in

support of this Motion.

Concurrence of counsel in the relief requested herein was sought on April 7, 2014, but concurrence was denied.  Hence it was necessary to file this motion.

WHEREFORE, Defendants respectfully request that this Court enter an order dismissing the Complaint in its entirety pursuant to Rules 9(b) and 12(b)(6).

Respectfully submitted,

BUTZEL LONG, a professional corporation

By:/s/ Michael J. Lavoie
    Michael J. Lavoie (P32584)
    Robin Luce Herrmann (P46880)
    Ziyad I. Hermiz (P72236)
150 W. Jefferson Ave., Suite 100
Detroit, Michigan  48226
(313) 225-7000
lavoie@butzel.com
luce-herrmann@butzel.com
hermiz@butzel.com
*Attorneys for Defendants Scott P. Zack, D.C.
and David M. Katz, D.C.*

Dated:  April 7, 2014

1461546.1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

             Plaintiff,                      Civil Action No. 2:14-cv-10266

v.                                    Hon. Stephen J. Murphy III

UNIVERSAL HEALTH GROUP, INC.
A/K/A MICHIGAN SPINE AND REHAB,
UHG MANAGEMENT, LLC,
PROFESSIONAL HEALTH SYSTEMS,
LLC A/K/A PROFESSIONAL MEDICAL
BILLING, LLC, SCOTT P. ZACK, D.C.,
DAVID M. KATZ, D.C., LOREN C.
CHUDLER, D.O., JOSEPH F. DESANTO,
HORIZON IMAGING, LLC, CLEAR
IMAGING, LLC, JEFF S. PIERCE, D.O.,
THOMAS D. CARUSO, D.O., and
KATHERINE H. KARO, D.O.,

             Defendants.

_____/

## BRIEF IN SUPPORT OF DEFENDANTS ZACK AND KATZ'S MOTION TO DISMISS THE COMPLAINT

Defendants Scott P. Zack, D.C. and David M. Katz, D.C., by their attorneys, Butzel Long, a professional corporation, submit the following brief in support of their Motion to Dismiss the Complaint Pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure:

## TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED ........................................................... iv

CONTROLLING AUTHORITY .......................................................... vii

INDEX OF AUTHORITY ...........................................................x

I.  INTRODUCTION ...........................................................1

II.  FACTUAL BACKGROUND...........................................................2

   A.  Michigan's No-Fault Insurance Act ...........................................................2

   B.  State Farm's Failed Legislative Efforts To Reduce No-Fault Benefits and
      Reimbursements Paid to Injured Persons and Medical Providers............5

   C.  Plaintiff's Unsupported Allegations ...........................................................6

      1.  Summary of Plaintiff's Claims ...........................................................6

      2.  Conclusory and Factually Unsupported Allegations ...........................8

         a.  The Complaint ...........................................................8

         b.  The Affidavits ...........................................................10

            i.  Dr. Aria O. Sabit ...........................................................11

            ii.  Dr. Bharat M. Tolia ...........................................................15

III.  STANDARD OF REVIEW ...........................................................16

IV.  ARGUMENT ...........................................................19

   A.  RICO Pleading Requirements...........................................................19

      1.  18 U.S.C. § 1962(c) ...........................................................19

      2.  18 U.S.C. § 1962(d)...........................................................20

   B.  The 1962(c) Claim - (Fourth Cause of Action)...........................................20

1.  The Complaint Fails to Plausibly Plead an Enterprise.......................20

2.  The Complaint Fails to Plausibly Plead that Defendants "Conducted the Affairs" of the Enterprise.................................................24

3.  The Complaint's Allegations of Mail Fraud Fail to Meet the Requirements of Fed. R. Civ. P 9(b).......................................29

4.  Having Failed to Properly Plead Mail Fraud, the Complaint Fails to Plead a Pattern of Racketeering Activity.................................33

5.  The Complaint Fails to Specifically Address the Continuity Requirements with respect to the Alleged RICO Pattern.................33

6.  The RICO Claim (or a portion of it) is Time Barred..........................35

C.  The 1962(d) Claim- (Fifth Cause of Action).................................39

D.  This Court should abstain from hearing this case pursuant to the *Colorado River* and *Buford* doctrines.........................................41

1.  *Colorado River* Doctrine.........................................41

2.  *Burford* Doctrine.................................................44

E.  Collateral Estoppel Compels Dismissal of The Complaint or Portions Thereof.................................................................47

F.  State Farm Has Voluntarily Waived Any Right to Contest the Propriety of Claims Previously Paid.................................................51

G.  State Farm's State Law Claims Must Also Be Dismissed.........................51

1.  Common Law Fraud Claim - (Second Cause of Action)....................51

2.  Unjust Enrichment Claim - (Third Cause of Action).....................52

3.  Portions of State Farm's Common Law Fraud and Unjust Enrichment Claims are Time Barred.................................54

**4. The Court Should Decline to Exercise Supplemental Jurisdiction Over the State Law Claims**.................................................**55**

**H. State Farm's Declaratory Judgment Claim (First Cause of Action) is Not Proper**.................................................**55**

**V. CONCLUSION**.................................................**59**

## STATEMENT OF ISSUES PRESENTED

I.    Whether this Honorable Court should dismiss Plaintiff's First Cause of Action requesting a Declaratory Judgment under 28 U.S.C. § 2201 because the *Scottsdale* factors favor that the Court decline to exercise jurisdiction on State Farm's declaratory judgment claim?

        Defendants Answer: **Yes**

II.   Whether this Honorable Court should dismiss Plaintiff's Second Cause of Action for Common Law Fraud asserting liability for all claims for reimbursement submitted by Defendants before January 21, 2008, because common law fraud's six-year statute of limitations bars Plaintiff's recovery on all such requests for reimbursement?

        Defendants Answer: **Yes**

III.  Whether this Honorable Court should dismiss Plaintiff's Third Cause of Action against all Defendants for Unjust Enrichment for failure to state a claim upon which relief can be granted because: (a) such claim is precluded by the existence of a written insurance agreement, (b) Plaintiff merely recites the elements of unjust enrichment in conclusory fashion, (c) Plaintiff's unjust enrichment claim is grounded in fraud and Plaintiff has failed to meet the pleading requirements of Fed. R. Civ. P. 9(b) with respect to the asserted Common Law Fraud and RICO claims, and (d) unjust enrichment's six-year statute of limitations bars Plaintiff's recovery on all payments before January 21, 2008?

        Defendants Answer: **Yes**

IV.   Whether this Honorable Court should dismiss Plaintiff's Fourth Cause of Action, asserting Defendants' violation of 18 U.S.C. § 1962(c), for failure to state a claim upon which relief can be granted because: (a) the Complaint fails to plausibly plead an enterprise, (b) the Complaint fails to plausibly plead that Defendants Zack and Katz "conducted the affairs" of the alleged enterprise, (c) the Complaint fails to plead a pattern of racketeering activity, and (d) the Complaint fails to specifically address the continuity requirements with respect to the alleged RICO pattern?

iv

Defendants Answer: **Yes**

V.   Whether this Honorable Court should dismiss Plaintiff's Fifth Cause of Action, asserting Defendants' violation of 18 U.S.C. § 1962(d), because the Complaint fails to plausibly plead that Defendants: (a) agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity or (b) that each Defendant further agreed that someone would commit at least two predicate acts to accomplish those goals?   Alternatively, the 1962(d) claim fails because Plaintiff has failed to plausibly plead a violation of 1962(c)?

Defendants Answer: **Yes**

VI.   Whether this Honorable Court should dismiss Plaintiff's Second, Fourth and Fifth Causes of Action because Plaintiff has failed to meet the specificity pleading requirements of Fed. R. Civ. P. 9(b) with respect to the asserted Common Law Fraud, Unjust Enrichment, and RICO claims?

Defendants answer: **Yes**.

VII.   Whether this Honorable Court should dismiss Plaintiff's Fourth and Fifth Causes of Action asserting liability under the Rico Statute for all claims for reimbursement submitted by Defendants before January 21, 2010, because the RICO Statute's four-year statute of limitations bars Plaintiff's recovery on all such requests for reimbursement?

Defendants Answer: **Yes**

VIII.   Whether this Honorable Court should dismiss Plaintiff's Complaint in its entirety or appropriate portions thereof on the basis of Collateral Estoppel?

Defendants Answer: **Yes**

IX.   Whether this Honorable Court should abstain on the basis of the *Colorado River* or *Burford* Abstention Doctrines?

Defendants Answer: **Yes**

v

X.      Whether this Honorable Court should dismiss Plaintiff's Complaint or appropriate portions thereof on the basis of Waiver/Laches?

      Defendants Answer: **Yes**

XI.     Whether this Honorable Court should decline to exercise supplemental jurisdiction over Plaintiff's State Law Common Law Fraud and Unjust Enrichment Claims where Plaintiff's federal claims are properly dismissed?

      Defendants Answer: **Yes**

## <u>CONTROLLING AUTHORITY</u>

I.    28 U.S.C. § 2201 and Fed. R. Civ. P. 57, as well as the decisions in *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995); *Aetna Casualty and Sur. Co. v. Sunshine Corp.*, 74 F.3d 685 (6th Cir. 1996); and *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008), dictate that the relief sought in the first issue presented in this Motion be granted.

II.   Mich. Comp. Laws §§ 600.5813 and 600.5827 dictate that the relief sought in the second issue presented in this Motion be granted.

III.  Fed. R. Civ. P. 9(b) and Mich. Comp. Laws §§ 600.5813 and 600.5827, as well as the decisions in *Oak St. Funding, LLC v. Ingram*, 749 F. Supp. 2d 568 (E.D. Mich. 2010); and *Matthews v. Mortg. Elec. Registration Sys.*, 2011 U.S. Dist. LEXIS 69501 (E.D. Mich. Apr. 5, 2011), dictate that the relief sought in the third issue presented in this Motion be granted.

IV.   18 U.S.C. §1962(c), as well as the decisions in *Boyle v. U.S.*, 556 U.S. 938 (2009); *U.S. v. Turkette*, 452 U.S. 576 (1981); *VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696 (6th Cir. 2000); *All Erection & Crane Rental Corp. v. Acordia Nw., Inc.*, 162 Fed. Appx. 554 (6th Cir. 2006); *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721 (7th Cir. 1998); *Hall Am. Ctr. Assocs. Ltd. Partnership v. Dick,* 726 F. Supp. 1083 (E.D. Mich 1989); *Reves v. Ernst & Young*, 507 U.S. 170 (1993); *Cedric Kushner*

vii

*Promotions, Ltd. v. King*, 533 U.S. 158 (2001); *Melton v Blankenship*, 2009 US App LEXIS 686 (6th Cir. 2009), *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985); *H. J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989); and *Percival v. Girard*, 692 F. Supp. 2d 712 (E.D. Mich. 2010), dictate that the relief sought in the fourth issue presented in this Motion be granted.

V.   18 U.S.C. §1962(d), and the decisions in *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998); and *Craighead v. E.F. Button & Co.,* 899 F.2d 485, 495 (6th Cir. 1989), dictate that the relief sought in the fifth issue presented in this Motion be granted.

VI.   Fed. R. Civ. P. 9(b), as well as the decisions in *Frank v. Dana Corp.*, 547 F.3d 564 (6th Cir. 2008); *Boston v. Clark*, 2012 U.S. Dist. LEXIS 130496 (E.D. Mich. Sept. 13, 2012); *Paycom Billing Services, Inc. v. Payment Resources International,* 212 F. Supp. 2d 732 (W.D. Mich. 2002); and *Yaldo v. Deutsche Bank Nat'l Trust Co.*, 2010 U.S. Dist. LEXIS 125784 (E.D. Mich. Nov. 30, 2010), dictate that the relief sought in the sixth issue presented in this Motion be granted.

VII.   The decisions in *Rotella v. Wood*, 528 U.S. 549 (2000); *Isaak v. Trumbull S&L Co.*, 169 F.3d 390 (6th Cir. 1999); *Williams v. AAA Michigan*, 250 Mich. App. 249 (2002); and *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365 (2003), dictate that the relief sought in

the seventh issue presented in this Motion be granted.

VIII. The United States Constitution, Art. IV, § 1 and 28 U.S.C. § 1738, as well as the decisions in *Allen v. McCurry*, 449 US. 90 (1980); *Migra v. Warren City School Dist.*, 465 U.S. 75 (1984); *Storey v. Meijer, Inc.*, 431 Mich. 368 (1988) and *Monat v. State Farm Ins. Co.*, 469 Mich. 679 (2004), dictate that the relief sought in the eight issue presented in this Motion be granted.

IX. The decisions in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996); *Rouse v. Daimler Chrysler Corporation*, 300 F.3d 711 (6th Cir. 2002); and *Gentry v. Wayne County*, 2010 U.S. Dist. LEXIS 123365 (E.D. Mich. 2010), dictate that the relief sought in the ninth issue presented in this Motion be granted.

