# EXHIBIT 1

# HOUSE BILL No. 4936

September 13, 2011, Introduced by Rep. Lund and referred to the Committee on Insurance.

A bill to amend 1956 PA 218, entitled

"The insurance code of 1956,"

by amending sections 3101, 3104, 3107, 3113, 3114, 3115, 3135, 3157, 3163, and 3172 (MCL 500.3101, 500.3104, 500.3107, 500.3113, 500.3114, 500.3115, 500.3135, 500.3157, 500.3163, and 500.3172), section 3101 as amended by 2008 PA 241, section 3104 as amended by 2002 PA 662, section 3107 as amended by 1991 PA 191, section 3113 as amended by 1986 PA 93, section 3114 as amended by 2002 PA 38, sections 3135 and 3163 as amended by 2002 PA 697, and section 3172 as amended by 1984 PA 426, and by adding sections 1245, 3107c, and 3178.

THE PEOPLE OF THE STATE OF MICHIGAN ENACT:

1    SEC. 1245. (1) AN INSURANCE PRODUCER AND AN AGENCY AND THEIR

2  AUTHORIZED REPRESENTATIVES AND EMPLOYEES INVOLVED IN THE SALE OR

2

1   PURCHASE OF PERSONAL PROTECTION INSURANCE BENEFITS UNDER SECTION

2   3107 ARE NOT LIABLE FOR DAMAGES ARISING FROM THE LOSS OR INADEQUACY

3   OF PERSONAL PROTECTION INSURANCE BENEFITS AND DO NOT HAVE ANY OTHER

4   LIABILITY FOR DAMAGES CAUSED BY, ARISING OUT OF, OR RELATED TO ANY

5   ACTUAL OR ALLEGED ACT, ERROR, OR OMISSION CONCERNING THE CHOICE OF

6   PERSONAL PROTECTION INSURANCE BENEFIT AMOUNTS UNDER SECTION 3107.

7        (2) AS USED IN THIS SECTION, "AGENCY" MEANS THAT TERM AS

8   DEFINED IN SECTION 1243.

9        Sec. 3101. (1) The owner or registrant of a motor vehicle

10  required to be registered in this state shall maintain security for

11  payment of benefits under personal protection insurance ,—IN AN

12  AMOUNT NOT LESS THAN THAT REQUIRED UNDER SECTION 3107(1)(A)(*i*) AND

13  property protection insurance ,—and residual liability insurance IN

14  AN AMOUNT NOT LESS THAN THAT REQUIRED UNDER SECTION 3009. Security

15  shall only be required to be in effect during the period the motor

16  vehicle is driven or moved upon a highway. Notwithstanding any

17  other provision in this act, an insurer that has issued an

18  automobile insurance policy on a motor vehicle that is not driven

19  or moved upon a highway may allow the insured owner or registrant

20  of the motor vehicle to delete a portion of the coverages under the

21  policy and maintain the comprehensive coverage portion of the

22  policy in effect.

23       (2) As used in this chapter:

24       (a) "Automobile insurance" means that term as defined in

25  section 2102.

26       (b) "Highway" means that term as defined in section 20 of the

27  Michigan vehicle code, 1949 PA 300, MCL 257.20.

3

1      (c) "Motorcycle" means a vehicle having a saddle or seat for

2   the use of the rider, designed to travel on not more than 3 wheels

3   in contact with the ground, which is equipped with a motor that

4   exceeds 50 cubic centimeters piston displacement. The wheels on any

5   attachment to the vehicle shall not be considered as wheels in

6   contact with the ground. Motorcycle does not include a moped, as

7   defined in section 32b of the Michigan vehicle code, 1949 PA 300,

8   MCL 257.32b. Motorcycle does not include an ORV.

9      (d) "Motorcycle accident" means a loss involving the

10   ownership, operation, maintenance, or use of a motorcycle as a

11   motorcycle, but not involving the ownership, operation,

12   maintenance, or use of a motor vehicle as a motor vehicle.

13      (e) "Motor vehicle" means a vehicle, including a trailer,

14   operated or designed for operation upon a public highway by power

15   other than muscular power ~~which~~ THAT has more than 2 wheels. Motor

16   vehicle does not include a motorcycle or a moped, as defined in

17   section 32b of the Michigan vehicle code, 1949 PA 300, MCL 257.32b.

18   Motor vehicle does not include a farm tractor or other implement of

19   husbandry ~~which~~ THAT is not subject to the registration

20   requirements of the Michigan vehicle code pursuant to section 216

21   of the Michigan vehicle code, 1949 PA 300, MCL 257.216. Motor

22   vehicle does not include an ORV.

23      (f) "Motor vehicle accident" means a loss involving the

24   ownership, operation, maintenance, or use of a motor vehicle as a

25   motor vehicle regardless of whether the accident also involves the

26   ownership, operation, maintenance, or use of a motorcycle as a

27   motorcycle.

4

1    (g) "ORV" means a motor-driven recreation vehicle designed for
2    off-road use and capable of cross-country travel without benefit of
3    road or trail, on or immediately over land, snow, ice, marsh,
4    swampland, or other natural terrain. ORV includes, but is not
5    limited to, a multitrack or multiwheel drive vehicle, a motorcycle
6    or related 2-wheel, 3-wheel, or 4-wheel vehicle, an amphibious
7    machine, a ground effect air cushion vehicle, an ATV as defined in
8    section 81101 of the natural resources and environmental protection
9    act, 1994 PA 451, MCL 324.81101, or other means of transportation
10   deriving motive power from a source other than muscle or wind. ORV
11   does not include a vehicle described in this subdivision that is
12   registered for use upon a public highway and has the security
13   described in section 3101 or 3103 in effect.

14   (h) "Owner" means any of the following:

15   (*i*) A person renting a motor vehicle or having the use ~~thereof,~~
16   **OF A MOTOR VEHICLE,** under a lease or otherwise, for a period that
17   is greater than 30 days.

18   (*ii*) A person who holds the legal title to a vehicle, other
19   than a person engaged in the business of leasing motor vehicles who
20   is the lessor of a motor vehicle pursuant to a lease providing for
21   the use of the motor vehicle by the lessee for a period that is
22   greater than 30 days.

23   (*iii*) A person who has the immediate right of possession of a
24   motor vehicle under an installment sale contract.

25   (i) "Registrant" does not include a person engaged in the
26   business of leasing motor vehicles who is the lessor of a motor
27   vehicle pursuant to a lease providing for the use of the motor

5

1    vehicle by the lessee for a period that is greater than 30 days.

2        (3) Security may be provided under a policy issued by an

3    insurer duly authorized to transact business in this state ~~which~~

4    **THAT** affords insurance for the payment of benefits described in

5    subsection (1). A policy of insurance represented or sold as

6    providing security is considered to provide insurance for the

7    payment of the benefits.

8        (4) Security required by subsection (1) may be provided by any

9    other method approved by the secretary of state as affording

10   security equivalent to that afforded by a policy of insurance, if

11   proof of the security is filed and continuously maintained with the

12   secretary of state throughout the period the motor vehicle is

13   driven or moved upon a highway. The person filing the security has

14   all the obligations and rights of an insurer under this chapter.

15   When the context permits, "insurer" as used in this chapter,

16   includes any person filing the security as provided in this

17   section.

18       Sec. 3104. (1) An unincorporated, nonprofit association to be

19   known as the catastrophic claims association ~~, hereinafter referred~~

20   ~~to as the association,~~ is created. Each insurer engaged in writing

21   insurance coverages that provide the security required by section

22   3101(1) within this state, as a condition of its authority to

23   transact insurance in this state, shall be a member of the

24   association and shall be bound by the plan of operation of the

25   association. Each insurer engaged in writing insurance coverages

26   that provide the security required by section 3103(1) within this

27   state, as a condition of its authority to transact insurance in

6

1   this state, shall be considered a member of the association, but

2   only for purposes of premiums under subsection (7)(d). Except as

3   expressly provided in this section, the association is not subject

4   to any laws of this state with respect to insurers, but in all

5   other respects the association is subject to the laws of this state

6   to the extent that the association would be if it were an insurer

7   organized and subsisting under chapter 50.

8       (2) ~~The~~ ALL OF THE FOLLOWING APPLY TO THE AMOUNT OF ULTIMATE

9   LOSS SUSTAINED UNDER PERSONAL PROTECTION INSURANCE COVERAGES:

10      (A) FOR LOSS OCCURRENCES ATTRIBUTABLE TO A MOTOR VEHICLE

11  ACCIDENT FOR POLICIES ISSUED OR RENEWED BEFORE JULY 1, 2012, THE

12  association shall provide, PAYABLE FROM THE MCCA ACCOUNT UNDER

13  SUBSECTION (25)(A), and each member shall accept indemnification

14  for 100% of the amount of ultimate loss sustained under personal

15  protection insurance coverages in excess of the following amounts

16  in each loss occurrence:

17      (*i*) ~~(a)~~ For a motor vehicle accident policy issued or renewed

18  before July 1, 2002, $250,000.00.

19      (*ii*) ~~(b)~~ For a motor vehicle accident policy issued or renewed

20  during the period July 1, 2002 to June 30, 2003, $300,000.00.

21      (*iii*) ~~(c)~~ For a motor vehicle accident policy issued or renewed

22  during the period July 1, 2003 to June 30, 2004, $325,000.00.

23      (*iv*) ~~(d)~~ For a motor vehicle accident policy issued or renewed

24  during the period July 1, 2004 to June 30, 2005, $350,000.00.

25      (*v*) ~~(e)~~ For a motor vehicle accident policy issued or renewed

26  during the period July 1, 2005 to June 30, 2006, $375,000.00.

