# EXHIBIT 2

# Legislative Analysis



## NO-FAULT AUTO INSURANCE AMENDMENTS

Mary Ann Cleary, Director
Phone: (517) 373-8080
http://www.house.mi.gov/hfa

**House Bill 4936 (Substitute H-2)**
**Sponsor: Rep. Pete Lund**
**Committee: Insurance**

Complete to 11-7-11

## A REVISED SUMMARY OF HOUSE BILL 4936 (H-2) AS REPORTED FROM COMMITTEE

The bill would make numerous amendments to the No-Fault Auto Insurance statute within the Insurance Code. The key provisions include the following:

o No-fault policies would no longer automatically cover unlimited lifetime medical and rehabilitation benefits. Instead, drivers could choose personal injury protection (PIP) coverage with (1) a maximum of $500,000; (2) a maximum of $1 million; or (3) a maximum of $5 million. The default amount would be $500,000.

o The current Michigan Catastrophic Claims Association (MCCA), which currently pays medical and rehabilitation claims once they exceed $500,000, would be divided into two accounts: (1) the MCCA Account, which would only apply to losses attributable to accidents before July 1, 2012; and (2) an Excess PIP Account, which would apply to losses attributable to accidents on or after July 1, 2012. Each account would be self-supporting and assets and liabilities could not be transferred between them.

o Under the bill, for loss occurrences attributable to accidents on or after July 1, 2012, each auto insurance company would retain 100 percent of the ultimate loss under PIP coverage up to $500,000. The MCCA would provide indemnification for 90 percent of the amount of ultimate loss from $500,000 to $1 million and would provide indemnification for 100 percent of the amount of ultimate loss in excess of $1 million.

o The fee schedule used in the Workers' Compensation system would be applied to payments made by auto insurers to physicians, hospitals, and other providers treating an injured person or providing rehabilitation. (The fee schedule would not apply to emergency medical services provided by ambulance operations.)

o Individuals injured on a motorcycle involved in an accident with a motor vehicle could claim PIP benefits only up to a maximum of $250,000. (Individuals injured on a motorcycle involved in an accident with a motor vehicle claim PIP benefits in the following order of priority: the insurer of the owner or registrant of the motor vehicle; the insurer of the operator of the motor vehicle; the motor vehicle insurer of the operator of the motorcycle; and, finally, the motor vehicle insurer of the owner or registrant of the motorcycle.)

  o  Specific limits would be placed in statute on attendant care or nursing services provided in an injured person's home, including limits on hourly payment for the provision of basic services and skilled services.

**DETAILED SUMMARY:**

Levels of Personal Injury Protection Coverage
Under the bill, auto insurance customers could choose their level of personal injury protection benefits. Currently, no-fault policies provide unlimited lifetime medical and rehabilitation benefits. The bill would allow customers to choose a policy with the following minimum benefit levels: (1) a maximum of $500,000; (2) a maximum of $1 million; or (3) a maximum of $5 million. If a customer failed to select an amount, the default amount would be $500,000.

The same PIP coverage would apply to all motor vehicles insured under the same policy. Coverage limits would be provided on a per individual per loss basis. Coverage only applies to benefits payable to the insured named in the policy, the insured's spouse, and any relative of either domiciled in the same household. Others would only be entitled to benefits at the $500,000 limit. PIP benefits would not be payable to the extent that the benefits covering the same loss were available from other sources, regardless of the nature and number of benefit sources available and regardless of the nature or form of the benefits.

Regardless of the number of motor vehicles insured or insurance companies providing security, or the provisions of any other law providing for direct benefits without regard to fault for vehicle accidents, a person could not recover duplicate benefits for the same expenses or losses incurred. Coverage for allowable expenses for two or more motor vehicles under one policy or for two or more policies could not be added together, combined, or stacked to determine the limit of insurance coverage available for each injured person covered under the policy.

With the new PIP limits in place, lawsuits could seek damages for economic loss in excess of the PIP benefits provided, under Section 3135. (However, as now, that section says that damages are not recoverable to the extent that benefits covering the same loss are available from other sources.)

Nonresidents in Accidents
PIP benefits are limited to the $250,000 limit for accidents occurring in the state if the injured person is a nonresident of the state and the injured person's benefits are payable under a policy delivered outside of the state.

PIP benefits are not payable to a nonresident injured in an accident occurring outside the state to the extent that benefits covering the same loss are available from other sources, regardless of the nature and number of benefit sources available and regardless of the nature or form of the benefits. If PIP benefits are payable to a nonresident, they are limited to $250,000.

