UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                Plaintiff,

v.

UNIVERSAL HEALTH GROUP, INC.
A/K/A MICHIGAN SPINE AND REHAB,
UHG MANAGEMENT, LLC,
PROFESSIONAL HEALTH SYSTEMS,
LLC A/K/A PROFESSIONAL MEDICAL
BILLING, LLC, SCOTT P. ZACK, D.C.,
DAVID M. KATZ, D.C., LOREN C.
CHUDLER, D.O., JOSEPH F. DESANTO,
HORIZON IMAGING, LLC, CLEAR
IMAGING, LLC, JEFF S. PIERCE, D.O.,
THOMAS D. CARUSO, D.O., and
KATHERINE H. KARO, D.O.,

                Defendants.

Civil Action No. 2:14-cv-10266

District Judge Steven J. Murphy III
Magistrate Judge David R. Grand

**LOREN CHUDLER, D.O.'S**
**MOTION TO DISMISS**

Loren Chudler, D.O., by and through his attorneys, KOTZ SANGSTER

WYSOCKI, P.C., submits the instant motion to dismiss pursuant to Fed. R. Civ. P.

12(b)(6), for the reasons set forth in the Brief in Support of Loren Chudler, D.O.'s

Motion to Dismiss.

KOTZ SANGSTER WYSOCKI P. C. ATTORNEYS AND COUNSELORS AT LAW

Pursuant to L.R. 7.1(a), concurrence in the instant motion was requested from opposing counsel but concurrence for the relief sought was not obtained.

KOTZ SANGSTER WYSOCKI P.C.

Dated: April 7, 2014

By: /s/  Jovan Dragovic
      Dennis K. Egan (P29116)
      Jovan Dragovic (P64578)
Attorneys for Loren Chudler, D.O.
400 Renaissance Center, Suite 3400
Detroit, Michigan  48243
(313) 259-8700 - Telephone
degan@kotzsangster.com
jdragovic@kotzsangster.com

KOTZ SANGSTER WYSOCKI P.C. ATTORNEYS AND COUNSELORS AT LAW

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                    Plaintiff,

v.

UNIVERSAL HEALTH GROUP, INC.
A/K/A MICHIGAN SPINE AND REHAB,
UHG MANAGEMENT, LLC,
PROFESSIONAL HEALTH SYSTEMS,
LLC A/K/A PROFESSIONAL MEDICAL
BILLING, LLC, SCOTT P. ZACK, D.C.,
DAVID M. KATZ, D.C., LOREN C.
CHUDLER, D.O., JOSEPH F. DESANTO,
HORIZON IMAGING, LLC, CLEAR
IMAGING, LLC, JEFF S. PIERCE, D.O.,
THOMAS D. CARUSO, D.O., and
KATHERINE H. KARO, D.O.,

                    Defendants.

Civil Action No. 2:14-cv-10266

District Judge Steven J. Murphy III
Magistrate Judge David R. Grand

**BRIEF IN SUPPORT OF LOREN CHUDLER, D.O.'S
MOTION TO DISMISS**

*Kotz Sangster Wysocki P.C. Attorneys and Counselors at Law, 400 Renaissance Center, Suite 3400, Detroit, Michigan 48243-1618*

1951.104 Doc# 172 Ver 3

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES PRESENTED ................................................................. i

STATEMENT OF CONTROLLING AUTHORITY .............................................. ii

I.   INTRODUCTION .................................................................................................. 1

II.  FACTS ..................................................................................................................... 5

III. STANDARD OF REVIEW ................................................................................... 6

IV.  ARGUMENT .......................................................................................................... 7

      A.   Concurrence in Law and Arguments Made By
          Defendants Zack and Katz in Their Brief in Support
          Of Their Motion to Dismiss ............................................................ 7

      B.   The Complaint Fails to Meet the Pleading Requirements
          of Fed. R. Civ. P. 9(b) as the Allegations Pertain to
          Loren Chudler, D.O. .......................................................................... 8

V.   CONCLUSION .................................................................................................... 21

KOTZ SANGSTER WYSOCKI P.C.  ATTORNEYS AND COUNSELORS AT LAW, 400 RENAISSANCE CENTER, SUITE 3400, DETROIT, MICHIGAN 48243-1618

## <u>STATEMENT OF ISSUES PRESENTED</u>

Dr. Chudler adopts and incorporates by reference the statement of issues presented in the Brief in Support of Defendants Katz and Zack's Motion to Dismiss, to the fullest extent applicable to the instant motion to dismiss the claims against Dr. Chudler.

KOTZ SANGSTER WYSOCKI P.C.  ATTORNEYS AND COUNSELORS AT LAW, 400 RENAISSANCE CENTER, SUITE 3400, DETROIT, MICHIGAN 48243-1618

## STATEMENT OF CONTROLLING AUTHORITY

Dr. Chudler adopts and incorporates the statement of controlling authority in the Brief in Support of Defendants Katz and Zack's Motion to Dismiss, to the fullest extent applicable to the instant motion to dismiss the claims against Dr. Chudler.