X. Mich. Comp. Laws § 500.3142(2)*,* and the decision in *Angott v. Chubb Group of Ins. Cos.*, 270 Mich. App. 465 (2006), dictate that the relief sought in the tenth issue presented in this Motion be granted.

XI. The decisions in *Carter v. Mich. Dep't of Corr.*, 2013 U.S. Dist. LEXIS 134781 (E.D. Mich. 2013); *Sanders v. Mich. First Credit Union Tellers*, 2010 U.S. Dist. LEXIS 80908 (E.D. Mich. 2010); and *Grossman v. DTE Energy Co.*, 2010 U.S. Dist. LEXIS 133572 (E.D. Mich. 2010), dictate that the relief sought in the eleventh issue presented in this Motion be granted.

# INDEX OF AUTHORITY

## Cases

*Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*,
  257 Mich. App. 365 (2003) ...................................................................38

*Agency Holding Corp. v. Mally-Duff & Assocs., Inc.*,
  483 U.S. 143 (1987)............................................................................35

*All Erection & Crane Rental Corp. v. Acordia Nw., Inc.*,
  162 Fed. Appx. 554 (6th Cir. 2006)....................................................19

*Allen v. McCurry*,
  449 US. 90 (1980)...............................................................................48

*American Home Assurance Co. v. Evans*,
  791 F.2d 61 (6th Cir. 1986) ................................................................58

*Andersons, Inc. v. Consol, Inc.*,
  348 F.3d 496 (6th Cir. 2003) ..............................................................52

*Angott v. Chubb Group of Ins. Cos.*,
  270 Mich. App. 465 (2006) .................................................................51

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................... 8, 16

*Beck v. Cantor Fitzgerald & Co.*,
  621 F. Supp. 1547 (N.D. Ill. 1985)......................................................20

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................... 10, 16, 17, 22, 31, 39

*Boston v. Clark*,
  2012 U.S. Dist. LEXIS 130496 (E.D. Mich. Sept. 13, 2012) ............53

*Boyle v. U.S.*,
  556 U.S. 938 (2009).............................................................................21

*Burford v. Sun Oil Co.*,
  319 U.S. 315 (1943).............................................................................44

*Carter v. Mich. Dep't of Corr.*,
  2013 U.S. Dist. LEXIS 134781 (E.D. Mich. 2013)...............................................55

*Cedric Kushner Promotions, Ltd. v. King*,
  533 U.S. 158 (2001)...............................................25

*Central Distributors of Beer, Inc. v. Conn*,
  5 F.3d 181 (6th Cir. 1993) ...............................................30

*Cook v. Cashler*,
  2013 U.S. Dist. LEXIS 66663 (W.D. Mich. 2013) ...............................................11

*Craighead v. E.F. Button & Co.*,
  899 F.2d 485 (6th Cir. 1989)...............................................20

*Dahlgren v First National Bank of Holdrege*,
  533 F.3d 681 (8th Cir. 2008) ...............................................25

*DeLorean v. Cork Gully*,
  118 B.R. 932 (E.D. Mich. 1990)...............................................30

*Durant v. Servicemaster Co.*,
  159 F. Supp. 2d 977 (E.D. Mich. 2001) ....................................... 19, 33

*Foster v. Argent Mortg. Co., L.L.S.*,
  2010 U.S. Dist. LEXIS 27926 (E.D. Mich. Jan. 25, 2010) ...............................................53

*Gentry v. Wayne County*,
  2010 U.S. Dist. LEXIS 123365 (E.D. Mich. 2010)...............................................41

*Goren v. New Vision Int'l, Inc.*,
  156 F.3d 721 (7th Cir. 1998) ....................................... 24, 40

*Gotham Prints, Inc. v American Speedy Printing Ctrs., Inc.*,
  863 F. Supp. 447 (E.D. Mich. 1994) ...............................................32

*Grossman v. DTE Energy Co.*,
  2010 U.S. Dist. LEXIS 133572 (E.D. Mich. 2010)...............................................55

*H. J. Inc. v. Nw. Bell Tel. Co.*,
  492 U.S. 229 (1989)...............................................34

*Haisha v. Countrywide Bank,*
   *FSB*, 2011 U.S. Dist. LEXIS 61443 (E.D. Mich. June 8, 2011) ........................18

*Hall Am. Ctr. Assocs. Ltd. Partnership v. Dick*,
   726 F. Supp. 1083 (E.D. Mich 1989) ..................................................... 19, 24, 30

*Handeen v. Lemaire*,
   112 F.3d 1339 (8th Cir. 1997) ............................................................27

*Hanover Exch. v. Metro Equity Group LLC*,
   2009 U.S. Dist. LEXIS 59992 (E.D. Mich. July 14, 2009) .................................18

*Harrison v. Westinghouse Savannah River Co.*,
   176 F.3d 776, 784 (4th Cir. 1999) .....................................................32

*In re American Honda Motor Co. Dealerships Relations Litig.*,
   941 F.Supp. 528 (D. Md. 1996)..........................................................26

*In re Sofamor Danek Group*,
   123 F.3d 394 (6th Cir. 1997) .............................................................11

*Int'l Dairy Foods Ass'n v. Boggs*,
   2009 U.S. Dist. LEXIS 27074 (S.D. Ohio 2009) ....................................6

*Jackson v Segwick Claims Mgt. Servs., Inc.*,
   699 F.3d 466 (6th Cir. 2012) ...................................................... 18, 45

*Jackson v. City of Columbus*,
   194 F.3d 737 (6th Cir. 1999) ............................................................6

*Matthews v. Mortg. Elec. Registration Sys.*,
   2011 U.S. Dist. LEXIS 69501 (E.D. Mich. Apr. 5, 2011) ..................................53

*Melton v Blankenship*,
   2009 US App LEXIS 686 (6th Cir. 2009) ..........................................27

*Migra v. Warren City School Dist.*,
   465 U.S. 75 (1984)........................................................................49

*Monat v. State Farm Ins. Co.*,
   469 Mich. 679 (2004) .....................................................................49

*Moon v. Harrison Piping Supply*,
    375 F. Supp. 2d 577 (E.D. Mich. 2005) ............................................................45

*Moore v. First Security Cas. Co.*,
    224 Mich. App. 370 (1997) ...............................................................................51

*Muci v State Farm Mutual Automobile Ins. Co.*,
    478 Mich. 178 (2007) ..........................................................................................3

*Oak St. Funding, LLC v. Ingram*,
    749 F. Supp. 2d 568 (E.D. Mich. 2010) ............................................................52

*Paycom Billing Services, Inc. v. Payment Resources International*,
    212 F. Supp. 2d 732 (W.D. Mich. 2002) ...........................................................30

*Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.*,
    879 F.2d 10 (2d Cir. 1989) ................................................................................21

*Quackenbush v. Allstate Ins. Co.*,
    517 U.S. 706 (1996)...........................................................................................46

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993)...........................................................................................24

*Reynolds v. Condon*,
    908 F. Supp. 1494 (N.D. Iowa 1996) ................................................................27

*Rohlman v Hawkeye-Security Insurance*,
    442 Mich. 520 (1993) ..........................................................................................3

*Ross v. MERS/MERSCORP Holdings, Inc*,
    2013 U.S. Dist. LEXIS 61329 (E.D. Mich. Apr. 30, 2013) ........................ 31, 37

*Rotella v. Wood*,
    528 U.S. 549 (2000)..................................................................................... 35, 36

*Rouse v. Daimler Chrysler Corporation*,
    300 F.3d 711 (6th Cir. 2002) .............................................................................44

*Sanders v. Mich. First Credit Union Tellers*,
    2010 U.S. Dist. LEXIS 80908 (E.D. Mich. 2010)..............................................55

xiii

*Schmidt v. Fleet Banks*,
    16 F. Supp. 2d 340 (S.D.N.Y. 1998) ....................................................25

*Schultz v. Tecumseh Products*,
    310 F.2d 426 (6th Cir. 1962) ..............................................................42

*Scottsdale Ins. Co. v. Flowers*,
    513 F.3d 546 (6th Cir. 2008) ..............................................................56

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985) ............................................................................19

*Shavers v Kelley*,
    402 Mich. 554 (1978) ..........................................................................3

*Stephens, Inc. v. Geldermann, Inc.*,
    962 F.2d 808 (8th Cir.1992) ......................................................... 21, 23

*Storey v. Meijer, Inc.*,
    431 Mich. 368 (1988) ..........................................................................49

*U.S. v Indelicato*,
    865 F.2d 1370 (2d Cir. 1989) ............................................................20

*U.S. v. Turkette*,
    452 U.S. 576 (1981) ..................................................................... 21, 23

*United States ex rel. Marlar v. BWXT Y-12, L.L.C.*,
    525 F.3d 439 (6th Cir. 2008) ..............................................................31

*United States v. Diaz*,
    176 F.3d 52 (2d Cir. 1999) ................................................................25

*VanDenBroeck v. CommonPoint Mortg. Co.*,
    210 F.3d 696 (6th Cir.2000) ..............................................................22

*Vickers Stock Research Corp. v. Quotron Sys.*,
    1997 U.S. Dist. LEXIS 10837 (S.D.N.Y. 1997)................................25

*Williams v. AAA Michigan*,
    250 Mich. App. 249 (2002) ................................................................38

*Williams v. Pledged Prop. II, LLC*,
    508 Fed. Appx. 465 (6th Cir. 2012)....................................................................52

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995)...........................................................................................56

*Yaldo v. Deutsche Bank Nat'l Trust Co.*,
    2010 U.S. Dist. LEXIS 125784 (E.D. Mich. Nov. 30, 2010)..............................31

## Statutes

18 U.S.C. § 1962 ............................................................................................ 19, 20
18 U.S.C. § 1962(c) ............................................................................ 7, 19, 20, 25, 41
18 U.S.C. § 1962(d) .............................................................................. 7, 20, 39, 41
18 U.S.C. § 1964(c) ...............................................................................................19
28 U.S.C. § 1738 ..................................................................................................48
28 U.S.C. § 2201(a) ..............................................................................................55

## Rules

Fed. R. Civ. P. 12(b)(6)........................................................................ 2, 16, 50, 59
Fed. R. Civ. P. 57 ..................................................................................................55
Fed. R. Civ. P. 9(b) ............................................................................ 2, 18, 29, 30, 59
MCL 500.3101 ........................................................................................................2
MCL 500.3105 ........................................................................................................4
MCL 500.3107(1)(a) ...................................................................................... 4, 43, 46
MCL 500.3116 ........................................................................................................5
MCL 500.3142(2) ............................................................................................. 37, 51
MCL 500.3146 ........................................................................................................5
MCL 500.3157 ........................................................................................................5
MCL 600.5813 ......................................................................................................54
MCL 600.5827 ......................................................................................................54

## Other Authorities

Gregory P. Joseph, CIVIL RICO: A DEFINITIVE GUIDE (3d ed. 2010) .............. 20, 36
U.S. Const., Art. IV, § 1……………………………………………………………..48

xv

# I.  <u>INTRODUCTION</u>

Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") filed this action against twelve (12) corporate and individual Defendants (collectively, "Defendants").   State Farm's central claim is that Defendants submitted via the US mail fraudulent medical No-Fault Act claims to State Farm in violation of 18 U.S.C. §§ 1962(c) and 1962(d) of the RICO statute. This central claim and all its tangential permutations are fatally flawed.   No amount of recasting them or increasing their number can save Plaintiff's case.

As demonstrated by the Complaint's conclusory deficient allegations and lack of factual support, State Farm's claims are without merit.  The Complaint – and particularly the RICO claims – is nothing more than an attempt to back-door the Michigan Legislature's No Fault System.  State Farm and its counterparts in the insurance industry have notoriously filed scores of similar lawsuits and claims against hundreds of other Defendants as part of a manifest effort to suppress medical providers' rights to reimbursement under Michigan's No-Fault Act.  State Farm attempts in this case to achieve through litigation what it has not been able to accomplish through legislative change.

Furthermore, State Farm failed to inform this Court that most of the alleged fraudulent claims that form the basis for State Farm's complaint actually involve the same claims, defenses and/or issues that have already been settled, litigated to

1

final judgment, or are currently pending in Michigan state courts.

Perhaps the most egregious transgression is that State Farm's claims principally rely on the conclusory and unsubstantiated affidavit of Dr. Sabit, who has been disgraced and engulfed in legal malpractice claims and investigations, none of which were disclosed in his affidavit. As detailed below, State Farm's distorted use of this "sworn" statement and the material omissions regarding Dr. Sabit's history is so egregious as to raise considerations of Rule 11 sanctions.

The above litany of deficiencies dictate that State Farm's claims are entirely without merit, and should be dismissed pursuant to Fed. R. Civ. P. 9(b) and Fed. R. Civ. P. 12(b)(6).