27      (*vi*) ~~(f)~~ For a motor vehicle accident policy issued or renewed

7

1    during the period July 1, 2006 to June 30, 2007, $400,000.00.

2        (*vii*) ~~(g)~~ For a motor vehicle accident policy issued or renewed

3    during the period July 1, 2007 to June 30, 2008, $420,000.00.

4        (*viii*) ~~(h)~~ For a motor vehicle accident policy issued or renewed

5    during the period July 1, 2008 to June 30, 2009, $440,000.00.

6        (*ix*) ~~(i)~~ For a motor vehicle accident policy issued or renewed

7    during the period July 1, 2009 to June 30, 2010, $460,000.00.

8        (*x*) ~~(j)~~ For a motor vehicle accident policy issued or renewed

9    during the period July 1, 2010 to June 30, 2011, $480,000.00.

10       (*xi*) ~~(k)~~ For a motor vehicle accident policy issued or renewed

11   during the period July 1, 2011 to June 30, ~~2013~~ 2012, $500,000.00.

12   ~~Beginning July 1, 2013, this $500,000.00 amount shall be increased~~

13   ~~biennially on July 1 of each odd-numbered year, for policies issued~~

14   ~~or renewed before July 1 of the following odd numbered year, by the~~

15   ~~lesser of 6% or the consumer price index, and rounded to the~~

16   ~~nearest $5,000.00. This biennial adjustment shall be calculated by~~

17   ~~the association by January 1 of the year of its July 1 effective~~

18   ~~date.~~

19       (B) FOR LOSS OCCURRENCES ATTRIBUTABLE TO A MOTOR VEHICLE

20   ACCIDENT FOR POLICIES ISSUED OR RENEWED ON OR AFTER JULY 1, 2012,

21   EACH MEMBER SHALL RETAIN 100% OF THE AMOUNT OF ULTIMATE LOSS

22   SUSTAINED UNDER PERSONAL PROTECTION INSURANCE COVERAGES UP TO

23   $500,000.00 IN EACH LOSS OCCURRENCE. FOR AN ULTIMATE LOSS OF

24   $500,000.00 TO $1,000,000.00, THE ASSOCIATION SHALL PROVIDE,

25   PAYABLE FROM THE EXCESS PIP ACCOUNT UNDER SUBSECTION (25)(B), AND

26   EACH MEMBER SHALL ACCEPT, INDEMNIFICATION FOR 90% OF THE AMOUNT OF

27   ULTIMATE LOSS SUSTAINED UNDER PERSONAL PROTECTION INSURANCE

8

1   COVERAGES. FOR AN ULTIMATE LOSS IN EXCESS OF $1,000,000.00, THE

2   ASSOCIATION SHALL PROVIDE, PAYABLE FROM THE EXCESS PIP ACCOUNT

3   UNDER SUBSECTION (25)(B), AND EACH MEMBER SHALL ACCEPT,

4   INDEMNIFICATION FOR 100% OF THE AMOUNT OF ULTIMATE LOSS SUSTAINED

5   UNDER PERSONAL PROTECTION INSURANCE COVERAGES.

6      (3) An insurer may withdraw from the association only upon

7   ceasing to write insurance that provides the security required by

8   section 3101(1) in this state.

9      (4) An insurer whose membership in the association has been

10   terminated by withdrawal shall continue to be bound by the plan of

11   operation, and upon withdrawal ,—all unpaid premiums that have been

12   charged to the withdrawing member are payable as of the effective

13   date of the withdrawal.

14      (5) An unsatisfied net liability to the association of an

15   insolvent member shall be assumed by and apportioned among the

16   remaining members of the association as provided in the plan of

17   operation. The association has all rights allowed by law on behalf

18   of the remaining members against the estate or funds of the

19   insolvent member for sums MONEY due TO the association.

20      (6) If a member has been merged or consolidated into another

21   insurer or another insurer has reinsured a member's entire business

22   that provides the security required by section 3101(1) in this

23   state, the member and successors in interest of the member remain

24   liable for the member's obligations.

25      (7) The association shall do all of the following on behalf of

26   the members of the association:

27      (a) Assume 100% of all liability as provided in subsection

H01952'11 *                            TDR

9

1   (2).

2        (b) Establish procedures by which members shall promptly

3   report to the association each claim that, on the basis of the

4   injuries or damages sustained, may reasonably be anticipated to

5   involve the association if the member is ultimately held legally

6   liable for the injuries or damages. Solely for the purpose of

7   reporting claims, the member shall in all instances consider itself

8   legally liable for the injuries or damages. The member shall also

9   advise the association of subsequent developments likely to

10  materially affect the interest of the association in the claim.

11       (c) Maintain relevant loss and expense data relative to all

12  liabilities of the association and require each member to furnish

13  statistics, in connection with liabilities of the association, at

14  the times and in the form and detail as may be required by the plan

15  of operation.

16       (d) In a manner provided for in the plan of operation,

17  calculate and charge to members of the association a ~~total~~ premium

18  **FOR THE MCCA ACCOUNT UNDER SUBSECTION (25)(A) AND A PREMIUM FOR THE**

19  **EXCESS PIP ACCOUNT UNDER SUBSECTION (25)(B). EACH PREMIUM SHALL BE**

20  sufficient to cover the expected losses and expenses of the

21  association that the association will likely incur during the

22  period for which the premium is applicable **FOR EACH ACCOUNT**. ~~The~~

23  **EACH** premium shall include an amount to cover incurred but not

24  reported losses for the period and may be adjusted for any excess

25  or deficient premiums from previous periods. Excesses or

26  deficiencies from previous periods may be fully adjusted in a

27  single period or may be adjusted over several periods in a manner

10

1  provided for in the plan of operation. Each member shall be charged
2  an amount equal to that member's total written car years of
3  insurance providing the security required by section 3101(1) or
4  3103(1), or both, written in this state during the period to which
5  the premium applies, multiplied by the average premium per car. **THE**
6  **PREMIUM FOR THE EXCESS PIP ACCOUNT SHALL BE ADJUSTED TO REFLECT THE**
7  **AMOUNT OF COVERAGE SELECTED BY EACH MEMBER'S INSUREDS UNDER SECTION**
8  **3107.** The average premium per car shall be the total premium
9  calculated divided by the total written car years of insurance
10 providing the security required by section 3101(1) or 3103(1)
11 written in this state of all members during the period to which the
12 premium applies. A member shall be charged a premium for a historic
13 vehicle that is insured with the member of 20% of the premium
14 charged for a car insured with the member. As used in this
15 subdivision:
16     (*i*) "Car" includes a motorcycle but does not include a historic
17 vehicle.
18     (*ii*) "Historic vehicle" means a vehicle that is a registered
19 historic vehicle under section 803a or 803p of the Michigan vehicle
20 code, 1949 PA 300, MCL 257.803a and 257.803p.
21     (e) Require and accept the payment of premiums from members of
22 the association as provided for in the plan of operation. The
23 association shall do either of the following:
24     (*i*) Require payment of the premium in full within 45 days after
25 the premium charge.
26     (*ii*) Require payment of the premiums to be made periodically to
27 cover the actual cash obligations of the association.

H01952'11 *                                                    TDR

11

1    (f) Receive and distribute all ~~sums~~ **MONEY** required by the

2  operation of the association.

3    (g) Establish procedures for reviewing claims procedures and

4  practices of members of the association. If the claims procedures

5  or practices of a member are considered inadequate to properly

6  service the liabilities of the association, the association may

7  undertake or may contract with another person, including another

8  member, to adjust or assist in the adjustment of claims for the

9  member on claims that create a potential liability to the

10  association and may charge the cost of the adjustment to the

11  member.

12    (8) In addition to other powers granted to it by this section,

13  the association may do all of the following:

14    (a) Sue and be sued in the name of the association. A judgment

15  against the association shall not create any direct liability

16  against the individual members of the association. The association

17  may provide for the indemnification of its members, members of the

18  board of directors of the association, and officers, employees, and

19  other persons lawfully acting on behalf of the association.

20    (b) Reinsure all or any portion of its potential liability

21  with reinsurers licensed to transact insurance in this state or

22  approved by the commissioner.

23    (c) Provide for appropriate housing, equipment, and personnel

24  as may be necessary to assure the efficient operation of the

25  association.

26    (d) Pursuant to the plan of operation, adopt reasonable rules

27  for the administration of the association, enforce those rules, and

12

1   delegate authority, as the board considers necessary to assure the

2   proper administration and operation of the association consistent

3   with the plan of operation.

4        (e) Contract for goods and services, including independent

5   claims management, actuarial, investment, and legal services, from

6   others within or without this state to assure the efficient

7   operation of the association.

8        (f) Hear and determine complaints of a company or other

9   interested party concerning the operation of the association.

10       (g) Perform other acts not specifically enumerated in this

11  section that are necessary or proper to accomplish the purposes of

12  the association and that are not inconsistent with this section or

13  the plan of operation.

14       (9) A board of directors is created ~~, hereinafter referred to~~

15  ~~as the board, which shall be~~ **THAT IS** responsible for the operation

16  of the association consistent with the plan of operation and this

17  section.

18       (10) The plan of operation shall provide for all of the

19  following:

20       (a) The establishment of necessary facilities.

21       (b) The management and operation of the association.

22       (c) Procedures to be utilized in charging premiums, including

23  adjustments from excess or deficient premiums from prior periods.

24       (d) Procedures governing the actual payment of premiums to the

25  association.

26       (e) Reimbursement of each member of the board by the

27  association for actual and necessary expenses incurred on

H01952'11 *                                                    TDR

13

1   association business.