Protection for Insurance Producer/Agents and Agencies
The bill says that insurance producers (agents) and insurance agencies and their employees would not be liable for damages arising out of the loss or inadequacy of PIP benefits and would have no other liability for damages caused by, arising out of, or related to any actual or allege act, error, or omission concerning the choice of PIP benefit levels by a customer.

Michigan Catastrophic Claims Association
The Michigan Catastrophic Claims Association is a statutorily mandated unincorporated nonprofit association composed of the insurance companies writing automobile insurance in the state. The member companies are charged a premium to cover the expected losses and expenses of the association based generally speaking on the company's share of business. An assessment to support the MCCA is placed on each automobile (and motorcycle) insured under a no-fault policy. The MCCA is responsible for the amount of ultimate loss in excess of $500,000 in each loss occurrence.

The bill requires the MCCA to maintain two accounts: (1) the MCCA Account, which would only apply to losses attributable to accidents before July 1, 2012; and (2) an Excess PIP Account, which would apply to losses attributable to accidents on or after July 1, 2012. Each account would be self-supporting and assets and liabilities could not be transferred between them.

Under the bill, for loss occurrences attributable to accidents on or after July 1, 2012, each auto insurance company would retain 100 percent of the ultimate loss under PIP coverage up to $500,000. The MCCA would provide indemnification for 90 percent of the amount of ultimate loss from $500,000 to $1 million and would provide indemnification for 100 percent of the amount of ultimate loss in excess of $1 million. The indemnification would be provided by the new Excess PIP Account.

MCCA Assessment
As noted above, auto insurance companies are charged a premium based on the amount of their business to support the MCCA, and then, typically, each auto insurance policy carries a uniform per-vehicle assessment for the MCCA. Under the bill, companies would pay two premiums, one for the MCCA Account and one for the new Excess PIP Account. The premium for the Excess PIP Account would be adjusted to reflect the amount of coverage selected by each member's customers.

Allowable Expenses: Attendant Care and Nursing Services
Under No-Fault, PIP benefits are payable for allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services, and accommodations for an injured person's care, recovery, or rehabilitation. Allowable expenses within personal protection insurance coverage cannot include charges for a hospital room in excess of a reasonable and customary charge for semiprivate accommodations except if the injured person requires special or intensive care. House Bill 4936 would take this language from Section 3107(1)(a) and put it in a new Section 3107C as well.

In addition, the bill would make all of the following apply (presumably as of the date the bill takes effect) to allowable expenses for attendant care or nursing services provided in the injured person's home:

- Payment would be limited to a total of 56 hours per week for services performed by one or more individuals who are not certified, registered, or licensed to render the care or services under Article 15 of the Public Health Code.

- Payment for services by such individuals would be $11 per hour for basic care or $17 per hour for skilled care. These amounts would be adjusted annually by the state insurance commissioner to reflect changes in the cost of living the same way as work loss benefits are currently adjusted.

- The term "basic care" would be defined to include
  -- Providing personal care services, including bathing, shampooing, skin care, oral hygiene, shaving male patients, catheter care, and toileting assistance, including urinal and bedpan assistances;
  -- Measuring and documenting vital signs;
  -- Providing or assisting with exercise, ambulation, or positioning as directed by a nurse or therapist;
  -- Providing environmental and homemaking services, including bed-making, light housekeeping to maintain a healthy environment, laundering, shopping for groceries, and transportation;
  -- Assisting with self-administered medications.

- The term "skilled care" would be defined to include basic care plus any of the following:
  -- Performing intermittent straight catheterization, catheter perineal care, and colostomy care as directed;
  -- Performing a bowel program under the direction of registered nurse;
  -- Performing tube feedings and simple wound care under the direction of a registered nurse;
  -- Performing full one-person transfers and transfers using a patient lift or hoist.

Fee Schedule
The No-Fault statute currently says that a physician, hospital, clinic, etc. lawfully rendering treatment for an accidental bodily injury covered by PIP coverage, and a person or institution providing rehabilitative occupational training following an injury, may charge a reasonable amount for the products, services, and accommodations rendered. The charge cannot exceed the amount customarily charged for like products, services, and accommodations in cases not involving PIP coverage.

The bill would say payments to providers would be limited to an amount not exceeding the amount paid for treatment, service, accommodation, and medicine under the schedule of maximum fees for Worker's Compensation found in or developed from state administrative rules. The insurance commissioner could examine subsequent changes made to those rules and, if he or she finds the changes reasonable and appropriate for automobile insurance purposes, could issue an order adopting those changes. The fee

schedule would not apply to emergency medical services provided by ambulance operation. The fee schedule provision (Section 3157) takes effect when the bill takes effect and applies to products, services, and accommodations provided on or after the effective date irrespective of the date of loss. However, the provision does not apply to a specific claim under a written agreement or consent judgment entered into before the effective date.