# I.   **INTRODUCTION**

After failing to convince Michigan's legislature to jettison unlimited personal protection insurance (PIP) benefits in 2013, automobile insurers, including State Farm, intensified their war on health care providers who choose to treat premium-paying policyholders who have been injured in car accidents. Defendants are victims of State Farm's elimination strategy. The insurer's focus on providers is rational – intimidate and eliminate the providers willing to treat accident victims and you will eliminate State Farm's liability for payment of PIP benefits (much more efficiently than in case-by-case litigation of no-fault claims envisioned by Michigan's comprehensive no-fault statutory scheme). In turn, the profits generated by State Farm's collection of premiums (reportedly higher in Michigan than in other states) will increase. The issue is not that State Farm is losing money. To the contrary, State Farm enjoys significant profits.[1] The issue is that State Farm (and other automobile insurers) know they can make even more if they can avoid large segments of claims by bringing actions such as these.[2]

---

[1] In a press release dated February 28, 2014, State Farm announced its 2013 financial results: $54.5 billion in earned premiums, pre-tax operating profit of $5.4 billion, and a net worth of $75 billion. See http://www.prnewswire.com/news-releases/state-farm-announces-2013-financial-results-247817121.html. This was apparently not enough.

[2] It is obvious that insurers inflict a certain amount of damage to providers simply by the RICO allegations which convey an intrinsic connotation of wrongdoing. State Farm thereby achieves some of its objective in chilling the providers' business by the attendant defamatory effect of an action such as the instant one.

Absent from State Farm's complaint is any allegation of culpability on the part of its policyholders for the alleged wrongdoing it so casually casts against the Defendants collectively. The insureds paid State Farm premiums in exchange for insurance coverage, and after an automobile accident, individually chose to seek treatment, seek legal counsel, and, in many cases, sue State Farm when their claims were contested. Of course, this inconvenient fact is ignored by State Farm because it does not support State Farm's phantasmagorical formulation of the *Universal Fraudulent Billing Enterprise* where State Farm half-heartedly implies that the Defendants billed and collected for items and services that were not provided. But the gravamen of State Farm's allegations are simply that it disagrees with the standard of treatment provided by the Defendant providers based on an undisclosed standard against which it – an insurance company, not a health care entity -- is measuring the variety of alleged "fraudulent" conduct.

State Farm freely admits in its Complaint that it adjusted all of the claims in question in the ordinary course of business. It has paid Universal Health Group, Inc. ("Universal") **fifty percent (50%) or less of the aggregate amount billed** for services provided by Universal's licensed health care providers.[3] With this action, State Farm sets its sights on recouping the amounts it has paid Universal, plus a hope of treble damages by virtue of its alleged RICO causes of action. This is a

---

[3] See Complaint, ¶¶ 9, 12, 16, and 18.

KOTZ SANGSTER WYSOCKI P.C. ATTORNEYS AND COUNSELORS AT LAW, 400 RENAISSANCE CENTER, SUITE 3400, DETROIT, MICHIGAN 48243-1618

nice deal for State Farm, if it can be accomplished.  State Farm recoups all payments made, plus triple that total, all while its insureds received treatment and benefits at the cost of the providers, and all while State Farm continues to collect premiums from the same insureds.  This is not justice; it is banditry.

Loren Chudler, D.O. is a Michigan licensed osteopathic physician.  Dr. Chudler was employed by Universal Health Group, Inc. as a physician and acted as its medical director.  He received a salary for his professional services and a stipend for his medical director services both of which did not vary based on the volume or value of the services he recommended.  Dr. Chudler was also a volunteer member of the board of directors of Universal Health Group, Inc.  None of the bills submitted to State Farm for Dr. Chudler's professional services were submitted by Dr. Chudler or collected by Dr. Chudler.  Other than his salary, Dr. Chudler did not receive any other payment or thing of value for his professional medical services to patients.

Contrary to State Farm's allegations, Dr. Chudler does not own, control, or have a financial relationship with Clear Imaging, LLC or Horizon Imaging, LLC, a fact that is known by State Farm[4], but despite which, it nevertheless alleges in its Complaint.[5]

---

[4] State Farm has continuously and repeatedly deposed Dr. Chudler in no fault cases for greater than the last five years.  In fact, in a recent deposition, a State Farm attorney engaged in discovery geared toward State Farm's allegations in the instant

KOTZ SANGSTER WYSOCKI P.C.  ATTORNEYS AND COUNSELORS AT LAW, 400 RENAISSANCE CENTER, SUITE 3400, DETROIT, MICHIGAN 48243-1618

State Farm alleges that Dr. Chudler has committed common law fraud; that he was part of a RICO enterprise committing mail fraud and a RICO conspiracy related to the same; and that he was unjustly enriched at State Farm's expense by his alleged fraudulent conduct.[6]  Out of State Farm's 256 paragraphs of purported "factual" allegations, only 53 arguably pertain to Dr. Chudler.  However, many of the paragraphs are repetitive in nature, asserting the same general allegations worded differently.  Further, the allegations largely consist of "group pleading" – they make allegations against a group of Defendants, lumping Dr. Chudler into the group, without identifying who in the group did what.  A number of the allegations are also conclusory in nature, and for the reasons discussed in the instant brief, fail to satisfy the requirements for pleading, particularly as they pertain to heightened requirements for fraud, where applicable, under Fed. R. Civ. P. 9(b).