## II. <u>FACTUAL BACKGROUND</u>

### A. <u>Michigan's No-Fault Insurance Act</u>

State Farm's claims center on the submission of purportedly fraudulent insurance claims by medical providers for reimbursement of services provided to patients injured in automobile accidents pursuant to Michigan's No-Fault Insurance Act, MCL 500.3101 *et seq* (the "No-Fault Act"). The No-Fault Act

> was offered as an innovative social and legal response to the long payment delays, inequitable payment structure, and high legal costs inherent in the tort (or "fault") liability system. The goal of the no-fault insurance system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses. The Legislature believed this goal could

2

> be most effectively achieved through a system of
> compulsory insurance whereby every Michigan motorist
> would be required to purchase no-fault insurance or be
> unable to operate a motor vehicle legally in this state.
> Under this system, victims of motor vehicle accidents
> would receive insurance benefits for their injuries as a
> substitute for their common-law remedy in tort.

*Shavers v Kelley*, 402 Mich. 554, 578-579 (1978).[1]

Since *Shavers*, the Michigan Supreme Court has reiterated the comprehensive nature of the no-fault statutory scheme. In *Muci v State Farm Mutual Automobile Ins. Co*., 478 Mich. 178, 187-188 (2007) it stated:

> From our first handling of this statute in an advisory
> opinion issued in 1973, *Advisory Opinion re
> Constitutionality of 1972 Pa. 294*, 389 Mich 441, 208
> NW2d 469 (1973), we have, without exception,
> emphasized the act's comprehensive nature. What is
> unmistakable about this first-party payment scheme is
> that it was designed to cover contingencies that could
> arise, including, as relevant here, the process for making
> a claim, the procedures for investigation by the insurer,
> and the range of available enforcement tools. All of
> which are found within the four corners of the act.

In *Rohlman v Hawkeye-Security Insurance*, 442 Mich. 520, 525 (1993), the Michigan Supreme Court reiterated that the statute is the "rule book" for deciding issues regarding awarding insurance benefits.

The No-Fault Act requires every owner or registrant of a motor vehicle in

---

[1] Emphasis supplied throughout, and footnotes and citations omitted throughout, unless otherwise noted.

3

Michigan to carry insurance.  Conversely, the no-fault act requires an insurer to pay benefits under the law to or for the benefit of the insured individual. "An insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." MCL 500.3105.   No-fault benefits are statutorily referred to as "*personal protection insurance benefits*" and are often referred to as "*PIP benefits*;" "*no-fault benefits*;" "*first party benefits*;" or "*economic loss benefits*." Under Michigan law, these PIP benefits are typically paid by the victim's own insurance company and are always paid regardless of who was at fault for the accident.

No-fault PIP benefits payable under Michigan's system include certain "allowable expenses" which are statutorily described as "***all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery or rehabilitation***." MCL 500.3107(1)(a).  The statute contains no further definition of the scope and extent of these allowable expenses. However, various court decisions have established that allowable expenses include a wide variety of products and services, including medical and hospital expenses; in-home nursing or attendant care; residential accommodations; room and board expenses; physical and vocational rehabilitation; special motor vehicle transportation; medical transportation mileage; guardianship expenses; etc.

Although the statute as a whole focuses on the insurer and the insured

4

individual named in the policy, the No-Fault Act also provides that:

> A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, may charge a reasonable amount for the products, services and accommodations rendered.

MCL 500.3157.

Insureds can assign their contractual right to no-fault benefits to providers of medically necessary services and, pursuant to the assignments, providers may submit the insureds' claims directly to insurers. The No-Fault Act does not contain any provision for the recovery of benefits paid to or for the benefit of the person named in the policy except for the limited circumstances set forth in MCL 500.3116. (*See also* MCL 500.3146).

## B. State Farm's Failed Legislative Efforts To Reduce No-Fault Benefits and Reimbursements Paid to Injured Persons and Medical Providers

It is well documented that for many years State Farm and its fellow constituents in the insurance industry have made numerous attempts to change Michigan's No Fault Insurance Act for their own financial benefit.  For example, the industry attempted to place a cap on the state's currently unlimited medical benefits for those injured in a crash and limit hospital fees and payments for in-home care. *See e.g*., **Exhibits 1 & 2**, 2011 H.B. 4936 and legislative analysis of

same; *see also* **Exhibit 3**, 2011 S.B. 0294.[2]  The insurance industry's efforts have been unsuccessful and have been highly criticized by various government leaders.

This instant lawsuit is an attempt to achieve through litigation what State Farm has not been able to achieve through legislative change.  State Farm and its counterparts in the insurance industry have filed scores of RICO and other similar lawsuits against hundreds of other medical providers around the country as part of an blatant effort to suppress the rights of medical providers' to receive reimbursement.[3]

## C. Plaintiff's Unsupported Allegations

### 1. Summary of Plaintiff's Claims

Plaintiff's Complaint conclusorily claims that "Defendants have submitted, or caused to be submitted, fraudulent bills for medically unnecessary evaluations, chiropractic and physical therapy treatments, MRIs and electro diagnostic tests ("EDX Tests") purportedly provided to patients . . . who were involved in motor vehicle accidents." (Dkt. #1, Complaint, ¶ 1).  State Farm conclusorily alleges that

---

[2] The court can take judicial notice with respect to legislative history.  *See e.g.*, *Int'l Dairy Foods Ass'n v. Boggs*, 2009 U.S. Dist. LEXIS 27074, at *50, n.17 (S.D. Ohio 2009) (reversed in part on other grounds).  This case, together with all other LEXIS cites and unpublished decisions cited herein, are attached as **Exhibit 13**.

[3] A simple PACER search with State Farm as a plaintiff for RICO complaints is revealing in this regard.  The Court can take judicial notice of same.  *See e.g., Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999) (courts may take judicial notice of public records).

services were performed pursuant to a fraudulent predetermined protocol whereby Defendants conducted fraudulent medical evaluations and tests (that were either not performed and/or resulted in false diagnoses) to in turn support fraudulent chiropractic and physical therapy treatments, MRIs and EDX Tests (that were either not performed and/or were not medically necessary for an injured person's care, recovery, or rehabilitation). (*Id.* ¶¶ 1, 5, 7-8, 10, 13-14, 17, 27, 29, 90, 126-127, 142-252).  The Complaint claims this protocol was knowingly designed by all of the Defendants to support fraudulent reimbursement charges submitted to State Farm using the U.S. Mail and that this purported scheme "began in 2007, and has continued uninterrupted since that time." (*Id.* ¶ 29).   State Farm asserts the following five causes of action: (1) Declaratory Judgment under 28 U.S.C. § 2201 (against Defendant's Universal, Horizon and Clear only), (2) Common Law Fraud (all Defendants), (3) Unjust Enrichment (all Defendants), (4) Violation of 18 U.S.C. § 1962(c) of the RICO statute (all Defendants) and (5) Violation of 18 U.S.C. § 1962(d) of the RICO statute (all Defendants).   For its declaratory judgment claim, State Farm seeks a declaration that it need not pay Defendants Universal, Horizon and Clear for requests for reimbursements that remain pending. (*Id.* ¶¶ 257-261).  For all other claims, State Farm seeks damages, including treble damages and attorneys' fees, for all payments previously made in response to Defendants' allegedly fraudulent billing from 2007 to the present (*Id.* ¶¶ 262-285).

7

## 2. Conclusory and Factually Unsupported Allegations

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009), requires the court, as a first step in its review of a complaint under a Motion to Dismiss, to identify and disregard conclusory allegations. *Id.* at 1951. Then, accepting as true the remaining allegations, the court determines whether the claim is plausible. *Id.* at 1950.

Although quite lengthy, the Complaint is replete with conclusory allegations that must be disregarded. Many of these allegations are addressed below regarding the Complaint's failure to meet particular pleading requirements. The following additional conclusory allegations, however, demonstrate the regrettable liberties Plaintiff has taken to manufacture a valid RICO claim where none exists.

### a. The Complaint

The Complaint offers no factual basis whatsoever to support the allegation that there was a "Fraudulent Predetermined Protocol" a central premise of the RICO claim.[4]  (*See e.g.*, Dkt. #1, ¶¶ 1, 5-8, 10). Indeed, there is not an iota of factual support for the notion that there was any standard protocol whatsoever, much less one that was both fraudulent and predetermined. Notably, the two affidavits submitted in support of the Complaint (made by doctors who were contractors for one of the Defendants) make no mention of any protocol at all.

---

[4] State Farm routinely makes allegations of a "predetermined protocol" that are not unique to these Defendants. *See e.g.,* **Exhibits 11 & 12**, similar State Farm Complaints against other defendants regarding No-Fault reimbursements.

8

Thus, the assertions regarding a protocol are utterly without factual support.

Similarly, the Complaint is wholly bereft of factual support for the assertions that: "Universal's Predetermined Protocol is designed not only to enrich Defendants, but to inflate the value of bodily injury and under-insured or uninsured motorist claims, which, in turn increases the potential contingency fees for the attorneys." (*Id.* ¶ 5). Discrediting this extreme and unsubstantiated attack on the entirety of the plaintiff's personal injury bar, State Farm has not sued any members of the bar for their purported role in the alleged fraudulent scheme.

In addition, the Complaint takes astonishing liberties with the content of the affidavits, which, as shown in the next section, are conclusory and lacking in admissible factual detail. For example, paragraph 188 of the Complaint asserts:

> Universal's referrals to Horizon and Clear are not coincidental: as noted above, Zack, Katz, DeSanto, and possibly others own and/or control Universal, Horizon, and Clear. Zack, Katz, and DeSanto direct Chudler, the Chiropractors, other medical providers, and the staff to steer Patients to either Horizon or Clear for medically unnecessary MRIs. For instance, Dr. Sabit describes how he was specifically directed by Zack and staff at Universal to send Patients to Clear or Horizon for MRIs and that the prescriptions for MRIs that he was instructed to use had specific boxes indicating that the MRI should occur at Clear or Horizon. **Dr. Sabit further states that Zack requested him to send patients to Clear or Horizon because Zack, DeSanto, and possibly others affiliated with Universal, directly profited from these MRIs because they owned and/or controlled these mobile MRI units**. (Ex. 8 ¶¶11-12).

9

No such thing was stated.   Instead, Dr. Sabit's affidavit says that "It was my **impression** that Zack requested that I send Universal patients to Clear or Horizon Imaging because he and others affiliated with Universal directly profited from these MRI facilities."   (Dkt. #1-9, Sabit Aff. ¶ 12).   Thus, the affidavit does not support State Farm's spurious allegation. Moreover, the conversion here of an "impression" to a statement is just one of many dubious aspects of this Complaint.

Further, the allegation in Complaint ¶ 188 that: "Zack, Katz, and DeSanto direct Chudler, the Chiropractors, other medical providers, and the staff to steer Patients to either Horizon or Clear for medically unnecessary MRIs" is wholly conclusory and without factual support.   Though Dr. Sabit asserts that he was directed to send Universal patients to Horizon or Clear, he does not assert that he was directed to steer patients for medically unnecessary MRIs.   (Dkt. #1-9, ¶ 12).

### b.  The Affidavits

Understanding that *Twombly* and *Iqbal* require factual support for its claims, State Farm transparently attempts to execute an end-run on these requirements by submitting the affidavits of Drs. Sabit and Tolia for factual support.   But these affidavits are just as conclusory as the Complaint – they make general assertions without providing underlying factual support.   This Court need not accept conclusory allegations, unwarranted factual inferences, legal conclusions masquerading as factual allegations or hearsay submissions.   *See e.g.*, *Cook v.*

10

*Cashler*, 2013 U.S. Dist. LEXIS 66663, at *22 (W.D. Mich. 2013); *In re Sofamor Danek Group*, 123 F.3d 394, 400 (6th Cir. 1997).

### i.   Dr. Aria O. Sabit

Plaintiff's use of the affidavit of Dr. Sabit (Dkt. #1-9), dated June 7, 2013, is outlandish if not reprehensible. Dr. Sabit's affidavit fails in every conceivable way. Its content is conclusory and unsubstantiated. Its author's crippling lack of credibility is undisclosed by Plaintiff. And worst of all, as detailed above, it is misused and distorted by Plaintiff in the Complaint. Together, Plaintiff's use of it is so egregious as to raise considerations of Rule 11 sanctions.

#### a)   State Farm only offers conclusory allegations in Dr. Sabit's affidavit

In addition, although Dr. Sabit's affidavit is strangely lacking in detail on the specifics dates of his contracting to work with "Universal"[5], how many cases he handled, and how often he interacted with any of the Defendants, he does admit that he was an "as needed" contractor who worked for less than two full months in 2012. (*Id.* ¶ 6). Thus, his knowledge is necessarily limited. Here are just some examples among virtually every statement in his affidavit that are devoid of factual

---

[5] Dr. Sabit's affidavit refers to a collective entity he calls "Universal", describing the collective entity as "Universal Health Group, also known as Michigan Spine and Rehab, and its affiliated ambulatory surgical center, Associated Surgical." (Dkt. #1-9, ¶ 4). Associated Surgical is not a defendant here, and Dr. Sabit never defines what he means by Associated Surgical being "affiliated" with Universal Health Group. As a result, it is impossible to know what entity Dr. Sabit references in his affidavit when he is referring to "Universal".

support for the assertions he proffers:

- Dr. Sabit offers conclusory allegations about ownership and operation of the Defendant corporations (*Id.* ¶¶ 4, 7, 11, 15) but does not state the basis of his knowledge; for example, whether he was told about the ownership and operation by any specific Defendant, whether he saw a document evidencing such ownership or operation, or whether "his understanding" was mere supposition on his part. Indeed, although he attests that Dr. Zack "owned and controlled" Clear Imaging and Horizon (*Id.* ¶ 11); *he admits that Zack never told him this* (*Id.* ¶ 18) and that he (Sabit) merely "suspected" that Dr. Zack was in control of Clear Imaging and Horizon. (*Id.*).