2       (f) The investment policy of the association.

3       (g) Any other matters required by or necessary to effectively

4   implement this section.

5       (11) Each board shall include members that would contribute a

6   total of not less than 40% of the total ~~premium~~ PREMIUMS calculated

7   pursuant to subsection (7)(d). Each director ~~shall be~~ IS entitled

8   to 1 vote. The initial term of office of a director ~~shall be~~ IS 2

9   years.

10      (12) As part of the plan of operation, the board shall adopt

11  rules providing for the composition and term of successor boards to

12  the initial board, consistent with the membership composition

13  requirements in subsections (11) and (13). Terms of the directors

14  shall be staggered so that the terms of all the directors do not

15  expire at the same time and so that a director does not serve a

16  term of more than 4 years.

17      (13) The board shall consist of 5 directors, and the

18  commissioner shall be an ex officio member of the board without

19  vote.

20      (14) Each director shall be appointed by the commissioner and

21  shall serve until that member's successor is selected and

22  qualified. The chairperson of the board shall be elected by the

23  board. A vacancy on the board shall be filled by the commissioner

24  consistent with the plan of operation.

25      (15) After the board is appointed, the board shall meet as

26  often as the chairperson, the commissioner, or the plan of

27  operation shall require, or at the request of any 3 members of the

14

1   board. The chairperson shall retain the right to vote on all
2   issues. Four members of the board constitute a quorum.

3       (16) An annual report of the operations of the association in
4   a form and detail as ~~may be~~ determined by the board shall be
5   furnished to each member.

6       (17) Not more than 60 days after the initial organizational
7   meeting of the board, the board shall submit to the commissioner
8   for approval a proposed plan of operation consistent with the
9   objectives and provisions of this section, which shall provide for
10  the economical, fair, and nondiscriminatory administration of the
11  association and for the prompt and efficient provision of
12  indemnity. If a plan is not submitted within this 60-day period,
13  then the commissioner, after consultation with the board, shall
14  formulate and place into effect a plan consistent with this
15  section.

16      (18) The plan of operation, unless approved sooner in writing,
17  shall be considered to meet the requirements of this section if it
18  is not disapproved by written order of the commissioner within 30
19  days after the date of its submission. Before disapproval of all or
20  any part of the proposed plan of operation, the commissioner shall
21  notify the board in what respect the plan of operation fails to
22  meet the requirements and objectives of this section. If the board
23  fails to submit a revised plan of operation that meets the
24  requirements and objectives of this section within the 30-day
25  period, the commissioner shall enter an order accordingly and shall
26  immediately formulate and place into effect a plan consistent with
27  the requirements and objectives of this section.

15

1    (19) The proposed plan of operation or amendments to the plan

2    of operation are subject to majority approval by the board,

3    ratified by a majority of the membership having a vote, with voting

4    rights being apportioned according to the premiums charged in

5    subsection (7)(d), and are subject to approval by the commissioner.

6    (20) Upon approval by the commissioner and ratification by the

7    members of the plan submitted, or upon the promulgation of a plan

8    by the commissioner, each insurer authorized to write insurance

9    providing the security required by section 3101(1) in this state,

10   as provided in this section, is bound by and shall formally

11   subscribe to and participate in the plan approved as a condition of

12   maintaining its authority to transact insurance in this state.

13   (21) The association is subject to all the reporting, loss

14   reserve, and investment requirements of the commissioner to the

15   same extent as ~~would~~ IS a member of the association.

16   (22) Premiums charged members by the association shall be

17   recognized in the rate-making procedures for insurance rates in the

18   same manner that expenses and premium taxes are recognized.

19   (23) The commissioner or an authorized representative of the

20   commissioner may visit the association at any time and examine any

21   and all the association's affairs.

22   (24) The association does not have liability for losses

23   occurring before July 1, 1978.

24   **(25) THE ASSOCIATION SHALL MAINTAIN THE FOLLOWING 2 SEPARATE**

25   **ACCOUNTS OUT OF WHICH MEMBERS SHALL BE INDEMNIFIED FOR ULTIMATE**

26   **LOSS:**

27   **(A) AN MCCA ACCOUNT TO INDEMNIFY FOR LOSS OCCURRENCES**

16

1    ATTRIBUTABLE TO A MOTOR VEHICLE ACCIDENT THAT OCCURS BEFORE JULY 1,

2    2012.

3        (B) AN EXCESS PIP ACCOUNT TO INDEMNIFY FOR LOSS OCCURRENCES

4    ATTRIBUTABLE TO A MOTOR VEHICLE ACCIDENT THAT OCCURS ON OR AFTER

5    JULY 1, 2012.

6        (26) EACH ACCOUNT UNDER SUBSECTION (25) SHALL BE SELF-

7    SUPPORTING, AND ASSETS OR LIABILITIES SHALL NOT BE TRANSFERRED

8    BETWEEN THE ACCOUNTS.

9        (27) ~~(25)~~ As used in this section:

10   ~~(a) "Consumer price index" means the percentage of change in~~

11   ~~the consumer price index for all urban consumers in the United~~

12   ~~States city average for all items for the 24 months prior to~~

13   ~~October 1 of the year prior to the July 1 effective date of the~~

14   ~~biennial adjustment under subsection (2)(k) as reported by the~~

15   ~~United States department of labor, bureau of labor statistics, and~~

16   ~~as certified by the commissioner.~~

17       (A) "ASSOCIATION" MEANS THE CATASTROPHIC CLAIMS ASSOCIATION

18   CREATED IN SUBSECTION (1).

19       (B) "BOARD" MEANS THE BOARD OF DIRECTORS CREATED IN SUBSECTION

20   (9).

21       (C) ~~(b)~~ "Motor vehicle accident policy" means a policy

22   providing the coverages required under section 3101(1).

23       (D) ~~(c)~~ "Ultimate loss" means the actual loss amounts that a

24   member is obligated to pay and that are paid or payable by the

25   member, and ~~do~~ DOES not include claim expenses. An ultimate loss is

26   incurred by the association on the date that the loss occurs.

27       Sec. 3107. (1) ~~Except as provided in subsection (2), personal~~

17

1   PERSONAL protection insurance benefits are payable for the

2   following:

3       (a) Allowable expenses ~~consisting of all reasonable charges~~ AS

4   PROVIDED IN SUBPARAGRAPH (*i*), (*ii*), (*iii*), OR (*iv*) incurred for

5   reasonably necessary products, services, and accommodations for an

6   injured person's care, recovery, or rehabilitation. ~~Allowable~~

7   ~~expenses within personal protection insurance coverage shall not~~

8   ~~include charges for a hospital room in excess of a reasonable and~~

9   ~~customary charge for semiprivate accommodations except if the~~

10  ~~injured person requires special or intensive care, or for funeral~~

11  ~~and burial expenses in the amount set forth in the policy which~~

12  ~~shall not be less than $1,750.00 or more than $5,000.00.~~ ANY CHANGE

13  IN A LIMIT SELECTED UNDER SUBPARAGRAPH (*i*), (*ii*), (*iii*), OR (*iv*)

14  APPLIES ONLY TO BENEFITS PAYABLE FOR AN ACCIDENT THAT OCCURS ON OR

15  AFTER THE DATE OF THE CHANGE IN THE LIMIT. AN INSURER SHALL PROVIDE

16  THE FOLLOWING COVERAGES, AND AN INSURED SHALL SELECT 1 OF THE

17  FOLLOWING COVERAGES, WHICH SHALL APPLY TO THE INSURED NAMED IN THE

18  POLICY, THE INSURED'S SPOUSE, AND ANY RELATIVE OF EITHER DOMICILED

19  IN THE SAME HOUSEHOLD:

20      (*i*) COVERAGE FOR ALLOWABLE EXPENSES CONSISTING OF ALL

21  REASONABLE CHARGES INCURRED UP TO A MAXIMUM OF $250,000.00 FOR

22  REASONABLY NECESSARY PRODUCTS, SERVICES, AND ACCOMMODATIONS FOR AN

23  INJURED PERSON'S CARE, RECOVERY, OR REHABILITATION.

24      (*ii*) COVERAGE FOR ALLOWABLE EXPENSES CONSISTING OF ALL

25  REASONABLE CHARGES INCURRED UP TO A MAXIMUM OF $500,000.00 FOR

26  REASONABLY NECESSARY PRODUCTS, SERVICES, AND ACCOMMODATIONS FOR AN

27  INJURED PERSON'S CARE, RECOVERY, OR REHABILITATION.

H01952'11 *                                                    TDR

18

1      (*iii*) COVERAGE FOR ALLOWABLE EXPENSES CONSISTING OF ALL

2  REASONABLE CHARGES INCURRED UP TO A MAXIMUM OF $1,000,000.00 FOR

3  REASONABLY NECESSARY PRODUCTS, SERVICES, AND ACCOMMODATIONS FOR AN

4  INJURED PERSON'S CARE, RECOVERY, OR REHABILITATION.

5      (*iv*) COVERAGE FOR ALLOWABLE EXPENSES CONSISTING OF ALL

6  REASONABLE CHARGES INCURRED UP TO A MAXIMUM OF $5,000,000.00 FOR

7  REASONABLY NECESSARY PRODUCTS, SERVICES, AND ACCOMMODATIONS FOR AN

8  INJURED PERSON'S CARE, RECOVERY, OR REHABILITATION.

9      (b) ~~Work~~ EXCEPT AS PROVIDED IN SUBSECTION (2), WORK loss

10  consisting of loss of income from work an injured person would have

11  performed during the first 3 years after the date of the accident

12  if he or she had not been injured. Work loss does not include any

13  loss after the date on which the injured person dies. Because the

14  benefits received from personal protection insurance for loss of

15  income are not taxable income, the benefits payable for such loss

16  of income shall be reduced 15% unless the claimant presents to the

17  insurer in support of his or her claim reasonable proof of a lower

18  value of the income tax advantage in his or her case, in which case

19  the lower value shall apply. Beginning March 30, 1973, the benefits

20  payable for work loss sustained in a single 30-day period and the

21  income earned by an injured person for work during the same period

22  together shall not exceed $1,000.00, which maximum shall apply pro

23  rata to any lesser period of work loss. Beginning October 1, 1974,

24  the maximum shall be adjusted annually to reflect changes in the

25  cost of living under rules prescribed by the commissioner but any

26  change in the maximum shall apply only to benefits arising out of

27  accidents occurring subsequent to the date of change in the

19

1  maximum.