### Assigned Claims
The Assigned Claims Plan is a program aimed at providing assistance to individuals entitled to claim benefits for injuries arising out a motor vehicle accident in Michigan where PIP coverage is not available because no PIP insurance is applicable or no PIP coverage can be identified (for example, a pedestrian without coverage in his or her household injured by a hit-and-run driver); the applicable coverage cannot be ascertained because of a dispute between insurance companies; or the applicable coverage is inadequate because of the financial inability of insurers to provide benefits.

The bill would specify that if no PIP coverage is applicable to an injury or cannot be identified, PIP benefits would be limited to $500,000. If coverage is inadequate due to a company's financial inability to fulfill its obligations, PIP benefits would be paid to the limit selected by the customer or the $500,000 default amount if no selection had been made. If the obligation to pay PIP benefits cannot be ascertained because of a dispute between insurance companies, the Assigned Claims Facility would provide PIP benefits in the lowest amount applicable among the policies in dispute until the dispute is resolved.

### Informational Pamphlet
The commissioner of OFIR would have to develop and make available to the public one or more informational pamphlets explaining the substance of the changes made by the bill. The pamphlet must include in particular an explanation of the multiple limits for PIP benefits, the ability of the customer to choose the applicable limit, when the insured would have the opportunity to make that choice and when the choice will be effective, and the consequences of that choice.

### Report to Legislature
Before July 1, 2013, the OFIR commissioner would have to report to the standing committees of the State Senate and House of Representatives with primary jurisdiction over insurance matters on the effect of the changes, including the adoption of multiple limits of PIP coverage. The report is also to include any recommendations for changes.

### Appropriation
The bill appropriates $50,000 from the General Fund to the Department of Licensing and Regulatory Affairs for OFIR to produce pamphlets and issue a report to the Legislature.

**FISCAL IMPACT:**

HB 4936 (H-2) is expected to have a significant but indeterminate fiscal impact on state and federal budgets by shifting costs for catastrophic and non-catastrophic injuries resulting from vehicle accidents. The probable overall fiscal impact on the state would be

an indeterminate increase in expenditures for the Medicaid program. Cost shifts and fiscal impacts are analyzed in further detail below.

Major Changes in HB 4936 (H-2)
Under current law (MCL 500.3104) the Michigan Catastrophic Claims Association (MCCA) is a private, unincorporated, nonprofit association of every insurance company selling automotive or motorcycle insurance in Michigan. Each insurance company member of MCCA pays an annual assessment per vehicle insured sufficient to cover the unlimited lifetime benefits of all insured persons catastrophically injured during that year. This annual assessment indemnifies MCCA member companies against 100% of lifetime catastrophic claims in excess of a maximum amount set forth in Section 3104(2) of the Code ($500,000 in 2011). The MCCA is governed by a five member Board of Directors appointed from MCCA member companies by the Commissioner of the Office of Financial and Insurance Regulation.

HB 4936 (H-2) would amend the Insurance Code of 1956 and institute a series of Personal Injury Protection (PIP) limits for insured persons. The minimum and default PIP limit would be set at $500,000. Insurance customers could also purchase PIP limits of $1,000,000 or $5,000,000. Any medical or other expenses above the insurance customer's PIP limit incurred by the injured person would not be covered through vehicle insurance (neither by individual insurance providers or the MCCA).

According to the MCCA, as of 06/30/2010, 32.2% (4,119) of open claims are less than the proposed minimum PIP limit of $500,000 and 16.9% (2,165) are between $500,000 and $1,000,000. Open claims exceeding $1,000,000 constitute 28.2% (3,609) of claims, and the remaining 22.7% (2,897) of claims exceed HB 4936 (H-2)'s maximum $5,000,000 PIP limit. The MCCA estimates that an additional 850 persons will be catastrophically injured in 2012; thus we would expect from those injuries an additional 144 (16.9%) claims for future benefits exceeding the minimum PIP limit of $500,000, another 240 (28.2%) claims that will exceed $1,000,000, and another 193 (22.7%) claims that will exceed $5,000,000 over the coming years.