State Farm's Complaint fails to state a claim upon which relief can be granted against Dr. Chudler and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Black's Law Dictionary 6th Ed. 1991 defines "fraudulent" as:

---

action where the attorney quoted virtually verbatim from State Farm's complaint. Dr. Chudler testified under oath that he did not own or hold an ownership interest in Universal, Clear Imaging, LLC or Horizon Imaging, LLC.
[5] See Complaint, ¶ 27.
[6] State Farm does not seek declaratory relief against Dr. Chudler.

KOTZ SANGSTER WYSOCKI P.C.  ATTORNEYS AND COUNSELORS AT LAW, 400 RENAISSANCE CENTER, SUITE 3400, DETROIT, MICHIGAN 48243-1618

> Based on fraud; proceeding from or characterized by fraud; tainted by fraud; done, made, or effected with a purpose or design to carry out a fraud.
>
> A statement, or claim, or document, is "fraudulent" if it was falsely made, or caused to be made, with the intent to deceive.
>
> To act with "intent to defraud" means to act willfully, and with the specific intent to deceive or cheat; ordinarily for the purpose of either causing some financial loss to another, or bringing about some financial gain to oneself.

State Farm describes many things in its Complaint as "fraudulent." This includes describing Dr. Chudler's evaluations of patients and orders for diagnostic services, as well as the bills and documentation for the same, as "fraudulent." But, State Farm fails to allege that Dr. Chudler made a material false representation.

## II. FACTS.

Dr. Chudler incorporates by reference the Statement of Facts in the Brief in Support of Katz and Zack's Motion to Dismiss (hereinafter "Zack Brief") with the following additions.

The Complaint alleges that there is a "Predetermined Protocol", which is addressed in the Zack Brief. Paragraph 8 of the Complaint alleges that Dr. Chudler performs evaluations which are allegedly not necessary and are not legitimate evaluations. But the Complaint does not explain why these evaluations are not necessary and are illegitimate. Instead, State Farm attaches a list of alleged

Kotz Sangster Wysocki P.C. Attorneys and Counselors at Law, 400 Renaissance Center, Suite 3400, Detroit, Michigan 48243-1618

fraudulent treatment and evaluations as Exhibits 1 and 3 to the Complaint. But note the content, just for "MH", the first patient listed:

| | | | | | Initial Diagnosis | | | | | Initial Treatment Plan | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Patient | Date of Loss | 1st Line Date Of Service | Last Line Date Of Service | Total Visits | Cervical Sprain/ Ligament Injury /Subluxation | Lumbar Sprain/ Ligament Injury /Subluxation | Thoracic Sprain/ Ligament Injury /Subluxation | Radiculo/ Radiculopathy | Prognosis Guarded | Manipulations Cervical | Manipulations Lumbar | Manipulations Thoracic | No Neuro Deficits Noted | Disability for Household Services |
| MH | 9/17/2006 | 7/31/2007 | 4/17/2009 | 50 | | | | X | * | * | * | * | X | |

State Farm simply X's off boxes, but does not explain (1) whether Dr. Chudler evaluated this patient, (2) what Dr. Chudler's evaluation was, and (3) why the evaluation is allegedly false.

The Complaint is also self-contradictory. For example, Paragraph 8 makes the blanket allegation that Dr. Chudler's evaluations were not necessary and were not legitimate medical evaluations. But when the Complaint then tries to be more specific, the broad allegations are qualified. Paragraph 10, for example, asserts that Dr. Chudler prescribes extensive physical therapy for "many" patients. Note "many", not "all." When the physical threrapy begins, the patients "typically", not "always", have already had chiropractic treatments. These words "typically", "usually" and the like appear through the Complaint, and therefore contradict the existence of the alleged "Predetermined Protocol."

### III.   STANDARD OF REVIEW

Dr. Chudler incorporates by reference the authority set forth in Section III of the Zack Brief as the applicable standard for the issues presented in the instant brief.

KOTZ SANGSTER WYSOCKI P.C. ATTORNEYS AND COUNSELORS AT LAW, 400 RENAISSANCE CENTER, SUITE 3400, DETROIT, MICHIGAN 48243-1618

# IV.   ARGUMENT

## A.   CONCURRENCE IN LAW AND ARGUMENTS MADE BY DEFENDANTS ZACK AND KATZ IN THEIR BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS.