- Moreover, though he claims to have "directly observed" certain individuals direct and plan strategy for Universal's operations (*Id.*), Dr. Sabit doesn't explain what he observed or what was allegedly planned. Perhaps most importantly – Dr. Sabit makes no statement that this "directing" or "plan[ning] strategy" relates to the purported enterprise, a scheme to defraud, or the commission of the alleged predicate acts.

- With respect to his conclusions regarding treatment (*Id.* ¶¶ 9-10, 12-14, 16), he provides no context whatsoever for his assertions: what information he reviewed, in how many instances he conducted such a review during his 2 month work period, etc. Moreover, Dr. Sabit states, with respect to such treatments both that: (a) he is relating his *opinion*; and (b) only some treatments were excessive and unnecessary. (*Id.* ¶ 8) Neither affidavit attached to the Complaint ties any of their conclusory allegations to any particular predicate acts that Plaintiff purports to allege.

- With respect to his assertions regarding overbilling (*Id.* ¶ 23) – Dr. Sabit fails to provide information on how he came to learn of the alleged overbilling, in what way patients were incorrectly billed, or even how many times this occurred.

- Dr. Sabit mentions numerous observations of alleged conduct involving persons or entities (such as Sigler and Associated Surgical) that are not Defendants in this case and these allegations are otherwise irrelevant to the Complaint. (*Id.* ¶¶ 19-20, 22).

In addition to affidavit being devoid of any factual support against Dr. Zack,

12

Dr. Sabit makes absolutely no allegations (conclusory or otherwise) about Dr. Katz.

      b)  <u>State Farm failed to disclose crippling credibility information relating to Dr. Sabit</u>

Additionally, material and wholly discrediting information relating to Dr. Sabit was not presented to the Court. The following is just a partial summary of the shocking list of issues surrounding Dr. Sabit and his medical practice:

- Starting in 2010, Dr. Sabit, who was practicing in California at the time, became embroiled in investigations by the California Medical Board, the Food and Drug Administration and the Department of Justice. **Exhibit 4**, WSJ.com: *Surgeons Eyed Over Deals With Medical Device Makers*, July 25, 2013. Shortly thereafter, Dr. Sabit fled California. **Exhibit 5**, WSJ.com: *Surgeon in Probe Is Working in Detroit-Area Hospitals*, July 26, 2013.

- Dr. Sabit also became embroiled in more than *two dozen* medical malpractice and wrongful death lawsuits. **Ex. 4**; *see also* **Exhibit 6**, Vcstar.com: *Former Ventura neurosurgeon faces 16 lawsuits*, February 2, 2012.

- Two weeks after providing his affidavit, Consumer Watchdog listed Dr. Sabit as one of its "***Top Ten Dangerous Doctors***" whose negligence injured or killed their patients and are some of the most egregious offenders. *See also* **Exhibit 7**, Consumerwatchdog.com: *Top Ten Dangerous Doctors Are Poster Children for Patient Safety Reform*, June 25, 2013. In the article, Consumer Watchdog highlights twenty lawsuits that were filed against Sabit regarding botched procedures. *Id.* The article also states that attorneys for those patients have dubbed Sabit "***The Butcher***." *Id.*

- After his move to Michigan, Dr. Sabit was himself named as a defendant in a civil RICO lawsuit, similar to the present one, brought by Allstate alleging that Dr. Sabit and others performed medically unnecessary procedures on car accident victims. **Ex. 5**.

13

- On September 17, 2013, the California Medical Board filed a complaint against Dr. Sabit accusing him of gross negligence, repeated negligent acts, dishonest and corrupt acts, and failure to maintain accurate and adequate records. **Exhibit 8**, September 17, 2013, Accusation.

That State Farm would principally rely on Dr. Sabit as its star witness, and leave out critical details regarding his egregious history and deadly medical practice, serves as confirmation regarding the frivolity of State Farm's claims.[6]

    c) <u>State Farm distorts and embellishes Dr. Sabit's affidavit</u>

In addition to the distorted use of Dr. Sabit's affidavit as mentioned in Section 2.a. above, Dr. Sabit also states that he is presently involved in seven active litigation cases ***against*** State Farm. (Dkt. #1-9, ¶ 3). Dr. Sabit then states that "[t]his affidavit relates to these cases and is provided in addition to, or in lieu of, deposition testimony in those cases." *Id.* Therefore, State Farm is relying on an affidavit that Dr. Sabit admits does not even relate to this case and was provided by Dr. Sabit in several cases he is presently involved in against State Farm.

Based on the foregoing, it is clear that Dr. Sabit is anything but worthy as the witness State Farm presents as the marshal of the Thanksgiving Day parade of its Complaint. Instead, Dr. Sabit is better suited to serve as the poster child for a wrongful affidavit.

---

[6] Dr. Sabit's affidavit (Dkt. #1-9, ¶¶ 15, 17) reproaches Defendants for failing to make certain disclosure to patients. Defendants are left to wonder if Dr. Sabit informed his patients of his personal legal problems.

14

### ii.   **Dr. Bharat M. Tolia**

Dr. Tolia's affidavit is no better than Dr. Sabit's – Dr. Tolia is perfectly comfortable making conclusory assertions without providing detail or factual support.  For example,

- Dr. Tolia states that he "understood" that Drs. Katz and Zack "directed the operations of Universal Health Group" (Dkt. #1-10, Tolia Aff. ¶ 5) but he does not provide the basis for this understanding or what he means by "directed the operations".  (*See also Id*. ¶ 10 re Chudler).

- Apart from the fact that he does not state how many patients he treated during his unspecified tenure as Independent Contractor, Dr. Tolia's assertion that he "received direction from David Katz…to include the phrase "continue chiropractic care" on his reports is vague, irrelevant and highly suspect.  The phrasing (though clever) suggests that the "direction" was a written instruction that Dr. Tolia wishes to attribute to Dr. Katz and not something personally communicated by Dr. Katz to Dr. Tolia, and thus hearsay.  Moreover, because Dr. Tolia claims that he routinely disregarded this instruction –this assertion does not support any predicate act alleged by State Farm.

- Dr. Tolia states that he recalls several occasions where patients told him that "someone" directed them to Universal for treatment so he "surmised that Universal may have used such a system to obtain patients." (*Id*. ¶ 7).  These vague recollections and deductions are irrelevant and do not support any predicate act alleged by State Farm.

- His assertion that virtually all of Dr. Desai's MRI reports were "over read" is also vague and highly suspect. (*Id*. ¶ 8).  Dr. Tolia first states that he noticed a "number" of Universal patients also had MRI's ordered but does not indicate how many MRI reports he personally reviewed and which company performed the MRI.  Dr. Tolia then takes a quantum leap by concluding that "virtually all" of Dr. Desai's MRI reports were "over read." Moreover, Dr. Tolia's vague assertions that a radiologist's MRI reports did not correlate with his clinical findings do not support any predicate act alleged by State Farm.

15

- Dr. Tolia's unspecified statements that he was shocked when he learned at an unspecified deposition that "Universal was billing thousands of dollars" for these services, and that he simply does not bill the same amounts, is also vague, irrelevant and fails to support any predicate act (*Id*. ¶ 12).

- Dr. Tolia concludes by stating that he was terminated in 2011 but does not state who terminated him or what he was told was the reason. (*Id*. ¶ 13) Instead, he refers to his "impressions" that it was felt by "those at Universal" that he was not referring a sufficient number of patients for additional services.

In sum, although lengthy, the Complaint is nothing more substantive than a salesman's puffery.  *Twombly* and *Iqbal* require more substance – a plausible claim based on factual support.

### III.   STANDARD OF REVIEW

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true.  *Percival v. Girard*, 692 F. Supp. 2d 712, 717 (E.D. Mich. 2010).  In doing so, "the court must draw all reasonable inferences in favor of the" non-moving party.  *Id.*  Although a heightened fact pleading of specifics is not required, the plaintiff must bring forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

16

"Though decidedly generous, this standard of review does require more than the bare assertion of legal conclusions." *Percival*, 692 F. Supp. 2d at 717 (citing *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996)). This Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. As this district has quoted at length from *Twombly*:

> [A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the complaint's allegations are true.

*Percival*, 692 F. Supp. 2d at 717 (quoting *Twombly*, 550 U.S. at 555). When applied to conspiratorial allegations, parallel conduct by defendants alone does not suggest a conspiratorial agreement. While allegations of parallel conduct get the complaint close to stating a claim, without "further factual enhancement it stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557.

If a complaint fails these requirements, then a Motion to Dismiss should be granted, *before* the parties are allowed to proceed to discovery. *Id.* at 559. Filing a complaint "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. . . . Only a complaint that states a ***plausible*** claim

17

for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679.  Thus, pleas for deficient complaints to go forward in an attempt to obtain discovery in order to make a plausible claim should be denied.

Claims alleging fraud have an even higher standard of review.  To meet the particularity requirements of Rule 9(b), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 569 (6th Cir. 2008); *see also Haisha v. Countrywide Bank, FSB*, 2011 U.S. Dist. LEXIS 61443, at *7–8 (E.D. Mich. June 8, 2011) (granting Motion to Dismiss for failure to sufficiently plead fraud). At a minimum, Plaintiff must allege the time, place, and contents of the misrepresentations upon which it relied. *Id.  See also Jackson v Segwick Claims Mgt. Servs., Inc.*, 699 F.3d 466, 476 (6th Cir. 2012) (quoting *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting Fed. R. Civ. P. 9(b)); *Hanover Exch. v. Metro Equity Group LLC*, 2009 U.S. Dist. LEXIS 59992, at *17-19 (E.D. Mich. July 14, 2009) (dismissing fraud claims because the allegations "do not satisfy the requirements of particularity, as articulated in *Coffey*, because they do not include the time or place of the assertedly fraudulent statements.") (Murphy, J.).

Because Plaintiff's Complaint fails to state a claim upon which relief could

be granted for *any* of its claims, the Complaint should be dismissed.

## IV.   ARGUMENT

### A. RICO Pleading Requirements

A plaintiff must allege that a defendant violated the substantive RICO statute, 18 U.S.C. § 1962, and must also allege that he was "injured in his business or property by reason of a violation of § 1962." 18 U.S.C. § 1964(c).

#### 1. 18 U.S.C. § 1962(c)

In order to prevail under 18 U.S.C. §1962(c), "a plaintiff must show (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *see also Hall Am. Ctr. Assocs. Ltd. Partnership v. Dick,* 726 F. Supp. 1083, 1087 (E.D. Mich 1989). Where a complaint "fail[s] to even address each of the prerequisite elements necessary to state a claim for civil RICO," such a claim is properly dismissed. *All Erection & Crane Rental Corp. v. Acordia Nw., Inc.*, 162 Fed. Appx. 554, 557 (6th Cir. 2006); *see also Durant v. Servicemaster Co.*, 159 F. Supp. 2d 977, 981 (E.D. Mich. 2001) ("Because of the opprobrium that a RICO claim brings to a defendant . . . courts should eliminate frivolous RICO claims at the earliest stage of litigation."). "If plaintiff cannot plead a separate, lasting enterprise apart from each defendant alleged to be liable under Section 1962(c) and specify the predicate acts and conduct of that enterprise by each allegedly liable defendant with particularity,

19

in separate counts, he has no business charging RICO violations." *Beck v. Cantor Fitzgerald & Co.*, 621 F. Supp. 1547, 1563 (N.D. Ill. 1985).

### 2. 18 U.S.C. § 1962(d)

18 U.S.C. § 1962(d) states that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Such a "conspiracy claim is only as valid as the claim of underlying violation of § 1962(a), (b), or (c) . . . ." Gregory P. Joseph, CIVIL RICO: A DEFINITIVE GUIDE, 168 (3d ed. 2010). Thus, RICO *conspiracy* claims under section (d), like the one alleged by State Farm, cannot survive where the plaintiff has not stated a cognizable, underlying RICO claim under sections (a)–(c) in the first place. *Craighead v. E.F. Button & Co.,* 899 F.2d 485, 495 (6th Cir. 1989).

As discussed below in further detail, because State Farm has failed to plead the requisite elements of a RICO action, no cause of action could stand under § 1962(c). Thus, no cause of action could stand under § 1962(d).