2      (c) Expenses not exceeding $20.00 per day, reasonably incurred
3  in obtaining ordinary and necessary services in lieu of those that,
4  if he or she had not been injured, an injured person would have
5  performed during the first 3 years after the date of the accident,
6  not for income but for the benefit of himself or herself or of his
7  or her dependent.

8      (2) A person who is 60 years of age or older and in the event
9  of an accidental bodily injury would not be eligible to receive
10 work loss benefits under subsection (1)(b) may waive coverage for
11 work loss benefits by signing a waiver on a form provided by the
12 insurer. An insurer shall offer a reduced premium rate to a person
13 who waives coverage under this subsection for work loss benefits.
14 Waiver of coverage for work loss benefits applies only to work loss
15 benefits payable to the person or persons who have signed the
16 waiver form.

17     (3) THE FOLLOWING APPLY TO SUBSECTION (1)(A):

18     (A) IF AN INSURED FAILS TO SELECT 1 OF THE PERSONAL PROTECTION
19 COVERAGE LIMITS, AN INSURER SHALL PROVIDE COVERAGE IN THE AMOUNT
20 SET FORTH IN SUBSECTION (1)(A)(*i*).

21     (B) THE SAME PERSONAL PROTECTION COVERAGE LIMITS APPLY TO ALL
22 MOTOR VEHICLES INSURED UNDER THE SAME POLICY.

23     (C) COVERAGE LIMITS ARE PROVIDED ON A PER INDIVIDUAL PER LOSS
24 OCCURRENCE BASIS. COVERAGE APPLIES ONLY TO BENEFITS PAYABLE TO THE
25 INSURED NAMED IN THE POLICY, THE INSURED'S SPOUSE, AND ANY RELATIVE
26 OF EITHER DOMICILED IN THE SAME HOUSEHOLD.

27     (D) A PERSON WHO IS NOT AN INSURED NAMED IN A POLICY, NOT THE

20

1    INSURED'S SPOUSE, AND NOT A RELATIVE OF EITHER DOMICILED IN THE

2    SAME HOUSEHOLD IS ENTITLED ONLY TO COVERAGE IN THE LIMIT SET FORTH

3    IN SUBSECTION (1)(A)(*i*). PERSONAL PROTECTION INSURANCE BENEFITS

4    PAYABLE UNDER THIS SUBDIVISION ARE NOT PAYABLE TO THE EXTENT THAT

5    THE BENEFITS COVERING THE SAME LOSS ARE AVAILABLE FROM OTHER

6    SOURCES, REGARDLESS OF THE NATURE AND NUMBER OF BENEFIT SOURCES

7    AVAILABLE AND REGARDLESS OF THE NATURE OR FORM OF THE BENEFITS.

8        (E) REGARDLESS OF THE NUMBER OF MOTOR VEHICLES INSURED OR

9    INSURERS PROVIDING SECURITY IN ACCORDANCE WITH THIS CHAPTER, OR THE

10   PROVISIONS OF ANY OTHER LAW PROVIDING FOR DIRECT BENEFITS WITHOUT

11   REGARD TO FAULT FOR MOTOR OR ANY OTHER VEHICLE ACCIDENTS, A PERSON

12   SHALL NOT RECOVER DUPLICATE BENEFITS FOR THE SAME EXPENSES OR

13   LOSSES INCURRED.

14       (F) IF ELIGIBLE UNDER SECTION 3163, PERSONAL PROTECTION

15   INSURANCE BENEFITS ARE LIMITED TO THE LIMIT SET FORTH IN SECTION

16   3163 FOR ACCIDENTS OCCURRING IN THIS STATE IF THE INJURED PERSON IS

17   A NONRESIDENT OF THIS STATE AND THE INJURED PERSON'S BENEFITS ARE

18   PAYABLE UNDER A POLICY DELIVERED OUTSIDE OF THIS STATE.

19       (G) PERSONAL PROTECTION INSURANCE BENEFITS ARE NOT PAYABLE TO

20   A NONRESIDENT INJURED IN AN ACCIDENT OCCURRING OUTSIDE OF THIS

21   STATE TO THE EXTENT THAT BENEFITS COVERING THE SAME LOSS ARE

22   AVAILABLE FROM OTHER SOURCES, REGARDLESS OF THE NATURE AND NUMBER

23   OF BENEFIT SOURCES AVAILABLE AND REGARDLESS OF THE NATURE OR FORM

24   OF THE BENEFITS. IF PERSONAL PROTECTION INSURANCE BENEFITS ARE

25   PAYABLE TO A NONRESIDENT UNDER THIS SUBDIVISION, THE BENEFITS ARE

26   LIMITED TO THE LIMIT SET FORTH IN SUBSECTION (1)(A)(*i*) PER

27   INDIVIDUAL PER LOSS OCCURRENCE.

21

1    SEC. 3107C. (1) ALLOWABLE EXPENSES UNDER SECTION 3107(1)(A) DO

2  NOT INCLUDE CHARGES FOR A HOSPITAL ROOM IN EXCESS OF A REASONABLE

3  AND CUSTOMARY CHARGE FOR SEMIPRIVATE ACCOMMODATIONS, UNLESS THE

4  INJURED PERSON REQUIRES SPECIAL OR INTENSIVE CARE, OR CHARGES FOR

5  FUNERAL AND BURIAL EXPENSES IN EXCESS OF THE AMOUNT SET FORTH IN

6  THE POLICY, WHICH SHALL NOT BE LESS THAN $1,750.00 OR MORE THAN

7  $5,000.00.

8    (2) ALL OF THE FOLLOWING APPLY TO ALLOWABLE EXPENSES UNDER

9  SECTION 3107(1)(A) FOR ATTENDANT CARE OR NURSING SERVICES PROVIDED

10  IN THE INJURED PERSON'S HOME:

11    (A) PAYMENT IS LIMITED TO A TOTAL OF 56 HOURS PER WEEK FOR

12  SERVICES PERFORMED BY 1 OR MORE INDIVIDUALS WHO ARE NOT CERTIFIED,

13  REGISTERED, OR LICENSED TO RENDER THE ATTENDANT CARE OR NURSING

14  SERVICES UNDER ARTICLE 15 OF THE PUBLIC HEALTH CODE, 1978 PA 368,

15  MCL 333.16101 TO 333.18838.

16    (B) PAYMENT FOR SERVICES PERFORMED BY AN INDIVIDUAL WHO IS NOT

17  CERTIFIED, REGISTERED, OR LICENSED TO RENDER THE ATTENDANT CARE OR

18  NURSING SERVICES UNDER ARTICLE 15 OF THE PUBLIC HEALTH CODE, 1978

19  PA 368, MCL 333.16101 TO 333.18838, SHALL BE $11.00 PER HOUR FOR

20  BASIC CARE OR $17.00 PER HOUR FOR SKILLED CARE. BEGINNING JANUARY

21  1, 2013, THE AMOUNTS IN THIS SUBDIVISION SHALL BE ADJUSTED ANNUALLY

22  TO REFLECT CHANGES IN THE COST OF LIVING UNDER RULES PRESCRIBED BY

23  THE COMMISSIONER IN THE SAME MANNER AS THE MAXIMUM UNDER SECTION

24  3107(1)(B) IS ADJUSTED. ANY CHANGES IN THE AMOUNTS APPLY ONLY TO

25  SERVICES RENDERED AFTER THE EFFECTIVE DATE OF THE CHANGES.

26    (3) AS USED IN THIS SECTION:

27    (A) "BASIC CARE" MEANS ANY OF THE FOLLOWING:

22

1    (*i*) PROVIDING PERSONAL CARE SERVICES, INCLUDING, BUT NOT

2  LIMITED TO, BATHING, SHAMPOOING, SKIN CARE, ORAL HYGIENE, SHAVING

3  MALE PATIENTS, CATHETER CARE, AND TOILETING ASSISTANCE, INCLUDING

4  URINAL AND BEDPAN ASSISTANCE.

5    (*ii*) MEASURING AND DOCUMENTING VITAL SIGNS.

6    (*iii*) PROVIDING OR ASSISTING WITH EXERCISE, AMBULATION, OR

7  POSITIONING AS DIRECTED BY A NURSE OR THERAPIST, INCLUDING

8  AMBULATION WITH OR WITHOUT ASSISTIVE DEVICES, BASIC RANGE OF MOTION

9  BOTH PASSIVE AND ACTIVE, LIGHT PIVOT TRANSFERS, AND ASSISTING FROM

10  BED, CHAIR, OR COMMODE.

11    (*iv*) PROVIDING ENVIRONMENTAL AND HOMEMAKING SERVICES, INCLUDING

12  BED-MAKING WHETHER OCCUPIED OR UNOCCUPIED, LIGHT HOUSEKEEPING TO

13  MAINTAIN A HEALTHY ENVIRONMENT, LAUNDERING OF BEDDING AND CLOTHING,

14  SHOPPING FOR GROCERIES, AND TRANSPORTATION AS NECESSARY.

15    (*v*) ASSISTING WITH SELF-ADMINISTERED MEDICATIONS.