By instituting PIP limits below the current MCCA's unlimited lifetime benefits, HB 4936 (H-2) is expected to reduce future MCCA assessments on individual insurance providers ($145/vehicle in 2011) and, given a competitive vehicle insurance market, therefore reduce insurance premiums paid by insurance customers. The reduction in cost for vehicle insurance is expected to reduce the number of uninsured drivers as some proportion of them would be able to afford insurance at a lower PIP limit. However, as evidenced by the MCCA data presented above, a significant proportion of catastrophically injured person's benefit claims would exceed their PIP limits instituted by HB 4936 (H-2).

Effective Dates of Major Changes
HB 4936 (H-2) stipulates that the MCCA would indemnify 100% of ultimate losses attributable to motor vehicle accidents and exceeding $500,000 if the policy was issued or renewed prior to July 1, 2012. This is the same indemnification that is required under current law. For losses attributable to accidents for which the policy was issued or renewed after July 1, 2012, the MCCA will indemnify 90% of ultimate losses between

$500,000 and $1,000,000 and 100% of ultimate losses between $1,000,000 and the maximum PIP limit of $5,000,000.

Enacting Section (2) of HB 4936 (H-2) stipulates that the payment limits defined by the Worker's Compensation Health Care Service Rules which are applied to automobile insurers in Section 3157 would become effective upon the effective date of the act *irrespective of the date of loss*. This enacting section applies to all losses except an obligation involving a specific claim under a written agreement or consent judgment that was entered into before the bill's effective date. The allowable expenses limitations, including on attendant and nursing care performed in the home, as specified in Section 3107C, also would take effect when the bill takes effect and apply to care going forward.

Implementing the Worker's Compensation Health Care Service Rules payment limitations exceptions and the allowable expenses exceptions, including attendant and nursing care in the home, immediately upon the effective date of the act regardless of when the loss occurred would reduce future benefits and payments of the MCCA by an indeterminate amount.

Potential Cost Shifts
HB 4936 (H-2) creates two cost shifts for persons injured in a vehicle accident. These two shifts are contrary to each other and shift costs between insurance customers, the State of Michigan, and the federal government.

The first cost shift is from Medicaid to private insurance companies. The shift would occur if HB 4936 (H-2), by reducing the MCCA assessment, reduces vehicle insurance premiums for insurance customers by enabling insurance customers to choose lower PIP limits. Reduced vehicle insurance premiums are expected to induce some number of currently uninsured drivers to purchase insurance. Currently, if a low-income uninsured driver is injured in a vehicle accident and is enrolled in Medicaid, the cost of their medical treatment is incurred by the state (34.21%) and federal (65.79%) governments[1]. The magnitude of this shift depends on how many currently uninsured drivers are enrolled in Medicaid and what the costs are for treating these uninsured drivers for injuries that would be covered under PIP coverage if they purchased insurance.

The second cost shift is from private insurance companies to Medicaid or Medicare. This shift would occur if the benefit claims of a person injured in a vehicle accident exceeded the PIP limit on their insurance and their injury qualified them as "disabled".[2] The injured person may qualify for one of two federal programs, Supplemental Security Income (SSI) and Social Security disability benefits (SSD), if their benefit claims exceed their PIP limit.

---

[1] FY 2011 base rate for Federal Medical Assistance Percentages. Accessed at http://aspe.hhs.gov/health/fmap.htm on 10/03/2011.

[2] "'Disability' under Social Security is based on your inability to work. We consider you disabled under Social Security rules if: You cannot do work that you did before; We decide that you cannot adjust to other work because of your medical condition(s); and Your disability has lasted or is expected to last for at least one year or to result in death." Taken from the Social Security Administration; accessed at http://www.ssa.gov/dibplan/dqualify4.htm on 10/03/2011.

To qualify for Supplemental Security Income (SSI), a person must have low income, few resources and be either older than 65, blind, or disabled. That 2011 monthly wage income limit for an individual in Michigan is $1,447[3] and the individual assets limit (excluding home and automobile, among others) is $2,000[4]. A person who qualifies for SSI payments is automatically enrolled in the state's Medicaid program. A person injured in a vehicle accident whose benefit claims exceed their PIP limit and who qualifies for SSI benefits would represent a cost shift from private insurance companies (via the MCCA) to the state (34.21% of Medicaid) and federal (65.79% of Medicaid) governments.

To qualify for Social Security disability benefits (SSD), a person must have both: (1) worked half of a given amount of time, depending on age, before their disability began and (2) have worked for some number of years between 1.5 and 9.5 depending on age[5]. SSD benefits begin six months after the disability began and the disabled person is automatically entitled to Medicare coverage after receiving disability benefits for two years. A person injured in a vehicle accident whose benefit claims exceed their PIP limit and who qualifies for SSD benefits would represent a cost shift from private insurance companies (via the MCCA) the federal government (via Medicare).