Dr. Chudler, concurs, joins, and incorporates here by reference the law cited and the legal arguments set forth by Defendants, Scott Zack and David Katz, in Sections II. A., and B., Section III., and Sections IV. A., B., C., D., E., F., and G. of the Zack Brief.  Dr. Chudler submits that he is entitled to dismissal for the same reasons set forth therein.

Nevertheless, Dr. Chudler expounds briefly on the specific reasons State Farm has failed to plausibly allege that he "conducted the affairs" of the enterprise as discussed in Section IV. B. 2. of Zack and Katz's brief.  State Farm alleges only that: Chudler controls Universal's operations and directs others (¶¶ 5, 27). Chudler was an officer and director of Universal (¶¶ 40, 41, 65). Chudler plays a vital role in the Predetermined Protocol and receives direct financial benefit from State Farm's payments to Universal (¶¶ 66 and 67). But, Universal Health Group, Inc., as a validly existing non-profit corporation in the state of Michigan is not and cannot be the "enterprise". ("A corporation cannot become an enterprise distinct from itself for RICO purposes." *Begala v. PNC Bank,* 214 F.3d 776,781 (6th Cir. 2000)). Simply acting in the capacity as a director of the corporation does not translate into "conducting the affairs of the enterprise."  Similarly, the mere

provision of professional services for and on behalf of Universal does not in and of itself mean that Dr. Chudler "conducted the affairs of an enterprise."

**B.     THE COMPLAINT FAILS TO MEET THE PLEADING REQUIREMENTS OF FED. R. CIV. P. 9(b) AS THE ALLEGATIONS PERTAIN TO LOREN CHUDLER, D.O.**

Plaintiff's RICO claims allege mail fraud as a predicate act. Plaintiff also alleges a common law fraud claim under Michigan law. Plaintiffs must satisfy the heightened particularity requirements of Rule 9(b) with respect to the elements of fraud. "Rule 9(b) states that `[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" *Jackson v Segwick Claims Mgt. Servs., Inc.,*, 699 F.3d 466, 476 (6th Cir. 2012) (quoting *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting Fed.R.Civ.P. 9(b)). This includes alleging the "time, place, and content" of the fraudulent acts, the existence of a fraudulent scheme, the intent of the participants in the scheme, and "the injury resulting from the fraud." *Id.* (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc. (Bledsoe I)*, 342 F.3d 634, 643 (6th Cir. 2003) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993)). In addition, the Sixth Circuit has recognized that the particularity requirement of Rule 9(b) applies to cases in federal court even where state law supplies the cause of action. *See Minger v. Green*, 239 F.3d 793, 800 (6th Cir. 2001).

The elements of mail fraud are: (1) a scheme or artifice to defraud combined with (2) either a mailing or an electronic communication (3) for the purpose of executing the scheme. *VanDenBroeck v. Common Point Mortg. Co.,* 210 F.3d 696, 701 (6th Cir. 2000). An actionable scheme or artifice to defraud is an "intentional fraud, consisting in deception intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the designed end." *Id.*

In Michigan, the elements of common law fraud are: (1) the defendant made a material misrepresentation(s); (2) the representation(s) was false; (3) when defendant made the representation(s) he knew it was false, or made it recklessly; (4) defendant made it with the intention that the plaintiff would act on it; (5) the plaintiff did in fact act in reliance on the representation(s); and (6) plaintiff suffered injuries. *Brownell v Garber,* 199 Mich App 519, 533; 503 NW2d 81 (1993).

Plaintiff's complaint is no doubt voluminous at 285 numbered paragraphs. There is no question that Plaintiff provides numerous *opinions* about how Dr. Chudler provided licensed medical services to patients. Further, Plaintiff's complaint is saturated with pejorative adjectives. Plaintiff uses the word "fraud" or "fraudulent" over 70 times in the complaint in connection with allegations against

the numerous Defendants.  But merely labeling conduct "fraud" or "fraudulent"

does not suffice to satisfy the pleading requirements discussed above.

State Farm's allegations against Dr. Chudler fail to satisfy the heightened

pleading requirements of Rule 9(b). They do not:

> (1) specify the statements that State Farm contends were fraudulent,
>
> (2) identify Dr. Chudler as the maker of the alleged fraudulent statements,
>
> (3) state where and when the statements were made, and
>
> (4) explain why the statements were false.

As a result, these claims must be dismissed.

Further, the allegations are conclusory.  Black's Law Dictionary (9th edition,

2009) defines "conclusory" as [e]xpressing a factual inference without stating the

underlying facts on which the inference is based."