### B. <u>The 1962(c) Claim - (Fourth Cause of Action)</u>

### 1. The Complaint Fails to Plausibly Plead an Enterprise

The pattern of racketeering activity is a series of criminal acts and the focus is on the relationship between the offenses. *U.S. v Indelicato*, 865 F.2d 1370 (2d Cir. 1989 (en banc), *cert. denied*, 491 US 907 (1989). The enterprise is a person/entity, or group of persons/entities associated together for a common

purpose of engaging in a course of conduct.  *Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.*, 879 F.2d 10 (2d Cir. 1989), *cert. denied*, 493 U.S. 1022 (1990). *Boyle v. U.S.*, 556 U.S. 938, 945-47 (2009) establishes that the enterprise is something beyond that inherent in the pattern of racketeering activity in which its members engage.  As noted by the Supreme Court in *U.S. v. Turkette*, 452 U.S. 576, 583 (1981):

> That a wholly criminal enterprise comes within the ambit of the statute does not mean that a "pattern of racketeering activity" is an "enterprise." In order to secure a conviction under RICO, the Government must prove both the existence of an "enterprise" and the connected "pattern of racketeering activity." The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. 18 U. S. C. § 1961 (1) (1976 ed., Supp. III). The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. **The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved by the Government.**

*See also, Boyle,* 556 U.S. at 947 (citing *Turkette*); *Stephens, Inc. v. Geldermann, Inc.,* 962 F.2d 808, 816 (8th Cir.1992) (failing to find separate enterprise where, absent predicate acts, the association had "no form or structure.").

"[S]imply conspiring to commit a fraud is not enough to trigger [RICO] if the parties are not organized in a fashion that would enable them to function as a racketeering organization for other purposes."  *VanDenBroeck v. CommonPoint Mortg. Co.,* 210 F.3d 696, 699 (6th Cir.2000), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639 (2008).  In *VanDenBroeck,* (a pre-*Twombly/Iqbal* case), the Sixth Circuit rejected a RICO claim on the basis that there were no allegations of a mechanism by which the defendants conducted the alleged enterprise's affairs or made decisions.  *Id*. at 700.

State Farm's allegations with respect to the purported Enterprise are similarly deficient.  The entirety of the allegations with respect to the alleged enterprise are contained in Dkt. #1 ¶¶ 274-278.  State Farms claims there was an association in fact enterprise, the "Universal Fraudulent Billing Enterprise".  *Id.* ¶ 274.  State Farm alleges that the Defendants conducted the affairs of the enterprise

> through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. §1341, based upon the use of United States mail to submit to State Farm and other insurers hundreds of fraudulent claims and bills for the examinations, diagnoses, treatments, and tests, which were medically unnecessary or were not performed.

*Id.* ¶ 278.  This attempt to meld the Defendants to the statute is insufficient as a matter of law.  Quite clearly, State Farm's complaint runs afoul of the rule that: "[t]he 'enterprise' is not the 'pattern of racketeering activity', it is an entity

22

separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583.  Without the predicate acts, the enterprise State Farm alleges has no form or structure and thus fails as a matter of law.  *Geldermann*, 962 F.2d at 816. State Farm has not – and cannot – allege with plausibility that the Defendants are organized in a fashion that would enable them to function as a racketeering organization for other purposes." *VanDenBroeck*, 210 F.3d at 699.

A glaring flaw in State Farm's theory concerns the actual corporate formation of several of the Defendants.  Despite the fact that State Farm alleges that the alleged fraudulent scheme began in 2007, Universal and UHG Management were the <u>only</u> corporate Defendants in existence at that time.[7]  Clear Imaging, Horizon Imaging, Michigan Spine and Rehab and Professional Health Systems were not formed until years later.[8]  State Farm's conclusory allegation that all of the Defendants were members of a "Universal Fraudulent Billing Enterprise" and that all of the Defendants participated in a scheme that began in 2007 is utterly implausible.

State Farm fails to plead an enterprise that consists of something more than

---

[7] Universal Health Group, Inc. was formed on 11/16/2006, and UHG Management, LLC, was formed on 5/11/2007. *See* **Exhibit 9**.

[8] Horizon Imaging, LLC, was not formed until 7/8/2009 and Clear Imaging, LLC, was not formed until 9/2/2009.  Michigan Spine and Rehab, an assumed name of Universal, was not created until 7/28/2010 and Professional Health Systems, LLC was not formed until 2/1/2012. *See* **Exhibit 10**.

23

that inherent in the alleged racketeering activity in which its members allegedly engaged; thus the RICO claim fails.  In addition, as set forth immediately below, the Complaint fails to plausibly plead that the Defendants conducted the affairs of the alleged enterprise, a prerequisite to RICO liability.

### 2. The Complaint Fails to Plausibly Plead that Defendants "Conducted the Affairs" of the Enterprise

State Farm's Complaint must contain factual allegations that would lead to the conclusion that *each defendant* was actually involved in directing the affairs of the *enterprise*; otherwise dismissal is appropriate.  *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998).  "Each defendant is entitled to individual consideration and to know what enterprise it is that they are alleged to have illegally conducted through a pattern of racketeering activity." *Hall Am. Ctr. Assocs. Ltd. Partnership v. Dick,* 726 F. Supp. 1083, 1089 (E.D. Mich 1989). "If the plaintiffs intend to allege separate RICO claims as to . . . [multiple defendants], they should allege separate RICO counts in which they provide factual support for *each* RICO element as to *each* RICO defendant." *Id.* at 1091 (emphasis in original).

In *Reves v. Ernst & Young*, 507 U.S. 170 (1993), the Supreme Court affirmed that the phrase "conduct or participate…in the conduct" means that the defendant must be involved in the operation or management of the enterprise.  *Id.*

24

at 179.   Thus the defendant must have some part in directing the enterprise's affairs.   *Id.*   Persuasive power alone does not constitute "operation or management" within *Reves*.  *See e.g., Schmidt v. Fleet Banks*, 16 F. Supp. 2d 340, 347 (S.D.N.Y. 1998); *Vickers Stock Research Corp. v. Quotron Sys.*, 1997 U.S. Dist. LEXIS 10837, at *9-10 (S.D.N.Y. 1997), *aff'd*, 1998 U.S. App. LEXIS 22046 (2d Cir. Aug. 24, 1998).   Liability depends on a showing that the "defendants conducted or participated in the conduct of the *enterprise's* affairs, not just their *own* affairs".  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) (quoting *Reves*, 507 US at 185) (emphasis in original).

Simply taking directions and performing tasks that are necessary or helpful to the enterprise – without something more, is insufficient to bring a defendant within the scope of 1962(c).  *United States v. Diaz*, 176 F.3d 52 (2d Cir. 1999). Similarly, "performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c); instead, the individual must have participated in the operation and management of the enterprise itself." *Goren*, 156 F.3d at 727-28.  In *Dahlgren v First National Bank of Holdrege*, 533 F.3d 681 (8th Cir. 2008), the court found that

> A bank's financial assistance and professional services may assist a customer engaging in racketeering activities, but that alone does not satisfy the stringent "operation and

management" test of *Reves. See Schmidt v. Fleet Bank,* 16 F.Supp.2d 340, 346-48 (S.D.N.Y.1998), and cases cited. In *Schmidt,* allegations that the bank approved overdrafts on 500 occasions, misrepresented the status of accounts to investors, and helped its customer conceal his fraudulent scheme were held to be insufficient to satisfy this test….

With one possible exception, all of the Bank's actions that plaintiffs cite as evidence of the Bank's control of DCC fall into the category of a creditor conducting its own affairs. The Bank allowed the commingling of Damrow entity funds, honored substantial overdrafts (in effect, informally increasing the borrower's line of credit, for a one-time fee), allowed DFF notes to the Bank to remain past due (again, thereby increasing DCC's line of credit), honored DCC n.s.f. checks to investors, recommended its customer DCC to other Bank customers, encouraged its correspondent regional bank to participate in the lines of credit, told Damrow he must increase equity investment and eliminate intra-enterprise liabilities on DCC's financial statement to get a loan approved, transferred funds between Damrow entity accounts pursuant to loan agreement cross-guarantees without Damrow's permission, and required Damrow to sign a new deed of trust on the feedlot. As the court held in *Schmidt,* simply because a bank *allows* a heavily indebted customer to take actions such as overdrafts and late note payments that the bank might prevent by exercising its formidable rights as creditor is not evidence that the bank controlled the customer's operations and management. "Bankers do not become racketeers by acting like bankers."

*Id.* at 690; *see also In re American Honda Motor Co. Dealerships Relations Litig.,* 941 F.Supp. 528, 560 (D. Md. 1996) ("Th[e] cases reveal an underlying distinction between acting in an advisory professional capacity (even if in a knowingly fraudulent way) and acting as a direct participant in [an enterprise's] affairs.).

The court's decision in *Reynolds v. Condon*, 908 F. Supp. 1494 (N.D. Iowa

26

1996) is also instructive:

> As to defendant Orzechowski, the court does not believe that the mere fact that she was a partner in the Law Firm necessarily means that she "conducted" the enterprise for the purposes of a RICO claim. In other words, her status as a partner does not mean that she "conduct[ed] the affairs of [the Law Firm] by ... acting in a *managerial* capacity, *through racketeering activity.*"

*Id.* at 1511-12.  *See also Handeen v. Lemaire*, 112 F.3d 1339, 1348 (8th Cir. 1997) ("an attorney or other professional does not conduct an enterprise's affairs through run-of-the-mill provision of professional services." citing cases from the Second, Third, Sixth, Eighth and Ninth Circuits).  *See also Melton v Blankenship*, 2009 US App LEXIS 686, at *8-9 (6th Cir. 2009) (citing, with approval, *Handeen*). Moreover, "RICO is not a surrogate for professional malpractice actions." *Handeen*, 112 F.3d at 1348.

The Complaint fails to plausibly allege that the Defendants conducted the affairs of the alleged "Universal Fraudulent Billing Practices Enterprise".  The Complaint alleges that this Enterprise is comprised of ***all the Defendants***; as a result, State Farm is required to allege (with factual support) how each Defendant participated in the operation and management of the alleged Enterprise.  State Farm utterly fails to do so.

Even if one ignores the fact that the following assertions are conclusory at best, the Complaint merely alleges that Movants Zack and Katz had some role

(*e.g.*, ownership) in the corporate Defendants; Plaintiff does not allege any role of

Zack or Katz with respect to the alleged enterprise:

> Katz and Zack incorporated ***Universal***, a Defendant and a member of the alleged Enterprise and that they control ***Universal's*** operations.  (Dkt. #1, ¶¶ 2, 5, 27, 38, 56-58, 61).

> Katz and Zack falsely diagnose patients.  (*Id.* ¶ 7).

> Zack and Katz secretly own and/or control ***Horizon and Clear***, two other Defendants alleged to be members of the alleged Enterprise.  (*Id.* ¶¶ 13, 74, 78).

> Zack and Katz control, operate, and profit from ***Universal's*** medically unnecessary services and tests.  (*Id.* ¶ 27).

> Zack and Katz profit by causing medically unnecessary MRIs to be performed by ***Horizon and Clear***.  (*Id.*)

> Zack is the resident agent of ***Universal,*** as well as an officer and member of its board of directors, and a signatory to ***Universal's*** annual reports.  (*Id.* ¶¶ 38, 40, 42).

> Zack is the incorporator and resident agent of ***UHG Management***, a Defendant and a member of the alleged Enterprise, as well as a signatory to its annual reports.  (*Id.* ¶¶ 44-46).

> Zack and Katz are executives of ***Professional Health Systems***, a Defendant and a member of the alleged Enterprise, and Zack was its founder.  (*Id.* ¶ 50).

All of these allegations merely relate to the relationship between certain

Defendants and the other Defendants.  The allegations do not relate to any of the

Defendants' conducting the affairs of the alleged– "Universal Fraudulent Billing

28

Practices Enterprise" - which is what State Farm must do (with factual support) to avoid dismissal.   At best, State Farm has merely alleged that Defendants have conducted their own affairs; for example, that Defendant Dr. Zack incorporated Defendant Universal.[9] The Complaint contains no factual support for the notion that Dr. Zack – or any of the other Defendants – conducted the affairs of the Universal Fraudulent Billing Practices Enterprise.

Just as State Farm has failed to plausibly plead an enterprise that consists of something more than that inherent in the pattern of racketeering activity in which its members allegedly engage, it also fails to utterly plead that Katz or Zack (or the remaining Defendants) conducted the affairs of the "Universal Fraudulent Billing Practices Enterprise".   In fact, as noted above, the corporate Defendants were formed years apart from each other; State Farm fails to plead at all – much less plausibly plead with factual support – how Drs. Zack and Katz could conduct the affairs of an enterprise whose constituent members did not even exist.   As a result, the RICO claim must be dismissed.