16    (B) "SKILLED CARE" MEANS PROVIDING BASIC CARE SERVICES AND ANY

17  OF THE FOLLOWING:

18    (*i*) PERFORMING INTERMITTENT STRAIGHT CATHETERIZATION, CATHETER

19  PERINEAL CARE, AND COLOSTOMY CARE AS DIRECTED.

20    (*ii*) PERFORMING A BOWEL PROGRAM UNDER THE DIRECTION OF A

21  REGISTERED NURSE.

22    (*iii*) PERFORMING TUBE FEEDINGS AND SIMPLE WOUND CARE UNDER THE

23  DIRECTION OF A REGISTERED NURSE.

24    (*iv*) PERFORMING FULL 1-PERSON TRANSFERS AND TRANSFERS USING A

25  PATIENT LIFT OR HOIST.

26    Sec. 3113. A person is not entitled to be paid personal

27  protection insurance benefits for accidental bodily injury if at

23

1  the time of the accident any of the following circumstances

2  existed:

3       (a) The person was using a motor vehicle or motorcycle ~~which~~

4  **THAT** he or she had taken unlawfully, unless the person reasonably

5  believed that he or she was entitled to take and use the vehicle.

6       (b) The person was the owner or registrant of a motor vehicle

7  or motorcycle involved in the accident with respect to which the

8  security required by section 3101 or 3103 was not in effect.

9       (c) The person was not a resident of this state, was an

10  occupant of a motor vehicle or motorcycle not registered in this

11  state, and was not insured by an insurer ~~which~~ **THAT** has filed a

12  certification in compliance with section 3163.

13       **(D) THE PERSON WAS AN OPERATOR OF OR PASSENGER ON A MOTORCYCLE**

14  **WHO WAS NOT WEARING ON HIS OR HER HEAD A CRASH HELMET THAT CONFORMED**

15  **WITH THE REQUIREMENTS OF SECTION 658(4) OF THE MICHIGAN VEHICLE CODE,**

16  **1949 PA 300, MCL 257.658.**

17       Sec. 3114. (1) Except as provided in subsections (2), (3), and

18  (5), a personal protection insurance policy described in section

19  3101(1) applies to accidental bodily injury to the person named in

20  the policy, the person's spouse, and a relative of either domiciled

21  in the same household, if the injury arises from a motor vehicle

22  accident. A personal injury insurance policy described in section

23  3103(2) applies to accidental bodily injury to the person named in

24  the policy, the person's spouse, and a relative of either domiciled

25  in the same household, if the injury arises from a motorcycle

26  accident. When personal protection insurance benefits **DESCRIBED IN**

27  **SECTION 3107(1),** or personal injury benefits described in section

24

1    3103(2), are payable to or for the benefit of an injured person

2    under his or her own policy and would also be payable under the

3    policy of his or her spouse, relative, or relative's spouse, the

4    injured person's insurer shall pay all of the benefits and is not

5    entitled to recoupment from the other insurer. **THE COVERAGE FOR**

6    **ALLOWABLE EXPENSES FOR 2 OR MORE MOTOR VEHICLES UNDER 1 POLICY OR**

7    **FOR 2 OR MORE POLICIES SHALL NOT BE ADDED TOGETHER, COMBINED, OR**

8    **STACKED TO DETERMINE THE LIMIT OF INSURANCE COVERAGE AVAILABLE FOR**

9    **EACH INJURED PERSON COVERED UNDER THE POLICY.**

10    (2) A person suffering accidental bodily injury while an

11    operator or a passenger of a motor vehicle operated in the business

12    of transporting passengers shall receive the personal protection

13    insurance benefits to which the person is entitled from the insurer

14    of the motor vehicle. This subsection does not apply to a passenger

15    in the following, unless that passenger is not entitled to personal

16    protection insurance benefits under any other policy:

17    (a) A school bus, as defined by the department of education,

18    providing transportation not prohibited by law.

19    (b) A bus operated by a common carrier of passengers certified

20    by the department of transportation.

21    (c) A bus operating under a government sponsored

22    transportation program.

23    (d) A bus operated by or providing service to a nonprofit

24    organization.

25    (e) A taxicab insured as prescribed in section 3101 or 3102.

26    (f) A bus operated by a canoe or other watercraft, bicycle, or

27    horse livery used only to transport passengers to or from a

25

1    destination point.

2         (3) An employee, his or her spouse, or a relative of either

3    domiciled in the same household ~—who suffers accidental bodily

4    injury while an occupant of a motor vehicle owned or registered by

5    the employer ~—shall receive personal protection insurance benefits

6    to which the employee is entitled ~~from~~—IN THE FOLLOWING ORDER OF

7    PRIORITY:

8         (A) FROM the insurer of the furnished vehicle.

9         (B) FROM HIS OR HER OWN POLICY, FROM HIS OR HER SPOUSE'S

10   POLICY, OR FROM THE POLICY OF A RELATIVE OF EITHER THE PERSON OR

11   HIS OR HER SPOUSE DOMICILED IN THE SAME HOUSEHOLD.

12        (4) Except as provided in subsections (1) to (3), a person

13   suffering accidental bodily injury arising from a motor vehicle

14   accident while an occupant of a motor vehicle shall claim personal

15   protection insurance benefits from insurers in the following order

16   of priority:

17        (a) The insurer of the owner or registrant of the vehicle

18   occupied.

19        (b) The insurer of the operator of the vehicle occupied.

20        (5) A person suffering accidental bodily injury arising from a

21   motor vehicle accident which shows evidence of the involvement of a

22   motor vehicle while an operator or passenger of a motorcycle shall

23   claim personal protection insurance benefits from insurers in the

24   following order of priority:

25        (a) The insurer of the owner or registrant of the motor

26   vehicle involved in the accident.

27        (b) The insurer of the operator of the motor vehicle involved

26

1   in the accident.

2       (c) The motor vehicle insurer of the operator of the

3   motorcycle involved in the accident.

4       (d) The motor vehicle insurer of the owner or registrant of

5   the motorcycle involved in the accident.

6       **(6) AN INJURED PERSON CLAIMING PERSONAL PROTECTION INSURANCE**

7   **BENEFITS UNDER SUBSECTION (5) IS LIMITED TO REASONABLE CHARGES**

8   **INCURRED UP TO A MAXIMUM OF $250,000.00 FOR REASONABLE NECESSARY**

9   **PRODUCTS, SERVICES, AND ACCOMMODATIONS FOR HIS OR HER CARE,**

10  **RECOVERY, OR REHABILITATION.**

11      (7) ~~(6)~~ If 2 or more insurers are in the same order of

12  priority to provide personal protection insurance benefits, ~~under~~

13  ~~subsection (5),~~ an insurer paying benefits due is entitled to

14  partial recoupment from the other insurers in the same order of

15  priority, together with a reasonable amount of partial recoupment

16  of the expense of processing the claim, in order to accomplish

17  equitable distribution of the loss among all of the insurers.

18      Sec. 3115. (1) Except as provided in ~~subsection (1) of~~ section

19  ~~3114~~ 3114(1), a person suffering accidental bodily injury while not

20  an occupant of a motor vehicle shall claim personal protection

21  insurance benefits from insurers in the following order of

22  priority:

23      (a) Insurers of owners or registrants of motor vehicles

24  involved in the accident.

25      (b) Insurers of operators of motor vehicles involved in the

26  accident.

27      (2) ~~When~~ **THE FOLLOWING APPLY IF** 2 or more insurers are in the

27

1  same order of priority to provide personal protection insurance
2  benefits:

3      (A) IF THE COVERAGES FOR ALLOWABLE EXPENSES IN THE POLICIES
4  ARE THE SAME, an insurer paying benefits due is entitled to partial
5  recoupment from the other insurers in the same order of priority,
6  together with a reasonable amount of partial recoupment of the
7  expense of processing the claim, in order to accomplish equitable
8  distribution of the loss among such insurers.

9      (B) IF THE COVERAGES FOR ALLOWABLE EXPENSES IN THE POLICIES
10 ARE NOT THE SAME, EACH INSURER SHALL PAY THE RATIO OF ITS LIMIT OF
11 ALLOWABLE EXPENSE COVERAGE TO THE TOTAL ALLOWABLE EXPENSE COVERAGE
12 AVAILABLE UNDER ALL OF THE POLICIES.

13     (3) A limit upon the amount of personal protection insurance
14 benefits available because of accidental bodily injury to 1 person
15 arising from 1 motor vehicle accident shall be determined without
16 regard to the number of policies applicable to the accident.

17     (4) THE LIMIT OF PERSONAL PROTECTION INSURANCE BENEFITS
18 AVAILABLE FOR 2 OR MORE MOTOR VEHICLES UNDER 1 POLICY OR FOR 2 OR
19 MORE POLICIES SHALL NOT BE ADDED TOGETHER, COMBINED, OR STACKED TO
20 DETERMINE THE LIMIT OF INSURANCE COVERAGE AVAILABLE FOR EACH
21 INJURED PERSON COVERED UNDER THE POLICY.

22     Sec. 3135. (1) A person remains subject to tort liability for
23 noneconomic loss caused by his or her ownership, maintenance, or
24 use of a motor vehicle only if the injured person has suffered
25 death, serious impairment of body function, or permanent serious
26 disfigurement.