Potential Cost Adjustments
Under current law, private insurance providers (and the MCCA through them) must pay "reasonable amounts" to physicians, hospitals, and other healthcare providers for medical treatment of injured persons. HB 4936 (H-2) would change this requirement for the MCCA by enabling the Insurance Commissioner to incorporate the reimbursement schedule promulgated by the Workers' Compensation Agency into the MCCA. The amounts under the reimbursement schedules are lower than the "reasonable amounts" currently paid through private insurance providers and thus would reduce the claim losses (and thus assessments) of the MCCA.

Another potential cost adjustment could result from injured persons who, under current law are indemnified by private insurance providers (through the MCCA), but under HB 4936 (H-2) may be covered by either Medicaid or Medicare after their benefit claims exceed their PIP limit. Both Medicaid and Medicare reimburse medical costs at significantly lower rates than the "reasonable amount" that is currently paid by private insurance providers (through the MCCA). However, it is important to note, that the coverage provided under Medicaid or Medicare would not be equivalent to coverage under private insurance.

The Michigan Assigned Claim Plan
Michigan Assigned Claim Plan (MACF) was added to the Insurance Code of 1956 by 1972 PA 294 and is administered by the Secretary of State via servicing insurers. The MACF provided indemnification for persons injured by an uninsured Michigan-registered vehicle who have no insurance of their own. Injuries sustained by the driver of the uninsured (or stolen) vehicle are not covered by the MACF. Claims approved by the

---

[3] According to the Social Security Administration; accessed at http://ssa.gov/pubs/10003.html on 10/03/2011. Note: Michigan adds $14 per month to the federal income limit.
[4] According to the Social Security Administration; accessed at http://ssa.gov/pubs/11000.pdf on 10/03/2011.
[5] According to the Social Security Administration; accessed at http://ssa.gov/pubs/10029.pdf on 10/03/2011.

MACF may be reimbursed "reasonable charges" for medical care, recovery, and rehabilitation, in addition to survivor, lost wages, and other benefits.

The MACF is supported through assessments levied on all insurers writing vehicle insurance policies within Michigan ("member insurers"). The assessment is derived (for the most part) from estimating MACF's total expenditures for the year (claim losses and administration expenses) and multiplying that number by an insurers' proportion of written vehicle insurance premiums in the most recent year.

Claims approved by the MACF are unlimited and paid in their entirety. The MACF is not reinsured by the MCCA once a claim exceeds the "catastrophic threshold" amount ($500,000 in 2011) and continues paying benefits. The reason that the MACF is not indemnified by the MCCA is due to the method used by the MCCA for determining and collecting assessments; per insured vehicle, so that uninsured vehicles are not covered by the MCCA.

HB 4936 (H-2) would have a fiscal impact on the MACF by applying the default $500,000 PIP limit to claims approved by the MACF by persons injured by an uninsured Michigan-registered vehicle who have no insurance (or no insurance that can be identified) of their own. If the injured person did purchase insurance, but the insurance company cannot meet its financial obligation, the MACF would pay claims up to the limit selected by the injured person or the lowest applicable PIP limit if the injured person's policy is disputed among several insurance companies. By applying the PIP limits, HB 4936 (H-2) would reduce the amount of losses incurred by the MACF, the expenditures for the MACF would be reduced, and thus the assessment on member insurers would be reduced.

In addition, HB 4936 (H-2) would have a fiscal impact on the MACF by reducing the number of claims and amount of losses due to injuries inflicted by uninsured drivers. Since HB 4936 (H-2) would potentially reduce the number of uninsured drivers if it reduced the cost of vehicle insurance by a sufficient amount to enable some quantity of uninsured drivers to purchase insurance. If the number of claims and amount of losses to the MACF are reduced, the expenditures for the MACF would be reduced and thus the assessment on member insurers would be reduced.

Incidental Costs

HB 4936 (H-2) would have a fiscal impact on the state General Fund to support the $50,000 appropriation for the production of informational pamphlets and a report to the Legislature.

|  |  |
|---|---|
| Legislative Analyst: | Chris Couch |
| Fiscal Analyst: | Paul Holland |
|  | Steve Stauff |
|  | Ben Gielczyk |

■ This analysis was prepared by nonpartisan House staff for use by House members in their deliberations, and does not constitute an official statement of legislative intent.

Analysis available at http://www.legislature.mi.gov     HB 4936 (Revised) as reported     Page 9 of 9