Analyzing State Farm's Complaint paragraph by paragraph reveals the

conclusory nature of State Farm's fraud allegations against Dr. Chudler.  The

allegations in Section I include:

- ¶1 "…[t]hese bills and supporting documents…were **fraudulent** because the services were performed pursuant to a **fraudulent** predetermined protocol."[7]

---

[7] Stated differently, State Farm's allegation is that the bills and documents were fraudulent because they were fraudulent. This an obvious tautology and is not sufficient to state a claim.

KOTZ SANGSTER WYSOCKI P.C.  ATTORNEYS AND COUNSELORS AT LAW, 400 RENAISSANCE CENTER, SUITE 3400, DETROIT, MICHIGAN 48243-1618

- ¶ 8 The evaluations[8] performed by Dr. Chudler were "not necessary" and "**not legitimate**."  The charts attached as exhibits show Dr. Chudler's "**fraudulent** evaluations for which the Defendants submitted…**fraudulent** bills and supporting documentation."

- ¶10 The "evaluations" are "**not credible**" which it equates to being "**fraudulent.**"

- ¶ 27 Defendants made "**fraudulent** MRI orders" [impliedly includes Dr. Chudler.]

Section II. 6. of the Complaint relates specifically to Dr. Chudler. The conclusory allegations in this section are:

- ¶ 66 "Chudler…plays a vital role in directing the Predetermined Protocol by reporting **fraudulent** physical examination and diagnoses…"
- ¶ 67 "Chudler receives direct financial benefits from State Farm's payments…based on the **fraudulent** bills and services…"
- ¶ 68 "The charts attached hereto…summarize the medically unnecessary [services] and the corresponding **fraudulent** charges. In each instance…Chudler has knowingly submitted…**fraudulent** bills and supporting documentation…

In Section IV. D. 3. State Farm purports to assert "Dr. Chudler's **fraudulent** initial examinations, diagnoses, and treatment plans."

- ¶ 149 "…[Chudler's] evaluations, diagnoses, and treatment plans are equally **fraudulent**, and are intended primarily, if not solely, to support the **fraudulent** diagnoses and treatment recommendations of [the chiropractors and physical therapists].[9]

---

[8] These are initial office visits of patients by Dr. Chudler.
[9] In the same breath as alleging that Dr. Chudler's **sole purpose** in his examinations, diagnoses and treatment is to support the other providers' treatment and diagnoses (also see ¶ 180), State Farm alleges that Dr. Chudler's documentation often contradicts the findings of the chiropractors and physical therapists. (See ¶ 175.)  If Dr. Chudler's sole purpose in examining patients is to

KOTZ SANGSTER WYSOCKI P.C.  ATTORNEYS AND COUNSELORS AT LAW, 400 RENAISSANCE CENTER, SUITE 3400, DETROIT, MICHIGAN 48243-1618

- ¶ 150 "…Chudler's physical examinations are…**not credible**…"[10]

- ¶ 151 "…this uniform absence of neurological deficits is **not credible**…Chudler's failure to find any focal neurological deficits is **not credible** and indicates that his physical examinations are **fabricated and fraudulent**.

- ¶ 170 "Based upon Chudler's **fraudulent** initial evaluations…Chudler prescribes physical therapy to Patients…"

- ¶ 180 "…Chudler's **sole function** is to confirm the Patients' **fraudulent** diagnoses and continue to prescribe more treatment for the Patients."

In Section IV. D. 5.:

- ¶ 202 "…MRIs ordered by Chudler…are **not individually tailored** to Patients' symptoms or needs…"

- ¶ 204 "Instead, Chudler's…sole use of the MRI findings is to merely copy and paste the results of the findings into their evaluations…They do so because their orders for MRIs are **not for legitimate** diagnostic or medical purposes."

- ¶ 216 "Chudler …[does not] make any attempt to determine whether any of the numerous purported abnormalities mentioned in Horizon's and Clear's interpretive reports have any clinical significance whatsoever for the Patient. [Chudler does] not do so because **[he] know[s] that MRI orders** and the resulting MRI "interpretations" **are merely part of the Predetermined Protocol** and **are not ordered for legitimate diagnostic or medical needs** of the Patients."

support the chiropractors' and physical therapists' findings and treatment, then the fact that he makes contradictory findings supports an inference which is precisely opposite of State Farm's assertions.
[10] The allegation that State Farm does not believe Dr. Chudler's documentation is not the same as alleging that it is false.

KOTZ SANGSTER WYSOCKI P.C. ATTORNEYS AND COUNSELORS AT LAW, 400 RENAISSANCE CENTER, SUITE 3400, DETROIT, MICHIGAN 48243-1618

Finally, Section IV. F. contains the epitome of formulaic recitation of elements. State Farm alleges its "justifiable reliance:"

- ¶ 253 "…Defendants submitted or caused to be submitted, medical records and bills, **falsely representing** that the services were performed and were medically necessary when, in fact, they were not.

- ¶ 254 "…The bills and supporting documents…submitted…in support of the **fraudulent** charges…combined with the **material misrepresentations** described above, were **designed to** and did cause State Farm to justifiably rely on them."