### 3. The Complaint's Allegations of Mail Fraud Fail to Meet the Requirements of Fed. R. Civ. P 9(b)

"A RICO Complaint must allege facts which would, if proved, constitute

---

[9]  Similarly, many (if not most) physicians provide referrals for patients to practitioners in other fields.  There is nothing wrongful about this, and it does not mean that the referring physician operates, directs, or conducts the business of the physician to whom the patient is referred.

acts indictable under the listed [predicate acts of racketeering activity] statutes. In a sense, RICO is derivative." *DeLorean v. Cork Gully*, 118 B.R. 932, 940 (E.D. Mich. 1990).   The only RICO predicate act alleged to have been committed by Defendants is mail fraud (18 U.S.C 1341) (Dkt. #1, ¶¶ 278, 282).

Mail fraud is proven by showing "[1] a scheme or artifice to defraud combined with [2] either a mailing or an electronic communication [3] for the purpose of executing the scheme." *VanDenBroek*, 210 F.3d at 701. An actionable scheme or artifice to defraud is defined as "intentional fraud, consisting in deception intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the designed end." *Id.*; *see also Hall*, 726 F. Supp. at 1093.

State Farm is required to allege facts that establish (or that at least give rise to the reasonable inference) that Defendants entered into an agreement to conduct a scheme with the specific intent to defraud State Farm using the U.S. Mail to deliver false or misleading materials. *Central Distributors of Beer, Inc. v. Conn,* 5 F.3d 181, 184 (6th Cir. 1993).

As noted above, because Plaintiff's RICO claims allege mail fraud as an element, Plaintiffs must also satisfy the heightened particularity requirements of Rule 9(b) with respect to the elements of fraud.  *Paycom Billing Services, Inc. v. Payment Resources International,* 212 F. Supp. 2d 732, 736 (W.D. Mich. 2002).

To meet the particularity requirements of Rule 9(b), State Farm must, at a minimum, "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 569-70 (6th Cir. 2008). A plaintiff must also provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Yaldo v. Deutsche Bank Nat'l Trust Co.*, 2010 U.S. Dist. LEXIS 125784, at *10 (E.D. Mich. Nov. 30, 2010) (dismissing fraud claim where conclusory allegations merely restated the elements of fraudulent misrepresentation) (Murphy, J.); *Ross v. MERS/MERSCORP Holdings, Inc*, 2013 U.S. Dist. LEXIS 61329, at *10-11 (E.D. Mich. Apr. 30, 2013) (dismissing Plaintiff's Complaint for failure to state with specificity any mail fraud claims).

The heightened pleading requirement of Rule 9(b) serves multiple purposes, including: protecting defendants from "abusive litigation" and "fishing expeditions," protecting businesses and individuals from reputational harm, and putting defendants on notice of the specific charged conduct so they can prepare responsive pleadings. *United States ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 445 (6th Cir. 2008). Rule 9(b) is also designed to "eliminate fraud actions in which all facts are learned after discovery." *Harrison v. Westinghouse Savannah*

31

*River Co.,* 176 F.3d 776, 784 (4th Cir. 1999).

State Farm's Complaint utterly fails to meet the pleading requirements of 9(b) with respect to Plaintiff's mail fraud claim. State Farm's reliance on the exhibits to the Complaint cannot save its mail fraud claim. In relying on the exhibits, State Farm utterly fails to meet its obligation to specify which statements within the exhibits are fraudulent. Instead, the summaries generically identify categories such as the initials of the patient, date of loss, dates of service, total visits and diagnoses (*see e.g.,* Dkt. #1, Exhibits 1-7).

Put another way, State Farm has not alleged "facts to show ***which*** of the Defendants caused ***what*** fraudulent statements to be mailed, together with ***when*** and ***how*** each mailing furthered the scheme." *Gotham Prints, Inc. v American Speedy Printing Ctrs., Inc.,* 863 F. Supp. 447, 458 (E.D. Mich. 1994).

Moreover, State Farm alleges that the services were fraudulent because they were either (1) not performed or (2) not medically necessary. However, State Farm does not break down which category of alleged fraud (1 or 2 above) each purported fraudulent submission belongs to. The Court then is left to guess from the complaint exactly which category each complained of transgression falls.

Dismissal is warranted here because State Farm has failed to provide any factual support for its conclusory allegations that the services were either not performed or not medically necessary. The discredited and seriously miscited

affidavits of Dr. Sabit and Dr. Tolia cannot rescue State Farm either, as the allegations contained within the statements are themselves conclusory and also are not tied to any specific predicate act, or to any of the exhibits proffered by State Farm. Indeed, State Farm's failure to allege facts - as opposed to unsupported conclusions - is not surprising because no such facts exist. As this Court previously instructed, "courts should eliminate frivolous RICO claims at the earliest stage of litigation." *Durant v. Servicemaster Co.,* 159 F. Supp. 2d 977, 981 (E.D. Mich. 2001).

### 4. Having Failed to Properly Plead Mail Fraud, the Complaint Fails to Plead a Pattern of Racketeering Activity

"[R]acketeering activity consists of no more and no less than the commission of a predicate act." *Sedima*, 473 U.S. at 495. As detailed above, the only racketeering activity alleged to have been committed by Defendants is the predicate act of mail fraud. Having failed to plead mail fraud with the requisite specificity, State Farm has thus failed to plead a pattern of racketeering activity as required by the RICO statute.

### 5. The Complaint Fails to Specifically Address the Continuity Requirements with respect to the Alleged RICO Pattern

A pattern of racketeering requires allegations of predicate acts that amount to or constitute a threat of "*continuing* racketeering activity." *H. J. Inc. v. Nw. Bell*

33

*Tel. Co.*, 492 U.S. 229, 240 (1989).  The Supreme Court has described continuity as either "closed-ended," referring to a closed period of repeated conduct extending over a substantial period of time, or "open-ended," referring to past conduct "which by its nature projects into the future with a threat of repetition." *Id.* at 241-42.  Moreover, this court has held that **"A 'single, fraudulent scheme' to accomplish a single objective does not 'possess the requisite RICO continuity.'"**  *Percival v. Girard*, 692 F. Supp. 2d 712, 722 (E.D. Mich. 2010).

Plaintiff has failed to plead or allege a pattern, including continuity.  State Farm merely alleges that:

> Defendants have knowingly agreed and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Universal Fraudulent Billing Enterprise's affairs through ***a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute***, 18 U.S.C. §1341, based upon the use of the United States mail to submit to State Farm and other insurers hundreds of fraudulent bills for examinations, diagnoses, treatments, and tests which were medically unnecessary or were not performed.

(Dkt. #1, ¶¶ 278, 282).

State Farm's general allegations that the fraudulent bills and corresponding mailings described in Exhibits 1-7 of Plaintiff's Complaint comprise the pattern of racketeering activity identified through the date of the Complaint (*Id*. ¶ 283) also fail to satisfy Plaintiff's burden to plead a pattern of racketeering activity,

34

including continuity. At most, the entire Complaint, taken as true and viewed in the light most favorable to State Farm, describes a single, allegedly fraudulent scheme to accomplish a single objective.   Just as in *Percival*, *supra*, this claim should be dismissed.   Indeed, the fact that the majority of the corporate Defendants did not even exist until years after the start of the alleged scheme gut State Farm's allegations regarding any fraudulent scheme (whether it be a single scheme or pattern of racketeering activity).   At a minimum, Plaintiff's deficiencies with respect to dates of the purported mail fraud preclude an assessment of continuity.

### 6.  The RICO Claim (or a portion of it) is Time Barred

State Farm alleges that "Defendants' scheme began in 2007, and has continued uninterrupted since that time." (Dkt. #1, ¶ 29).   The Supreme Court established a four-year statute of limitations period for civil RICO claims in *Agency Holding Corp. v. Mally-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). In *Rotella v. Wood*, 528 U.S. 549, 555-57 (2000), the Supreme Court explicitly rejected the "injury and pattern discovery" rule[10] as to when the statute of limitations begins to run. "[D]iscovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Id.* at 555.   "The limitations period for RICO claims accrues when a plaintiff knew or should have known of an

---

[10] Under that rule, a civil RICO claim did not accrue until a plaintiff knew or should have known not only of the injury, but also of the existence of a pattern of racketeering activity.

injury." *Taylor Group v. ANR Storage Co.*, 24 Fed. Appx. 319, 325 (6th Cir. Nov. 8, 2001) (citing *Rotella*).

State Farm alleges that "[b]ased on Defendants' material misrepresentations and other affirmative acts to conceal their fraud from State Farm, State Farm did not discover and should not have reasonably discovered *that its damages were attributable to fraud* until shortly before it filed this Complaint." (Dkt. #1, ¶ 256).

But the question is *not* when the *scheme* was discovered or when damages were discovered, but rather when the *injury* was discovered.[11] Under the appropriate rule, the period of limitation will run when the *injury* was discovered *or should have been discovered*. *Rotella*, 528 U.S. at 554-55. "The plaintiff is deemed to have constructive knowledge of the injury when it *had enough information to warrant an investigation* which, if reasonably diligent, would have led to discovery of the fraud." Gregory P. Joseph, CIVIL RICO: A DEFINITIVE GUIDE, 239 (3d ed. 2010). As stated in by the Sixth Circuit in *Isaak v. Trumbull S&L Co.*, 169 F.3d 390, 399 (6th Cir. 1999):

> [T]he running of the statute of limitations begins when a plaintiff is put on inquiry notice -- that is, when the plaintiff has been presented with evidence suggesting the

---

[11] "A RICO plaintiff's ability to investigate the cause of his injuries is no more impaired by his ignorance of the underlying RICO pattern than a malpractice plaintiff is thwarted by ignorance of the details of treatment decisions or of prevailing standards of medical practice." *Rotella*, 528 U.S. at 556–57 (holding that the limitations period begins to run when the injury is discovered).

> possibility of fraud. Inquiry notice is triggered by evidence of the possibility of fraud, not full exposition of the scam itself. . . . The plaintiff need only possess a low level of awareness; he need not fully learn of the alleged wrongdoing. Knowledge of all facts is not required to set off the prescriptive clock. Thus, the clock begins to tick when a plaintiff senses "storm warnings," not when he hears thunder and sees lightning.

*Id. See also Ross v. MERS/MERSCORP Holdings, Inc*, 2013 U.S. Dist. LEXIS 61329, at *10 (E.D. Mich. Apr. 30, 2013) ("Even though Plaintiff did not investigate what was in his credit records until 2012, Plaintiff's credit reports were available at his request well before 2012. Plaintiff's claims under RICO are barred by the four-year limitation period."); *ANR Storage Co*., 24 Fed. Appx. at 325 (holding that plaintiffs' RICO claim was time-barred because "plaintiffs, through the exercise of reasonable diligence, should have discovered that they had a cause of action against defendant.").

Any alleged injuries were known by State Farm when it made payments on claims for reimbursements as early as 2007, well over four (4) years prior to this Complaint being filed. State Farm acknowledges that it has a statutory and contractual obligation to promptly pay PIP Benefits. (Dkt. #1, ¶ 254). However, it neglects to mention that this period does not begin to run until "reasonable proof" has been provided by the claimant. MCL 500.3142(2). If an insurer desires to challenge or investigate an amount charged it can and should conduct an

37

investigation during the thirty day period to establish a lesser amount. *See Williams v. AAA Michigan*, 250 Mich. App. 249, 267 (2002). Indeed, "not only should an insurer audit and challenge the reasonableness of bills submitted by health care providers, but the providers should expect no less." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 378 (2003), *aff'd*, 472 Mich. 91 (2005); *AAA Michigan*, 250 Mich. App. at 267 (affirming imposition of no-fault penalty interest where the insurer "could have and should have" conducted some investigation of its own during the thirty-day legislative grace period to establish a lesser amount of uncoordinated benefits owed). A claimant may then challenge the insurer's failure to fully reimburse them for medical bills. *Id.*

State Farm knew it had a right to request reasonable proof, and could and should have investigated claims before payment. In fact, State Farm essentially alleges as much. State Farm expressly alleges that "a central feature of Universal's Predetermined Protocol is an extraordinary – and medically unnecessary – number of chiropractic and physical therapy treatment modalities, often delivered concurrently, for excessive periods of time." However, per State Farm's own summaries, the total number of treatments and the time periods involved for each patient were already known to State Farm prior to January 21, 2010 (more than four years prior to the filing of this Complaint). For example, Plaintiff's Exhibit 1 shows 144 total visits for patient "CS" from 8/22/2007 to

3/24/2009. (Dkt. #1-2, at 1). If the sheer number of treatments was any indication of the performance of services that were extraordinary, excessive and/or medically unnecessary, State Farm would have and should have investigated Defendants' claim for Patient "CS" in 2009 or earlier. The same is true with respect to dozens of other patients listed. (*See e.g.*, Dkt. #s 1-2 and 1-4, Exhibits 1 & 3).

Therefore, State Farm's allegations that, based on Defendants' fraudulent actions, it did not discover that its "damages were attributable to fraud" until "shortly before it filed this complaint" is dubious at best. State Farm must surely know what triggered its "discovery" but fails to provide any information regarding what prompted that discovery and when. Plaintiff's claims do not meet the plausibility requirement of *Twombly* when they contain no facts to suggest that Plaintiff discovered its injury within the applicable statutes of limitations.