27     (2) For EXCEPT AS OTHERWISE PROVIDED IN THIS SECTION, FOR a

28

1    cause of action for damages pursuant to subsection (1) filed on or

2    after July 26, 1996, all of the following apply:

3        (a) The issues of whether an injured person has suffered

4    serious impairment of body function or permanent serious

5    disfigurement are questions of law for the court if the court finds

6    either of the following:

7        (*i*) There is no factual dispute concerning the nature and

8    extent of the person's injuries.

9        (*ii*) There is a factual dispute concerning the nature and

10    extent of the person's injuries, but the dispute is not material to

11    the determination as to whether the person has suffered a serious

12    impairment of body function or permanent serious disfigurement.

13    ~~However, for a closed-head injury, a question of fact for the jury~~

14    ~~is created if a licensed allopathic or osteopathic physician who~~

15    ~~regularly diagnoses or treats closed-head injuries testifies under~~

16    ~~oath that there may be a serious neurological injury.~~

17        (b) Damages shall be assessed on the basis of comparative

18    fault, except that damages shall not be assessed in favor of a

19    party who is more than 50% at fault. **HOWEVER, AN OPERATOR OF OR**

20    **PASSENGER ON A MOTORCYCLE WHO WAS NOT WEARING ON HIS OR HER HEAD A**

21    **CRASH HELMET THAT CONFORMED WITH THE REQUIREMENTS OF SECTION 658(4)**

22    **OF THE MICHIGAN VEHICLE CODE, 1949 PA 300, MCL 257.658, SHALL BE**

23    **CONSIDERED TO BE NOT LESS THAN 35% COMPARATIVELY AT FAULT.**

24        (c) Damages shall not be assessed in favor of a party who was

25    operating his or her own vehicle at the time the injury occurred

26    and did not have in effect for that motor vehicle the security

27    required by section 3101 at the time the injury occurred.

29

1    (3) Notwithstanding any other provision of law, tort liability

2    arising from the ownership, maintenance, or use within this state

3    of a motor vehicle with respect to which the security required by

4    section 3101 was in effect is abolished except as to:

5    (a) Intentionally caused harm to persons or property. Even

6    though a person knows that harm to persons or property is

7    substantially certain to be caused by his or her act or omission,

8    the person does not cause or suffer that harm intentionally if he

9    or she acts or refrains from acting for the purpose of averting

10   injury to any person, including himself or herself, or for the

11   purpose of averting damage to tangible property.

12   (b) Damages for noneconomic loss as provided and limited in

13   subsections (1), ~~and~~ (2), **AND (7) TO (13)**.

14   (c) Damages for allowable expenses, work loss, and survivor's

15   loss as ~~defined~~ **DESCRIBED** in sections 3107 to 3110 in excess of the

16   ~~daily, monthly, and 3-year~~ limitations contained in those sections.

17   **HOWEVER, A PERSON WHO WAS THE OPERATOR OF OR PASSENGER ON A**

18   **MOTORCYCLE WHO WAS NOT WEARING ON HIS OR HER HEAD A CRASH HELMET**

19   **THAT CONFORMED WITH THE REQUIREMENTS OF SECTION 658(4) OF THE**

20   **MICHIGAN VEHICLE CODE, 1949 PA 300, MCL 257.658, IS NOT ENTITLED TO**

21   **RECOVER THE DAMAGES DESCRIBED IN THIS SUBDIVISION.** The party liable

22   for damages is entitled to an exemption reducing his or her

23   liability by the amount of taxes that would have been payable on

24   account of income the injured person would have received if he or

25   she had not been injured.

26   (d) Damages for economic loss ~~by~~ **IN EXCESS OF THE PERSONAL**

27   **PROTECTION INSURANCE BENEFITS PROVIDED UNDER SECTION 3107 OR, FOR** a

1   nonresident, in excess of the personal protection insurance
2   benefits provided under section 3163(4). Damages under this
3   subdivision are not recoverable to the extent that benefits
4   covering the same loss are available from other sources, regardless
5   of the nature or number of benefit sources available and regardless
6   of the nature or form of the benefits.

7        (e) Damages up to $500.00 to motor vehicles, to the extent
8   that the damages are not covered by insurance. An action for
9   damages pursuant to this subdivision shall be conducted in
10  compliance with subsection (4).

11       (4) In an action for damages pursuant to subsection (3)(e):
12       (a) Damages shall be assessed on the basis of comparative
13  fault, except that damages shall not be assessed in favor of a
14  party who is more than 50% at fault.

15       (b) Liability shall not be a component of residual liability,
16  as prescribed in section 3131, for which maintenance of security is
17  required by this act.

18       (5) Actions under subsection (3)(e) shall be commenced,
19  whenever legally possible, in the small claims division of the
20  district court or the municipal court. If the defendant or
21  plaintiff removes the action to a higher court and does not
22  prevail, the judge may assess costs.

23       (6) A decision of a court made pursuant to subsection (3)(e)
24  is not res judicata in any proceeding to determine any other
25  liability arising from the same circumstances as gave rise to the
26  action brought pursuant to subsection (3)(e).

27       (7) As used in this section, "serious impairment of body

H01952'11 *                                           TDR

1 function" means an objectively manifested ~~impairment of~~ INJURY THAT

2 IMPAIRS OR IMPAIRED an important body function AND that affects OR

3 AFFECTED the person's general ability to lead his or her normal

4 life. ALL OF THE FOLLOWING APPLY TO SERIOUS IMPAIRMENT OF BODY

5 FUNCTION:

6      (A) TO ESTABLISH A SERIOUS IMPAIRMENT OF BODY FUNCTION, THE

7 INJURED PERSON MUST SATISFY BOTH OF THE FOLLOWING:

8      (*i*) IN ORDER FOR AN INJURY TO BE OBJECTIVELY MANIFESTED, THERE

9 MUST BE, OR MUST HAVE BEEN, A MEDICALLY IDENTIFIABLE INJURY OR

10 CONDITION THAT HAS A PHYSICAL BASIS.

11      (*ii*) THE INJURY AND IMPAIRMENT MUST HAVE, OR MUST HAVE HAD, A

12 MEANINGFUL EFFECT ON THE PERSON'S GENERAL ABILITY AND CAPACITY TO

13 LEAD HIS OR HER NORMAL LIFE.

14      (B) A PERSON ASSERTING THAT HE OR SHE SUFFERED A SERIOUS

15 IMPAIRMENT OF BODY FUNCTION IS NOT REQUIRED TO PROVE THAT THE

16 INJURY AND IMPAIRMENT WERE PERMANENT, WERE EXTENSIVE, LASTED FOR A

17 SIGNIFICANT PERIOD OF TIME, OR ALTERED THE COURSE AND TRAJECTORY OF

18 THE PERSON'S ENTIRE NORMAL LIFE, IF THERE IS PROOF THAT THE INJURY

19 AND IMPAIRMENT OTHERWISE SATISFY THE REQUIREMENTS OF THIS

20 SUBSECTION.

21      (8) A PERSON HAS SUFFERED A SERIOUS IMPAIRMENT OF BODY

22 FUNCTION AS A MATTER OF LAW IF THERE IS NO MATERIAL FACTUAL DISPUTE

23 THAT THE PERSON SUSTAINED ANY OF THE FOLLOWING INJURIES AS A RESULT

24 OF THE ACCIDENT:

25      (A) AMPUTATION OF AN ARM, LEG, HAND, FOOT, THUMB, OR INDEX

26 FINGER.

27      (B) A COMMINUTED, DISLOCATED, OPEN, COMPOUND, NONUNION, OR

32

1   INTRA-ARTICULAR FRACTURE OF THE PELVIS, FEMUR, TIBIA, OR HUMERUS.

2       (C) LOSS OF A REPRODUCTIVE ORGAN.

3       (D) AN INJURY TO THE SPINAL CORD, A SPINAL DISC, OR A VERTEBRA

4   THAT REQUIRED THE PERSON TO UNDERGO SURGERY ON AN INPATIENT

5   HOSPITALIZATION BASIS.

6       (E) AN INJURY THAT REQUIRED REPLACEMENT OF A JOINT IN A HIP,

7   KNEE, OR SHOULDER.

8       (F) PERMANENT PARALYSIS THAT AFFECTS AN IMPORTANT BODY

9   FUNCTION.

10      (G) LOSS OR REMOVAL OF ALL OR PART OF A VITAL ORGAN, EXCEPT

11  SKIN.

12      (9) EXCEPT IN CASES DESCRIBED IN SUBSECTION (8), THE ISSUE OF

13  WHETHER A PERSON SUFFERED A SERIOUS IMPAIRMENT OF BODY FUNCTION AS

14  A RESULT OF THE ACCIDENT SHALL BE SUBMITTED TO A JURY OR TRIER OF

15  FACT, AS A QUESTION OF FACT, IF THERE IS EVIDENCE THAT THE PERSON

16  SUFFERED ANY OF THE FOLLOWING INJURIES:

17      (A) AN INJURY DESCRIBED IN SUBSECTION (8).