- ¶ 256 "Based on Defendants' **material misrepresentations** and other affirmative acts to conceal their **fraud** from State Farm, State Farm did not discover and should not have reasonably discovered that its damages were attributable to **fraud** until shortly before it filed this Complaint."

In each instance above, besides labeling Dr. Chudler's conduct as "fraudulent," State Farm fails to allege what, if anything, Dr. Chudler represented which was false and intended by him to induce State Farm to rely on the same.

When not labeling conduct as "fraudulent," State Farm asserts that conduct is "not credible." For example, State Farm criticizes Dr. Chudler's prescriptions for physical therapy.[11] But, because State Farm self-servingly chooses not to

---

[11] Although termed by State Farm as "physical therapy evaluations" these are merely office visits following which Dr. Chudler prescribed physical therapy. As State Farm knows from the numerous depositions of Dr. Chudler that its attorneys have conducted over the course of the past five to six years, Dr. Chudler rarely prescribes specific physical therapy modalities for patients, but rather prescribes that the physical therapists, whomever they may be, "evaluate and treat" which means that the physical therapists will evaluate the patients for benefit from physical therapy and determine the modalities and specific treatment.

KOTZ SANGSTER WYSOCKI P.C. ATTORNEYS AND COUNSELORS AT LAW, 400 RENAISSANCE CENTER, SUITE 3400, DETROIT, MICHIGAN 48243-1618

believe or harbors a different medical opinion[12] than Dr. Chudler does not make Dr. Chudler's examinations and documentation of them **false**. These allegations fail to assert, or even support an inference, that Dr. Chudler's documentation is false.

Similarly, State Farm criticizes Dr. Chudler's MRI orders as not credible. But State Farm fails to allege when, where, how and why any order by Dr. Chudler for an MRI was **false**.

Further still, except for conclusory passing reference that Dr. Chudler has a financial incentive to order MRIs and physical therapy[13] (an allegation which is patently false), State Farm utterly fails to allege any specific facts of the who, what, where, when, how and why, supporting an inference of scienter on the part of Dr. Chudler. To satisfy Rule 9(b) with respect to this, State Farm is required to assert facts to show that Dr. Chudler had a motive and opportunity to commit fraud, or facts that "constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290-291 (2d Cir. 2006). State Farm's allegations against Dr. Chudler fail to set forth any facts or facts supporting an inference, not mere speculation or conjecture, that Dr. Chudler acted with a mental state embracing an intention to deceive State Farm so

---

[12] State Farm's contrary opinions of medical decisions are not based on any explicit authority such as contrary opinions from similarly credentialed physicians as Dr. Chudler.

[13] See ¶¶ 5, 13, 27, 67.

that State Farm would pay him money. Aside from allegations that Dr. Chudler and the other Defendants sought to enrich themselves by engaging in the alleged "scheme," State Farm offers no facts regarding a motive by Dr. Chudler to defraud, nor any facts on which an inference of bad intent could be made. But false allegations of economic self-interest, lacking particularized facts should not be sufficient to survive a motion to dismiss.[14]

The fact that Universal provided State Farm with the medical documentation on which State Farm bases its claims eviscerates State Farm's assertion of an intention to deceive. State Farm has not alleged any fact to explain how or why it was allegedly misled by Dr. Chudler at the time the bills and medical documentation were submitted to State Farm. Nor does State Farm allege facts with respect what, if anything, State Farm discovered to lead it to conclude that Dr. Chudler's documentation, and any bills that relied on it were false.[15] Further, State Farm offers no non-conclusory statement that Dr. Chudler concealed the true nature of the findings he observed in patients or services he provided to patients, or that he rendered statements in a way that made them false.

---

[14] By the same token, State Farm's own economic self-interest (coupled with its comparative superior financial position) provides a significant motive and opportunity to bring a poorly grounded claim against the Defendants.

[15] Again, State Farm has been deposing Dr. Chudler with respect to his medical treatment of patients for over five years. What fact(s) was/were suddenly discovered by State Farm "shortly before" it filed the instant complaint that evidences Dr. Chudler acted fraudulently?

More explicitly, State Farm does not assert that a finding documented by Dr. Chudler did not in fact exist in any given patient in which Dr. Chudler observed and documented such finding. More importantly, State Farm does not assert any facts that tend to support such a conclusion or even an inference of the same. Even if State Farm did allege such facts, State Farm would still have to allege facts that at least support an inference that the finding was due to an intention to fabricate, rather than some other reason, such as mistake. But State Farm fails to allege any such facts. State Farm does not allege that services provided and documented by Dr. Chudler were not actually performed, but were nevertheless billed for and collected.