Furthermore, State Farm's nearly identical RICO suits filed against numerous other Defendants in numerous cases across the country also evidences State Farm's prior notice of its purported injury based upon the Defendants' requests for reimbursement.

Accordingly, Plaintiff's claims should be dismissed to the extent they seek any recovery based upon reimbursement requests prior to January 21, 2010.

### C. The 1962(d) Claim- (Fifth Cause of Action)

To plead a viable § 1962(d) claim, a plaintiff must allege that a defendant

39

"agreed to the objective of a violation of RICO." *Goren v. New Vision Int'l, Inc.*,

156 F.3d 721, 732 (7th Cir. 1998). More specifically:

> From a conceptual standpoint a conspiracy to violate RICO can be analyzed as composed of two agreements ...: an agreement to conduct or participate in the affairs of an enterprise and an agreement to the commission of at least two predicate acts. Thus, a defendant who did not agree to the commission of crimes constituting a pattern of racketeering activity is not in violation of section 1962(d), even though he is somehow affiliated with a RICO enterprise, and neither is the defendant who agrees to the commission of two criminal acts but does not consent to the involvement of an enterprise. If either aspect of the agreement is lacking then there is insufficient evidence that the defendant embraced the objective of the alleged conspiracy. Thus, mere association with the enterprise would not constitute an actionable 1962(d) violation. In a RICO conspiracy, as in all conspiracies, agreement is essential. Thus, in order to state a viable claim under § 1962(d), [Plaintiff] must allege (1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals.

*Id.*

The entirety of State Farm's allegations with respect to its claim under

1962(d) are contained in the Complaint (Dkt. #1) at paragraphs 282-284. Yet

again, these allegations are entirely conclusory and without factual support. The

Complaint contains absolutely no factual support that each and every defendant

agreed to maintain an interest in or control of an enterprise or to participate in the

affairs of an enterprise through a pattern of racketeering activity. Nor does the

40

Complaint allege – much less provide factual support for an allegation – that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals.  Indeed, based on State Farm's allegations that the alleged fraudulent scheme began in 2007, at a time when the majority of the corporate Defendants had not even been formed and would not exist until years later, it is simply impossible for them to have done so. For these reasons, and also because Plaintiff has failed to plead a 1962(c) claim, the 1962(d) claim must be dismissed.

**D.  This Court should abstain from hearing this case pursuant to the *Colorado River* and *Buford* doctrines**

### 1.  Colorado River Doctrine

A federal court "has the power to abstain from exercising its jurisdiction over a case in deference to a parallel state-court proceeding if abstention will best promote the values of efficient dispute resolution and judicial economy." *Gentry v. Wayne County*, 2010 U.S. Dist. LEXIS 123365, at *5 (E.D. Mich. 2010) (Murphy, J.) (citing *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976)). This power should be utilized when two criteria are met: (1) the federal and state suits are parallel, and (2) "abstention will actually serve the end of efficient court administration." *Id.*

When it brought this federal case, State Farm was well aware that it was attempting to re-litigate the same issues in this court that was already actively

litigating in numerous state courts. Specifically, there are at this moment scores of ongoing cases in the courts of the State of Michigan between State Farm and various medical service providers, including the entity Defendants in this matter. Those cases generally involve instances in which State Farm has refused to pay a medical provider, so that the provider has been forced to bring suit against State Farm to collect the fees to which it is entitled under the No-Fault Act.[12] It is a waste of this Court's resources to decide issues already being decided elsewhere.

This suit and the concurrent state suits are parallel proceedings. All of the parties to this lawsuit are already litigants on the same issues in the various state court cases.  Resolution of the state-court cases will resolve all or most of the issues being litigated before this Court, because the state-court cases will decide whether or not charges such as Defendants' are allowable in the context of No-Fault Insurance. Essentially, the issues in this case and the state-court cases are fundamentally the same. Despite State Farm's attempts to clothe its allegations in

---

[12] These state-court cases are too numerous to cite here, and new actions are frequently filed. Defendants believe that identification of those state cases that are impacted by this lawsuit is easily accomplished by State Farm, who have not provided all relevant claim identification information, and that it should be compelled to disclose this information.  The Court may also take judicial notice with respect to same.  *See e.g.*, *Schultz v. Tecumseh Products*, 310 F.2d 426, 433 (6th Cir. 1962) ("[C]ourts are required to take judicial notice of the statute and case law of each of the states. The law of any State of the Union, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United States are bound to take judicial notice, without plea or proof.").

the language of federal law and State Farm's avoidance in referring to the standards of the No-Fault Act, this is a No-Fault Act case. Distilled to their essence, State Farm's claims simply assert that Defendants' services and costs do not meet the requirements of medical necessity and reasonableness found in MCL 500.3107(1)(a); State Farm attempts to disguise this fact by referencing RICO, fraud, unjust enrichment, etc. Regardless of the terminology used, State Farm and the Defendants are disputing the reasonableness and necessity of charges based on the No-Fault Act and contracts made thereunder. This litigation is thus duplicative of the state suits.

As for the second prong of the *Colorado River* test, it is equally clearly met. "Efficient court administration" would be promoted by abstention here, because, among other factors, (1) the state-court cases were filed first (and new ones continue to being filed); (2) the state-court cases are consequently further along in the litigation process; (3) State Farm's rights will be adequately protected in state court; (4) abstention will help to avoid piecemeal litigation by avoiding duplication; (5) both federal and state courts have jurisdiction over State Farm's claims; and (6) the basis for this suit is in state law. The first and last factor are perhaps the most crucial facts of all. The state cases came first. This lawsuit followed them and is an attempt to attack them with a sort of federal consolidated counterclaim. Moreover, No-Fault Act cases, of which this is one notwithstanding

43

State Farm's desire to obscure the situation, are fundamentally a state concern. Deciding State Farm's claims is inseparable from determining questions of reasonableness and medical necessity under the No-Fault Act. To maximize court efficiency, this Court should leave this case to the state courts.

### 2. *Burford* Doctrine

The Sixth Circuit has stated that abstention is appropriate under the doctrine of *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) when "(1) a case presents 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar,' or (2) the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Rouse v. Daimler Chrysler Corporation*, 300 F.3d 711, 716 (6th Cir. 2002). Moreover, the goal of this abstention doctrine is "avoid conflict with a state's administration of its own affairs." *Id.*

This is a textbook example of a case fit for *Burford* abstention. Michigan's No-Fault Act is a particularly unique state-law regime which is unquestionably "of substantial public import." Additionally, the fact that the importance of these issues transcends the case at bar is demonstrated vividly by the myriad state-court cases litigating these issues year after year. Because no-fault insurance is mandated by law in only a small minority of states, and because no other state has a scheme

44

identical to Michigan's, it is appropriate to leave determination of No-Fault Act issues to the Michigan courts. Intervention by the federal courts risks the making of conflicting judgments and the thwarting of the state's attempt to manage "its own affairs."

In *Moon v. Harrison Piping Supply*, 375 F. Supp. 2d 577 (E.D. Mich. 2005) (Borman, J.) (reversed in part on other grounds), the court decided a similar abstention question with regard to workers' compensation benefits. Despite the plaintiff's arguments to the contrary, the court found that the case "bears upon Michigan's significant interest in safeguarding the policy balance that the legislature struck" and that "this federal forum would have minimal interest in determining Plaintiffs entitlement to workers' compensation benefits." *Id*. at 590. The court ultimately did not abstain, but only because the plaintiff's RICO claim was dismissed for other reasons, thus depriving the federal court of jurisdiction. *Id* If workers' compensation legislation, which is present in every state even if with different details, is a sufficiently important state interest to warrant abstention, then Michigan's No-Fault Act must be an even clearer justification, standing as it does in stark contrast to most states' systems. This Court should, like the *Moon* court, choose not to endanger the legislature's chosen policy balance.[13]

---

[13] The Sixth Circuit recently addressed *Burford* abstention in the context of an action for both workers' compensation and RICO claims in *Jackson v. Segwick*

45

Moreover, as detailed in the previous section, this is a No-Fault Act case notwithstanding State Farm's attempts to pretend otherwise. State Farm refers to Defendants' claims as "fraudulent" solely so as to avoid stating the obvious, i.e., that State Farm is really disputing reasonableness and medical necessity under MCL 500.3107(1)(a). Likewise, State Farm tries to twist the facts into a RICO claim simply in order to justify jurisdiction in this Court, forgetting that the Court is not required to exercise its jurisdiction under *Burford*. This case is, at a minimum "entangled in a skein of state law that must be untangled before the federal case can proceed." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 727 (1996).  More specifically, to the extent that there are any genuine federal issues here at all, they are entwined with questions of medical necessity and reasonableness – the key standards under the No-Fault Act. Consequently, this

---

*Claims Mgmt. Servs.*, 699 F.3d 466 (6th Cir. 2012). There, the court found that the *Burford* doctrine "does not apply," because "[t]his complaint seeks only monetary damages relating to mail fraud, not additional worker's compensation." *Id.* at 480. In other words, the case primarily involved federal law and thus was not an appropriate situation to abstain in favor of the state courts; the workers' compensation claims made no difference to the damages awarded, so any action by state agencies would have been immaterial. To the contrary, the instant case (as well as *Moon*, *supra*) is inherently founded in state law, and state agency action is crucial. The workers' compensation claims in *Moon* were pending before the relevant agency, and the state-law issues in the current dispute are being resolved by state courts. This Court must necessarily decide questions of reasonableness and medical necessity, which are at the heart of the Michigan No-Fault Act, and State Farm's attempt at warping these issues into RICO claims is no more than an artifice.

46

Court should ignore State Farm's transparent dissimulation, recognize the state-law basis for this entire action, and abstain.

**E.** **Collateral Estoppel Compels Dismissal of The Complaint or Portions Thereof**

The Complaint contends that, as part of a scheme to defraud beginning as early as 2007, all the medical services rendered by Defendants upon Plaintiff's Insureds, for which Defendants have requested reimbursement from Plaintiff, were not performed and/or not medically necessary. (*See e.g.*, Dkt. #1, ¶¶ 278, 282). Accordingly, Plaintiff seeks to recover all the reimbursement it has made to Defendants to date and a declaratory judgment that it need not pay any as yet unpaid requests for reimbursement. As a result, State Farm would have this Court effectively set aside any and all settlements and state court judgments previously entered on those claims because they are part of the same claims on which it seeks judgment on in this litigation.

It is also believed that a number of other Insureds have likewise successfully litigated issues of reasonableness and medical necessity to judgment in state (or federal) courts. Defendants believe the identification of which Insureds have successfully litigated this issue to judgment is easily accomplished by State Farm and that it should be compelled to disclose this information.

Based on prior judgments determining that the present Defendants' requests

47

for reimbursement were proper and reimbursable, Plaintiff is collaterally estopped from pursuing the present litigation. Defendants' medical services have been found to have been performed and properly reimbursable with regard to many Insureds and this destroys the basis for the Plaintiff's lawsuit— that *none* of the medical services rendered to any of the Insureds are reimbursable because all such services were not performed, and/or not medically necessary and/or otherwise part of a scheme to defraud. Alternatively, on the basis of collateral estoppel and/or res judicata, certainly Plaintiff is not entitled to any recovery with regard to Insureds who have already obtained judgments requiring State Farm's reimbursement of Defendants' claims.

A final judgment precludes the parties or their privies from re-litigating issues that were, or could have been, raised in the action. "[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of that issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 US. 90, 94 (1980).[14] Under the United States Constitution's Full Faith and Credit Clause, U.S. Const., Art. IV, § 1, and the statute implementing that provision, 28 U.S.C. § 1738, federal courts

---

[14] The Restatement (Second) of Judgments now speaks of res judicata as "claim preclusion" and collateral estoppel as "issue preclusion," but, however denominated, the preclusive effect is the same. *McCurry*, 449 U.S. at 94, n.5 (citing Restatement (Second) of Judgments § 74 (Tent. Draft No. 3, Apr. 15, 1976)).

considering whether to give preclusive effect to state court judgments must apply the state's law of collateral estoppel. *See Migra v. Warren City School Dist.*, 465 U.S. 75, 81 (1984).

Generally, for collateral estoppel to apply three elements must be met: (1) "a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment;" (2) "the same parties must have had a full [and fair] opportunity to litigate the issue;" and (3) "there must be mutuality of estoppel." *Storey v. Meijer, Inc.*, 431 Mich. 368, 373, n.3 (1988). But, "where collateral estoppel is being asserted defensively against a party who has already had a full and fair opportunity to litigate the issue, mutuality is not required." *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 680-81 (2004).

The first two elements necessary for collateral estoppel to apply are satisfied. Defendants and the Insureds have previously litigated issues of reasonableness and/or medical necessity issues with State Farm to judgment. Defendants are asserting collateral estoppel against Plaintiff who had a full and fair opportunity to litigate the issue. Therefore, the third element, mutuality of estoppel, need not be established. Therefore, this Court should dismiss the present litigation.