18      (B) A CLOSED-HEAD INJURY IF A LICENSED ALLOPATHIC OR

19  OSTEOPATHIC PHYSICIAN WHO REGULARLY DIAGNOSES OR TREATS CLOSED-HEAD

20  INJURIES TESTIFIES UNDER OATH THAT THERE MAY BE A SERIOUS

21  NEUROLOGICAL INJURY.

22      (C) EXCEPT AS PROVIDED IN SUBSECTION (8)(B), A COMMINUTED,

23  OPEN, DISLOCATED, COMPOUND, NONUNION, OR INTRA-ARTICULAR FRACTURE

24  OF A BONE, EXCEPT A BONE IN THE FINGER OR TOE.

25      (D) LOSS OF AN EYE OR EAR OR PERMANENT LOSS OF VISION OR

26  HEARING IN 1 OR BOTH EYES OR EARS.

27      (E) PERMANENT DAMAGE TO THE CARDIOVASCULAR OR RESPIRATORY

33

1 SYSTEM THAT IMPAIRS THE FUNCTIONING OF THAT SYSTEM.

2 (F) AN INJURY THAT REQUIRED THE PERSON TO UNDERGO ANY OF THE

3 FOLLOWING:

4 (*i*) IF THE INJURY WAS A TRAUMATIC INJURY TO ANY PART OF A

5 SHOULDER, SURGERY.

6 (*ii*) EXCEPT AS PROVIDED IN SUBSECTION (8)(B), OPEN REDUCTION OF

7 A FRACTURE WITH FIXATION. THIS SUBPARAGRAPH DOES NOT APPLY TO A

8 FRACTURE IN A FINGER OR TOE, UNLESS THE FRACTURE IS LOCATED IN THE

9 INDEX FINGER OR THUMB.

10 (*iii*) IF THE INJURY IS A DISLOCATION INJURY, REDUCTION OR

11 SURGERY TO AN ELBOW, HIP, OR KNEE.

12 (*iv*) EXCEPT AS PROVIDED IN SUBSECTION (8)(D), IF THE INJURY IS

13 A HERNIATED OR RUPTURED SPINAL DISC, AS DIAGNOSED BY A LICENSED

14 NEUROSURGEON OR ORTHOPEDIC SURGEON, SURGERY ON AN OUTPATIENT BASIS.

15 AS USED IN THIS SUBPARAGRAPH, "SURGERY" DOES NOT INCLUDE

16 INJECTIONS.

17 (10) EXCEPT FOR CAUSES OF ACTION BASED ON AN INJURY ENUMERATED

18 IN SUBSECTION (8), ALL OF THE FOLLOWING FACTORS SHALL BE CONSIDERED

19 BY A COURT UNDER SUBSECTION (2)(A), OR BY A JURY OR TRIER OF FACT

20 IF A MATERIAL FACTUAL DISPUTE EXISTS, IN DETERMINING WHETHER THE

21 INJURED PERSON SUFFERED A SERIOUS IMPAIRMENT OF BODY FUNCTION:

22 (A) THE NATURE AND EXTENT OF THE INJURY AND IMPAIRMENT.

23 (B) THE TYPE AND DURATION OF TREATMENT REQUIRED.

24 (C) THE DURATION OF THE INJURY AND IMPAIRMENT.

25 (D) THE EXTENT OF ANY RESIDUAL INJURY AND IMPAIRMENT.

26 (E) THE PROGNOSIS FOR EVENTUAL RECOVERY.

27 (F) THE DIFFERENCES BETWEEN THE PERSON'S LIFE BEFORE AND AFTER

34

1    THE ACCIDENT THAT WERE CAUSED BY THE INJURY AND IMPAIRMENT.

2         (G) ANY OTHER RELEVANT FACTORS.

3         (11) THE FACTORS STATED IN SUBSECTION (10) ARE NOT EXCLUSIVE,

4    AND NO INDIVIDUAL FACTOR IS DISPOSITIVE.

5         (12) THE JURY OR TRIER OF FACT SHALL NOT CONSIDER THE

6    INCLUSION OR EXCLUSION OF INJURIES AND TREATMENTS ENUMERATED IN

7    SUBSECTIONS (8) AND (9) IN DETERMINING WHETHER THE INJURED PERSON

8    SUFFERED A SERIOUS IMPAIRMENT OF BODY FUNCTION.

9         (13) IF, UNDER SUBSECTION (2) OR (9), THE JURY OR TRIER OF

10   FACT IS TO RESOLVE THE QUESTION OF WHETHER THE ACCIDENT RESULTED IN

11   A SERIOUS IMPAIRMENT OF BODY FUNCTION, THE JURY OR TRIER OF FACT

12   MUST FIND THAT A SERIOUS IMPAIRMENT OF BODY FUNCTION EXISTS IF THE

13   JURY OR TRIER OF FACT FINDS THAT THE PERSON SUSTAINED ANY OF THE

14   INJURIES DESCRIBED IN SUBSECTION (8).

15        (14) THE CHANGES TO THIS SECTION BY THE AMENDATORY ACT THAT

16   ADDED THIS SUBSECTION APPLY TO ACTIONS FILED ON AND AFTER AND

17   ACTIONS PENDING IN A TRIAL OR APPELLATE COURT ON THE EFFECTIVE DATE

18   OF THE AMENDATORY ACT THAT ADDED THIS SUBSECTION.

19        Sec. 3157. (1) A SUBJECT TO SUBSECTION (2), A physician,

20   hospital, clinic, or other person or institution lawfully rendering

21   treatment to an injured person for an accidental bodily injury

22   covered by personal protection insurance, and a person or

23   institution providing rehabilitative occupational training

24   following the injury, may charge a reasonable amount for the

25   products, services, and accommodations rendered. The charge shall

26   not exceed the amount the person or institution customarily charges

27   for like products, services, and accommodations in cases not

35

1    involving PERSONAL PROTECTION insurance.

2        (2) A PHYSICIAN, HOSPITAL, CLINIC, OR OTHER PERSON OR

3    INSTITUTION LAWFULLY RENDERING TREATMENT TO AN INJURED PERSON FOR

4    AN ACCIDENTAL BODILY INJURY COVERED BY PERSONAL PROTECTION

5    INSURANCE, OR A PERSON OR INSTITUTION PROVIDING REHABILITATIVE

6    OCCUPATIONAL TRAINING FOLLOWING THE INJURY, IS LIMITED TO, AND

7    SHALL BE PAID BY THE AUTOMOBILE INSURER AT, AN AMOUNT THAT DOES NOT

8    EXCEED THE AMOUNT PAID FOR TREATMENT, SERVICE, ACCOMMODATION, AND

9    MEDICINE UNDER R 418.10101 TO R 418.101503 OF THE MICHIGAN

10   ADMINISTRATIVE CODE OR SCHEDULES OF MAXIMUM FEES FOR WORKER'S

11   COMPENSATION DEVELOPED PURSUANT TO THOSE RULES. THE COMMISSIONER

12   SHALL EXAMINE CHANGES TO R 418.10101 TO R 418.101503 OF THE

13   MICHIGAN ADMINISTRATIVE CODE MADE AFTER THE EFFECTIVE DATE OF THE

14   AMENDATORY ACT THAT ADDED THIS SUBSECTION. IF THE COMMISSIONER

15   FINDS THAT THOSE CHANGES ARE REASONABLE AND APPROPRIATE FOR

16   PURPOSES OF AUTOMOBILE INSURANCE, THOSE CHANGES SHALL APPLY TO THIS

17   SECTION AND THE COMMISSIONER SHALL ISSUE AN ORDER TO THAT EFFECT.

18       Sec. 3163. (1) An insurer authorized to transact automobile

19   liability insurance and personal and property protection insurance

20   in this state shall file and maintain a written certification that

21   any accidental bodily injury or property damage occurring in this

22   state arising from the ownership, operation, maintenance, or use of

23   a motor vehicle as a motor vehicle by an out-of-state resident who

24   is insured under its automobile liability insurance policies, is

25   subject to the personal and property protection insurance system

26   under this act.

27       (2) A nonadmitted insurer may voluntarily file the

36

1  certification described in subsection (1).

2       (3) Except as otherwise provided in subsection (4), if a
3  certification filed under subsection (1) or (2) applies to
4  accidental bodily injury or property damage, the insurer and its
5  insureds with respect to that injury or damage have the rights and
6  immunities under this act for personal and property protection
7  insureds, and claimants have the rights and benefits of personal
8  and property protection insurance claimants, including the right to
9  receive benefits from the electing insurer as if it were an insurer
10  of personal and property protection insurance applicable to the
11  accidental bodily injury or property damage.

12       (4) If an insurer of an out-of-state resident is required to
13  provide benefits under subsections (1) to (3) to that out-of-state
14  resident for accidental bodily injury for an accident in which the
15  out-of-state resident was not an occupant of a motor vehicle
16  registered in this state, the insurer is only liable for the amount
17  of ultimate loss sustained up to $500,000.00 $250,000.00. Benefits
18  under this subsection are not recoverable to the extent that
19  benefits covering the same loss are available from other sources,
20  regardless of the nature or number of benefit sources available and
21  regardless of the nature or form of the benefits.

22       Sec. 3172. (1) A person entitled to claim because of
23  accidental bodily injury arising out of the ownership, operation,
24  maintenance, or use of a motor vehicle as a motor vehicle in this
25  state may obtain personal protection insurance benefits through an
26  assigned claims plan if IN ANY OF THE FOLLOWING SITUATIONS:

27       (A) IF no personal protection insurance is applicable to the

37

1   injury. ~

2       **(B) IF** no personal protection insurance applicable to the
3   injury can be identified. ~

4       **(C) IF** the personal protection insurance applicable to the
5   injury cannot be ascertained because of a dispute between 2 or more
6   automobile insurers concerning their obligation to provide coverage
7   or the equitable distribution of the loss. ~or

8       **(D) IF** the only identifiable personal protection insurance
9   applicable to the injury is, because of financial inability of 1 or
10  more insurers to fulfill their obligations, inadequate to provide
11  benefits up to the maximum prescribed. In such case

12      **(2) IN ANY OF THE SITUATIONS UNDER SUBSECTION (1),** unpaid
13  benefits due or coming due are subject to being collected under the
14  assigned claims plan, and the insurer to which the claim is
15  assigned, or the assigned claims facility if the claim is assigned
16  to it, is entitled to reimbursement from the defaulting insurers to
17  the extent of their financial responsibility.