At most State Farm alleges what "legitimate" treatment of sprain/strain injuries "typically" entails.[16] Even if it did, such allegations do not assert any false representations by Dr. Chudler. State Farm also does not explain why, if Dr. Chudler's examinations, diagnoses, and treatment were so patently fraudulent, State Farm paid any claims at all and did not litigate the no fault actions of the insureds in state court as envisioned by the no-fault statutory scheme. Finally, if it

---

[16] It is interesting that in its attack on the alleged "Predetermined Protocol" for treatment, State Farm advocates for an equally "predetermined" protocol of little to no treatment, which, not surprisingly, results in an attendant elimination in charges incurred. State Farm does not reveal the source of its alleged standards of treatment from which Dr. Chudler (or anyone else) could determine the bases for State Farm's difference of opinion with respect to how Dr. Chudler examines and treats patients. Finally, State Farm offers no reason why its alleged treatment paradigm is more reasonable than Dr. Chudler's.

KOTZ SANGSTER WYSOCKI P.C.   ATTORNEYS AND COUNSELORS AT LAW, 400 RENAISSANCE CENTER, SUITE 3400, DETROIT, MICHIGAN 48243-1618

did litigate the cases, why didn't State Farm raise the issues alleged in the instant complaint in the state cases?

Neither of the affidavits attached to State Farm's complaint support any assertion of knowingly false statements made by Dr. Chudler, or any assertion of scienter. In fact, the worst thing either affidavit says about Dr. Chudler is that he "never once contacted [Dr. Tolia] to discuss the findings of [Dr. Tolia's] EDX tests or to discuss or coordinate care for any Patient."[17] But State Farm does not assert how this alleged fact makes Dr. Chudler's documentation false.

Similarly, State Farm asserts that "Dr. Chudler's purported physical examinations are cursory, largely boilerplate, and not credible."[18] State Farm alleges that Dr. Chudler's documentation of initial examinations, follow-ups, histories, diagnoses and treatment plans "contain pervasive patterns including: (a) chief complaints of pain and stiffness in multiple regions of the back and/or neck that are general and non-specific, and are typically symptoms of strained muscles (which are never diagnosed), not sprained ligaments (which are always diagnosed)…" etc.[19] But State Farm only presents what it terms "representative examples" which are very likely cherry-picked to support its conclusory allegations. Further, State Farm ignores the fact that it focuses only on cases

---

[17] See ¶ 25.
[18] See ¶ 150.
[19] See ¶ 152.

involving soft tissue injuries examined by Dr. Chudler and implies that these are the only findings Dr. Chudler ever makes on any patient. But State Farm stops short of actually alleging that Dr. Chudler's findings were not actually present in the patients he examined and treated. In other words, State Farm does not allege that Dr. Chudler's documentation is false because he documented findings that were not truly present or complained about by patients.[20] State Farm fails to allege facts outside of its own compilations based on the documents submitted to it by Universal that support a conclusion that Dr. Chudler's documentation was false or intentionally misleading. Rather, State Farm alleges that the "pattern" of findings proves that the findings are false. But, this, again like State Farm's other allegations against Dr. Chudler, is a conclusory tautology.

State Farm continues its pattern of conclusory allegations of fraud in ¶ 153 where it asserts that "Dr. Chudler's evaluations and re-eavluations contain **no true diagnoses**..." Again, instead of identifying external facts supporting why State Farm asserts that the diagnoses are allegedly false, State Farm merely states that the diagnoses "do not discuss the potential mechanism(s) of injury[21] or discuss any

---

[20] The significance of the absence of State Farm's insureds who were patients becomes more prominent when analyzing State Farm's allegations in this fashion.
[21] But Dr. Chudler does document mechanisms of injury, just not in a manner that is helpful to State Farm in denying claims.

KOTZ SANGSTER WYSOCKI P.C. ATTORNEYS AND COUNSELORS AT LAW, 400 RENAISSANCE CENTER, SUITE 3400, DETROIT, MICHIGAN 48243-1618

type of coherent proposed testing or treatment to help determine the cause,[22]

nature, and best course of treatment...Nor does Chudler attempt to consider the

various symptoms reported by Patients to create a coherent individualized

diagnostic picture and individually tailored treatment plan." Rather than facts that

tend to establish why Dr. Chudler's diagnoses are allegedly false, State Farm's

allegations are merely criticisms of Dr. Chudler's professional competence and

documentary proclivities.[23] The allegations are not sufficient to support any

element of fraud.

Similarly, State Farm criticizes Dr. Chudler for alleged "failure discuss the

significance of – much less integrate – the findings of x-rays, MRIs or EDX tests

in his treatment plans."[24] But State Farm does not discuss why or how the alleged

"failure to integrate" means that the documentation, diagnoses or treatment plans

are false or fraudulent.[25] Again, State Farm's allegations, accepted as true, do not

allege facts supporting fraud, or even supporting an inference of fraud. They are,

---

[22] Dr. Chudler documents what his patients tell him with respect to the cause of their symptoms and his findings as is established by the exhibits of representative examples of Dr. Chudler's office visit documentation attached to State Farm's complaint.