The premise of Plaintiff's Complaint is that, as part of a scheme to defraud from 2007 forward, all medical services rendered by Defendants and submitted to Plaintiff for reimbursement were not performed, and/or not medically necessary

49

and therefore not properly reimbursable. However, the application of collateral estoppel with regard to prior judgment judgments obtained by other State Farm Insureds defeats this premise.  Therefore, Plaintiff has not stated a basis on which the relief it requests—recovery of all reimbursement it has made to Defendants to date and a declaratory judgment that it need not pay any as yet unpaid requests for reimbursement—can be granted. *See* Fed. R. Civ. P. 12(b)(6). Alternatively, Plaintiff's claims are properly dismissed as to certain Insureds/Claim Nos. based on collateral estoppel to the extent Plaintiff seeks recovery of reimbursement paid for medical services rendered by Defendants Insureds who have obtained a judgment against State Farm for payment of Defendants' reimbursement claims.

Additionally, Plaintiff's claims are properly dismissed as to certain Insureds/Claim Nos. based on the doctrine of accord and satisfaction and upon the settlement agreements and releases signed by State Farm and their Insureds. This is appropriate to the extent Plaintiff seeks recovery of reimbursement paid for medical services rendered by Defendants to Insureds, where the Insureds brought suit against State Farm seeking such recovery and State Farm entered into a settlement and release of those claims. Defendants believe the identification of such Insureds is easily accomplished by State Farm and that it should be compelled to disclose this information.

**F.  State Farm Has Voluntarily Waived Any Right to Contest the Propriety of Claims Previously Paid**

Waiver is defined as the intentional and voluntary relinquishment of a known right. *Moore v. First Security Cas. Co.*, 224 Mich. App. 370, 376 (1997). Waiver may be shown "by proof of express language of agreement or inferably established by such declaration, act, and conduct of the party against whom it is claimed." *Angott v. Chubb Group of Ins. Cos.*, 270 Mich. App. 465, 470 (2006).

As stated above, State Farm acknowledges that it has a statutory and contractual obligation to promptly and fairly process claims (i.e. thirty days), see Dkt. #1, ¶ 254, but neglected to mention that that this period does not begin to run until "reasonable proof" has been provided by the claimant. MCL 500.3142(2). If an insurer desires to challenge or investigate an amount charged it can and should conduct an investigation during the thirty day period to establish a lesser amount. State Farm knew it had a right to request reasonable proof, and could and should have investigated claims before payment. Having made payment, State Farm must be deemed to have waived any challenges as to the propriety of those claims.

**G. State Farm's State Law Claims Must Also Be Dismissed**

### 1.  Common Law Fraud Claim - (Second Cause of Action)

For the reasons stated above regarding State Farm's failure to plead mail fraud with the requisite particularity required by Rule 9(b), State Farm's common

51

law fraud claim must also be dismissed.

### 2.  Unjust Enrichment Claim - (Third Cause of Action)

Unjust enrichment involves a theory of recovery under which the law will imply a contract where a Plaintiff properly pleads that "(1) the plaintiff conferred a benefit upon the defendant; (2) the defendant knew of such benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment." *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 501 (6th Cir. 2003).

As an initial matter, Plaintiff's unjust enrichment claim must be dismissed because all of the alleged payments made to Defendants are subject to or governed by express insurance contracts between State Farm and the insured which precludes Plaintiff's equitable claim for unjust enrichment. *Williams v. Pledged Prop. II, LLC*, 508 Fed. Appx. 465, 469 (6th Cir. 2012). *Oak St. Funding, LLC v. Ingram*, 749 F. Supp. 2d 568, 580 (E.D. Mich. 2010) ("A contract will be implied only if there is no express contract covering the same subject matter."). Because there is an express contract between State Farm and the insured covering payment of PIP benefits and allowable expenses (the rights to which were assigned to some of the Defendants), State Farm could not maintain a claim for unjust enrichment.

Even assuming *arguendo* that there was no express contract covering the same subject matter, Plaintiff has failed to plead sufficient facts in support of its

52

bare and conclusory assertions that "Defendants have been unjustly enriched by over $4.7 million" because "Defendants knowingly billed for services that were not rendered and were not medically necessary, the circumstances are such that it would be unjust and inequitable to allow them to retain the benefit of the monies paid." (Dkt. #1, ¶¶ 270-271). What were the actual benefits that Defendants Zack and Katz (as opposed to any other Defendant) purportedly received from Plaintiff? No facts on point can be gleaned from the face of the Complaint. Instead, Plaintiff merely recites the elements of unjust enrichment in conclusory fashion. *See Matthews v. Mortg. Elec. Registration Sys*., 2011 U.S. Dist. LEXIS 69501, at *23 (E.D. Mich. Apr. 5, 2011) (dismissing Plaintiff's claim for unjust enrichment in part because the complaint pleads the requisite elements of unjust enrichment in a conclusory fashion); *see also Foster v. Argent Mortg. Co., L.L.S*., 2010 U.S. Dist. LEXIS 27926, at *17-18 (E.D. Mich. Jan. 25, 2010) (same).

Moreover, as Plaintiff acknowledges, its unjust enrichment claim stems from the alleged fraudulent activity (i.e. that Defendants were unjustly enriched because of fraud).  (Dkt. #1, ¶¶ 31, 270-272). As such, Plaintiff's unjust enrichment claim must meet Rule 9(b)'s pleading requirements. *Boston v. Clark*, 2012 U.S. Dist. LEXIS 130496, at *20 (E.D. Mich. Sept. 13, 2012); *see also Argent*, 2010 U.S. Dist. LEXIS 27926, at *18-19.  Because State Farm has failed to plead fraud with the requisite specificity, Plaintiff has failed to state a claim for unjust enrichment.

53

### 3. Portions of State Farm's Common Law Fraud and Unjust Enrichment Claims are Time Barred

The statute of limitations for common law fraud and unjust enrichment claims is six years pursuant to MCL 600.5813 which provides that "all other personal actions shall be commenced within the period of six years after the claims accrue and not afterwards unless a different period is stated in the statutes." Pursuant to MCL 600.5827, a claim for common law fraud and unjust enrichment "accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results."

Accordingly, State Farm's Common Law Fraud claim with respect to any alleged fraudulent claims that were submitted before January 21, 2008 (more than 6 years prior to the filing of the Complaint) is barred because the claim would have accrued at the time of the alleged fraudulent submission.  Similarly, the Unjust Enrichment claim is barred with respect to amounts paid to Defendants prior to January 21, 2008 because the claim would have accrued at the time of payment. Therefore, on its face, State Farm's Common Law Fraud and Unjust Enrichment claims with respect to claims submitted and/or paid before January 21, 2008 are not plausible and fail to state a claim upon which relief can be granted.

### 4.  The Court Should Decline to Exercise Supplemental Jurisdiction Over the State Law Claims

Since Plaintiff's RICO claims may be properly dismissed, the Court may decline to exercise supplemental jurisdiction over State Farm's state law claims for common law fraud and unjust enrichment based on judicial economy, convenience, fairness to litigants, comity or when there are compelling reasons for doing so.  *See Carter v. Mich. Dep't of Corr.*, 2013 U.S. Dist. LEXIS 134781, at \*39-43 (E.D. Mich. 2013); *see also Sanders v. Mich. First Credit Union Tellers*, 2010 U.S. Dist. LEXIS 80908, at \*8-9 (E.D. Mich. 2010) (Declining to exercise supplemental jurisdiction over state law claims where federal claims were dismissed) (Murphy, J.); *Grossman v. DTE Energy Co.*, 2010 U.S. Dist. LEXIS 133572, at \*11, n.3 (E.D. Mich. 2010) ("The Court declines to exercise supplemental jurisdiction over this matter because all federal claims in this case have been dismissed. Since this case is still at the motion-to-dismiss stage, there is no good cause for retaining jurisdiction.") (Murphy, J.) .

### H.  State Farm's Declaratory Judgment Claim (First Cause of Action) is Not Proper

Federal courts' authority to hear declaratory judgment claims, such as State Farm's First Cause of Action, is delineated in 28 U.S.C. § 2201(a) and Fed. R. Civ. P. 57. Pursuant to this statute and rule, the federal courts are not required to exercise jurisdiction over requests for declaratory judgment and instead have an

55

extraordinarily large degree of discretion in deciding which declaratory judgment actions to adjudicate. The instant case is an eminently appropriate situation for this Court to decline to exercise jurisdiction.

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) is one of several U.S. Supreme Court cases holding that federal courts are given substantial discretion in deciding whether or not to exercise their declaratory relief jurisdiction. Pursuant to *Wilton*, the courts have no obligation to hear or decide particular declaratory cases. In fact, courts need not even find extraordinary circumstances in order to abstain from rendering judgment. Sixth Circuit cases agree. *See e.g., Aetna Casualty and Sur. Co. v. Sunshine Corp.*, 74 F.3d 685 (6th Cir. 1996).

While exercise of jurisdiction over requested declaratory relief may not be declined on a whim, there are numerous valid reasons to decline. In particular, the Sixth Circuit has listed five factors to be used in determining whether or not to adjudicate a case: (1) whether the declaratory action would settle the controversy, (2) whether the action would serve a useful purpose by clarifying the legal relations at issue, (3) whether the action is merely intended to advance "procedural fencing" or "a race for res judicata," (4) whether the action would increase friction between state and federal courts and improperly encroach upon state jurisdiction, and (5) whether there is a better or more effective alternative remedy. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008) (citing *Grand Trunk W.R.R. Co.*

56

*v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir. 1984)).

The first of these *Scottsdale* factors clearly favors declining to rule on State Farm's declaratory judgment claim. Whatever decisions this Court might make regarding the reasonableness of Defendants' insurance claims and the medical necessity of Defendants' services, these same issues will continue to be litigated in state court, as indeed they are being litigated currently. No Michigan state court is bound to accept this Court's judgment, especially on an issue that is so inherently bound up in state law. To the contrary, a decision by this Court could easily end up contradicting state court opinions and thus leaving the disputed questions farther from resolution, not closer to it.

For the same reasons, State Farm's claim fails to meet the second *Scottsdale* factor. Due to the huge number of ongoing cases dealing with these same issues, a declaratory judgment by this Court will not clarify the legal relations between State Farm and Defendants. The potential for contradictory judgments will, instead, significantly muddy the water in this respect.

As for "procedural fencing," it is apparent that State Farm is engaging in exactly the sort of "race for res judicata" against which the *Scottsdale* court admonished parties. If State Farm's concern were simply to obtain a fair hearing for its claims, it had no need whatsoever to file this action. Numerous state court actions were and are litigating the reasonableness and medical necessity of charges

57

and treatments such as Defendants', and there is no allegation that these ongoing cases would have been inadequate in any way. The sole reason to file yet another case before *this Court* is to forum shop and thus gain a procedural advantage.

*Scottsdale* factors #4 and #5, however, are truly decisive. Having a federal court decide what is a reasonable charge and what is a medical necessity under Michigan law (which this Court must necessarily do in order to adjudicate State Farm's claims) would unavoidably create friction with the state, and the pending state court actions are a better alternative remedy. Automobile insurance under the No-Fault Act is, after all, purely a state-law issue. Moreover, the Michigan legislature deliberately left the standards for medical necessity and reasonableness under the statute vague; they could have specified a more precise rule, but they chose not to do so. Making the determination demanded by State Farm would both undermine the Michigan legislature's chosen balance and go directly against the legislature's intent. When a case involves only complicated and factual issues of state law, and there is no suggestion that a state court could not decide the issues fairly and impartially, federal courts should decline to issue declaratory relief. *American Home Assurance Co. v. Evans*, 791 F.2d 61 (6th Cir. 1986). This Court hence should not exercise its discretionary jurisdiction over State Farm's declaratory judgment claim.

# V. **CONCLUSION**

WHEREFORE, Defendants Scott P. Zack, D.C and David M. Katz, D.C respectfully request that this Court enter an order dismissing the Complaint in its entirety against them pursuant to Fed. R. Civ. P. 9(b) and Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

BUTZEL LONG, a professional corporation

By:/s/ Michael J. Lavoie
    Michael J. Lavoie (P32584)
    Robin Luce Herrmann (P46880)
    Ziyad I. Hermiz (P72236)
150 W. Jefferson Ave., Suite 100
Detroit, Michigan  48226
(313) 225-7000
lavoie@butzel.com
luce-herrmann@butzel.com
hermiz@butzel.com
*Attorneys for Defendants Scott P. Zack, D.C.*
*and David M. Katz, D.C.*

Dated:  April 7, 2014

1461546

59

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 7, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

Respectfully submitted,

BUTZEL LONG, a professional corporation

By:/s/ Michael J. Lavoie
      Michael J. Lavoie (P32584)
      Robin Luce Herrmann (P46880)
      Ziyad I. Hermiz (P72236)
150 W. Jefferson Ave., Suite 100
Detroit, Michigan 48226
(313) 225-7000
lavoie@butzel.com
luce-herrmann@butzel.com
hermiz@butzel.com
*Attorneys for Defendants Scott P. Zack, D.C.*
*and David M. Katz, D.C*

60