18      **(3)** (2) Except as otherwise provided in this subsection,
19  personal protection insurance benefits, including benefits arising
20  from accidents occurring before the effective date of this
21  subsection, **MARCH 29, 1985,** payable through an assigned claims plan
22  shall be reduced to the extent that benefits covering the same loss
23  are available from other sources, regardless of the nature or
24  number of benefit sources available and regardless of the nature or
25  form of the benefits, to a person claiming personal protection
26  insurance benefits through the assigned claims plan. This
27  subsection shall only apply when **ONLY APPLIES IF** the personal

38

1   protection insurance benefits are payable through the assigned

2   claims plan because no personal protection insurance is applicable

3   to the injury, no personal protection insurance applicable to the

4   injury can be identified, or the only identifiable personal

5   protection insurance applicable to the injury is, because of

6   financial inability of 1 or more insurers to fulfill their

7   obligations, inadequate to provide benefits up to the maximum

8   prescribed. As used in this subsection "sources" and "benefit

9   sources" do not include the program for medical assistance for the

10  medically indigent under the social welfare act, ~~Act No. 280 of the~~

11  ~~Public Acts of 1939, being sections 400.1 to 400.121 of the~~

12  ~~Michigan Compiled Laws, or insurance under the health insurance for~~

13  ~~the aged act, title XVIII of the social security amendments of 1965~~

14  **1939 PA 280, MCL 400.1 TO 400.119B, OR THE FEDERAL MEDICARE PROGRAM**

15  **ESTABLISHED UNDER TITLE XVIII OF THE SOCIAL SECURITY ACT, 42 USC**

16  **1395 TO 1395KKK-1.**

17      (4) ~~(3)~~ If the obligation to provide personal protection

18  insurance benefits cannot be ascertained because of a dispute

19  between 2 or more automobile insurers concerning their obligation

20  to provide coverage or the equitable distribution of the loss, and

21  if a method of voluntary payment of benefits cannot be agreed upon

22  among or between the disputing insurers, all of the following shall

23  apply:

24      (a) The insurers who are parties to the dispute shall, or the

25  claimant may, immediately notify the assigned claims facility of

26  their inability to determine their statutory obligations.

27      (b) The claim shall be assigned by the assigned claims

39

1  facility to an insurer ~~which~~ **THAT** shall immediately provide

2  personal protection insurance benefits to the claimant or claimants

3  entitled to benefits **IN THE LOWEST AMOUNT APPLICABLE AMONG THE**

4  **POLICIES IN DISPUTE**.

5      (c) An action shall be immediately commenced on behalf of the

6  assigned claims facility by the insurer to whom the claim is

7  assigned in circuit court for the purpose of declaring the rights

8  and duties of any interested party.

9      (d) The insurer to whom the claim is assigned shall join as

10  parties defendant each insurer disputing either the obligation to

11  provide personal protection insurance benefits or the equitable

12  distribution of the loss among the insurers.

13      (e) The circuit court shall declare the rights and duties of

14  any interested party whether or not other relief is sought or could

15  be granted.

16      (f) After hearing the action, the circuit court shall

17  determine the insurer or insurers, if any, obligated to provide the

18  applicable personal protection insurance benefits and the equitable

19  distribution, if any, among the insurers obligated therefor, and

20  shall order reimbursement to the assigned claims facility from the

21  insurer or insurers to the extent of the responsibility as

22  determined by the court. ~~The reimbursement ordered under this~~

23  ~~subdivision shall include all benefits and costs paid or incurred~~

24  ~~by the assigned claims facility and all benefits and costs paid or~~

25  ~~incurred by insurers determined not to be obligated to provide~~

26  ~~applicable personal protection insurance benefits, including~~

27  ~~reasonable attorney fees and interest at the rate prescribed in~~

40

1   ~~section 3175 as of December 31 of the year preceding the~~

2   ~~determination of the circuit court.~~

3   (5) IF NO PERSONAL PROTECTION INSURANCE IS APPLICABLE TO THE

4   INJURY OR NO PERSONAL PROTECTION INSURANCE APPLICABLE TO THE INJURY

5   CAN BE IDENTIFIED, PERSONAL PROTECTION INSURANCE BENEFITS SHALL BE

6   PAID ONLY TO THE LIMIT PROVIDED FOR IN SECTION 3107(1)(A)(*i*). IF THE

7   ONLY IDENTIFIABLE PERSONAL PROTECTION INSURANCE APPLICABLE TO THE

8   INJURY IS, BECAUSE OF FINANCIAL INABILITY OF 1 OR MORE INSURERS TO

9   FULFILL THEIR OBLIGATIONS, INADEQUATE TO PROVIDE BENEFITS UP TO THE

10  MAXIMUM PRESCRIBED, PERSONAL PROTECTION INSURANCE BENEFITS SHALL BE

11  PAID TO THE LIMIT SELECTED BY THE INSURED UNDER SECTION 3107(1)(A)

12  OR AS PROVIDED IN SECTION 3107(3)(A).

13  (6) ANY REIMBURSEMENT ORDERED UNDER THIS SECTION AND ANY

14  RECOVERY OBTAINED IN CIRCUMSTANCES WHERE PERSONAL PROTECTION

15  INSURANCE BENEFITS HAVE BEEN OR MAY BE PAID THROUGH THE ASSIGNED

16  CLAIMS FACILITY SHALL INCLUDE ALL BENEFITS AND COSTS PAID OR

17  INCURRED BY INSURERS DETERMINED NOT TO BE OBLIGATED TO PROVIDE THE

18  APPLICABLE PERSONAL PROTECTION INSURANCE BENEFITS, INCLUDING

19  REASONABLE ATTORNEY FEES AND INTEREST AT THE RATE PRESCRIBED IN

20  SECTION 3175 AS OF DECEMBER 31 OF THE YEAR PRECEDING THE

21  REIMBURSEMENT ORDER OR RECOVERY DETERMINATION.

22  SEC. 3178. (1) THE COMMISSIONER SHALL DEVELOP AND MAKE

23  AVAILABLE TO THE PUBLIC 1 OR MORE INFORMATIONAL PAMPHLETS

24  EXPLAINING THE SUBSTANCE OF THE CHANGES TO THIS CHAPTER MADE BY THE

25  AMENDATORY ACT THAT ADDED THIS SECTION. THE PAMPHLET SHALL INCLUDE

26  IN PARTICULAR, BUT NOT BE LIMITED TO, AN EXPLANATION OF THE

27  ADOPTION OF MULTIPLE LIMITS FOR PERSONAL PROTECTION BENEFITS UNDER

41

1    SECTION 3107(1)(A), THE ABILITY OF AN INSURED TO CHOOSE THE

2    APPLICABLE LIMIT, WHEN THE INSURED WILL HAVE THE OPPORTUNITY TO

3    MAKE THE CHOICE AND WHEN THE CHOICE MADE WILL BE EFFECTIVE, AND THE

4    CONSEQUENCES OF THAT CHOICE.

5        (2) BEFORE JULY 1, 2013, THE COMMISSIONER SHALL REPORT TO THE

6    STANDING COMMITTEES OF THE SENATE AND THE HOUSE OF REPRESENTATIVES

7    WITH PRIMARY JURISDICTION OVER INSURANCE MATTERS ON THE EFFECT OF

8    THE CHANGES TO THIS CHAPTER MADE BY THE AMENDATORY ACT THAT ADDED

9    THIS SECTION, INCLUDING IN PARTICULAR, BUT NOT LIMITED TO, THE

10   ADOPTION OF MULTIPLE LIMITS FOR PERSONAL PROTECTION BENEFITS UNDER

11   SECTION 3107(1)(A). THE REPORT SHALL CONTAIN ANY RECOMMENDATIONS OF

12   THE COMMISSIONER FOR CHANGES TO THIS CHAPTER.

13       (3) FOR THE FISCAL YEAR ENDING SEPTEMBER 30, 2012, $50,000.00

14   IS APPROPRIATED FROM THE GENERAL FUND TO THE DEPARTMENT OF

15   LICENSING AND REGULATORY AFFAIRS TO BE USED BY THE OFFICE OF

16   INSURANCE AND FINANCIAL SERVICES TO IMPLEMENT THIS SECTION.

17       Enacting section 1. (1) Sections 3101, 3104, 3107, 3114, 3115,

18   3163, and 3172 of the insurance code of 1956, 1956 PA 218, MCL

19   500.3101, 500.3104, 500.3107, 500.3114, 500.3115, 500.3163, and

20   500.3172, as amended by this amendatory act, and section 1245 of

21   the insurance code of 1956, 1956 PA 218, as added by this

22   amendatory act, take effect on July 1, 2012.

23       (2) Section 3157 of the insurance code of 1956, 1956 PA 218,

24   MCL 500.3157, as amended by this amendatory act, and section 3107c

25   of the insurance code of 1956, 1956 PA 218, as added by this

26   amendatory act, take effect on the effective date of this

27   amendatory act and apply to products, services, and accommodations

42

1  that are provided on and after the effective date of this
2  amendatory act irrespective of the date of loss, but do not affect
3  any obligation involving a specific claim under a written agreement
4  or consent judgment entered into before the effective date of this
5  amendatory act.
6      (3) Sections 3113 and 3135 of the insurance code of 1956, 1956
7  PA 218, MCL 500.3113 and 500.3135, as amended by this amendatory
8  act, take effect on the effective date of this amendatory act.