[23] See also ¶ 154, 155, 166, 203, 204.

[24] See ¶¶ 15 and 155.

[25] State Farm contradicts itself again in the allegations of its alleged RICO cause of action when it asserts that "Chudler and Universal needed Pierce, Caruso, and Karo to purportedly perform...EDX testing...to purportedly justify continued treatment..." (¶ 276). This necessarily requires Dr. Chudler to have integrated the results of the EDX testing. Either Chudler integrated the findings or he didn't. State Farm cannot have it both ways.

instead, mere criticisms of the manner and method with which Dr. Chudler practices medicine. State Farm has not provided any assertion of its qualifications to question the manner in which a licensed physician practices medicine in the state of Michigan. Even if it was so qualified, the allegations are not sufficient under Rule 9(b) to support a claim of fraud.

Despite its length and numerosity of allegations, State Farm's complaint is fatally afflicted with a dearth of actual facts sufficient to support allegations of fraud under Rule 9(b). Here, State Farm alleges few, if any, representations by Dr. Chudler, and, more importantly, no facts with which those alleged representations are inconsistent or contrary. Instead, State Farm relies on its incorrect statements of state and federal laws[26] and salacious assertions about "referral relationships and solicitation" to create an atmosphere of wrongdoing and couples it with liberal use of pejorative adjectives including, *fraud, fraudulent, false, scheme, not legitimate, not credible, predetermined, unnecessary, fabricated, improper, impossible, inflated, forbidden,* and the like to assert its criticisms against Dr. Chudler. This is not sufficient under Rule 9(b).

---

[26] State Farm misstates the plain language of MCL 333.16221 with respect to its allegations of improper self-referrals, as well as ignores the holding in *Miller v Allstate,* 481 Mich 601; 751 NW2d 463 (2008), as well as other Michigan case law with respect to State Farm's lack of standing to raise the issue of, let alone challenge, Universal's incorporation and structure in the instant action.

KOTZ SANGSTER WYSOCKI P.C. ATTORNEYS AND COUNSELORS AT LAW, 400 RENAISSANCE CENTER, SUITE 3400, DETROIT, MICHIGAN 48243-1618

For all of the foregoing reasons, State Farm's complaint fails to satisfy the pleading requirements of Rule 9(b) with respect to its allegations of fraud and mail fraud and State Farm's fraud and mail fraud claims against Dr. Chudler should be dismissed pursuant to Rule 12(b)(6).

## V.   **CONCLUSION**

For the reasons set forth in the Zack Brief, and those discussed above, Dr. Chudler respectfully requests that this Court enter an order dismissing the Complaint in its entirety against him.

KOTZ SANGSTER WYSOCKI P.C.

Dated: April 7, 2014

By: /s/  Dennis K. Egan
    Dennis K. Egan (P29116)
    Jovan Dragovic (P64578)
    Attorneys for Loren Chudler, D.O.
    400 Renaissance Center, Suite 3400
    Detroit, Michigan  48243
    (313) 259-8700 - Telephone
    degan@kotzsangster.com
    jdragovic@kotzsangster.com

KOTZ SANGSTER WYSOCKI P.C. ATTORNEYS AND COUNSELORS AT LAW, 400 RENAISSANCE CENTER, SUITE 3400, DETROIT, MICHIGAN 48243-1618

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                Plaintiff,

v.

UNIVERSAL HEALTH GROUP, INC.
A/K/A MICHIGAN SPINE AND REHAB,
UHG MANAGEMENT, LLC,
PROFESSIONAL HEALTH SYSTEMS,
LLC A/K/A PROFESSIONAL MEDICAL
BILLING, LLC, SCOTT P. ZACK, D.C.,
DAVID M. KATZ, D.C., LOREN C.
CHUDLER, D.O., JOSEPH F. DESANTO,
HORIZON IMAGING, LLC, CLEAR
IMAGING, LLC, JEFF S. PIERCE, D.O.,
THOMAS D. CARUSO, D.O., and
KATHERINE H. KARO, D.O.,

                Defendants.

Civil Action No. 2:14-cv-10266

District Judge Steven J. Murphy III
Magistrate Judge David R. Grand

## <u>**CERTIFICATE OF SERVICE**</u>

This is to certify that Loren Chudler, D.O.'s Motion to Dismiss, Brief in

Support of Loren Chudler, D.O.'s Motion to Dismiss, and this Certificate of

Service, have been served on this 7th day of April, 2014, in accordance with the

Court's Electronic Guidelines.  Notice of Electronic Filing of these documents

will be sent to all parties by operation of the Court's electronic filing system.

                /s/ Kimberly J. Presson

*KOTZ SANGSTER WYSOCKI P.C. ATTORNEYS AND COUNSELORS AT LAW, 400 RENAISSANCE CENTER, SUITE 3400, DETROIT, MICHIGAN 48243-1618*

1951.104 Doc# 172 Ver 3