UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Plaintiff,                              Civil Action No. 2:14-cv-10266

v.                                           Hon. Judith E. Levy

UNIVERSAL HEALTH GROUP, INC.       Magistrate David R. Grand
A/K/A MICHIGAN SPINE AND REHAB,
UHG MANAGEMENT, LLC,
PROFESSIONAL HEALTH SYSTEMS,
LLC A/K/A PROFESSIONAL MEDICAL
BILLING, LLC, SCOTT P. ZACK, D.C.,
DAVID M. KATZ, D.C., LOREN C.
CHUDLER, D.O., JOSEPH F. DESANTO,
HORIZON IMAGING, LLC, CLEAR
IMAGING, LLC, JEFF S. PIERCE, D.O.,
THOMAS D. CARUSO, D.O., and
KATHERINE H. KARO, D.O.,

        Defendants.
_____/

**REPLY BRIEF IN SUPPORT OF**
**<u>DEFENDANT DESANTO'S MOTION TO DISMISS</u>**

I. ARGUMENT

A. State Farm's RICO and Fraud Claims Should be Dismissed

State Farm incorrectly asserts that its Complaint satisfies Rule 9(b) pursuant to the reasoning of *JAC Holding Enterprises, Inc. v. Atrium Capital Partners, LLC,* No. 12-15450, 2014 WL 643808, at *11 (E.D. Mich. Feb. 10, 2014) and other similar cases. As stated in Defendant DeSanto's Motion to Dismiss, State Farm's Complaint fails the test identified in the relevant cases.

With respect to Defendant DeSanto, instead of identifying the "time, place and content, the nature of a defendant's fraudulent scheme, and the injury" State Farm alleges—in conclusory fashion—that Defendant DeSanto "submitted" or "caused to be submitted" fraudulent billings without attributing "specific false statements to [an] identified individual defendant[]." State Farm does not allege how Defendant DeSanto participated. See e.g. *Lou v. Belzberg,* 728 F. Supp. 1010, 1022 (S.D.N.Y. 1990) (citations omitted) ("The mere assertion that wrongful statements were made, without more, is wholly insufficient to support a claim of fraud. Moreover, when more than one defendant is charged with fraud, the complaint must particularize each defendant's alleged participation in the fraud.")

As discussed in Defendant DeSanto's Motion, the Complaint does not allege – with particularity or plausibility – how Defendant DeSanto contributed to the so-called "pre-determined protocol" or even how that protocol was fraudulent. Other

1

than supposedly being an "owner" or "controller" what did Defendant DeSanto allegedly do to establish the protocols? For which patients did Defendant DeSanto (a layperson) apply the protocol? For which patient was the protocol used? For which patient was the protocol applied to allow for unnecessary treatment? Defendant DeSanto has no way to defend this lawsuit because the Complaint does not answer any of these necessary questions.

Similarly, State Farm alleges that Defendant DeSanto was involved in organizing Universal Health Group ("Universal") as a not-for-profit although it presently operates as a for-profit. This allegation has no correlation with the alleged scheme to defraud State Farm. How does the allegation that a defendant mischaracterized a corporate structure, plausibly connect that defendant to allegations that inflated medical claims were submitted to State Farm? Moreover, even if the allegations were true, State Farm could not have been injured. At most, this would be a potential violation of Michigan's corporation laws – not something that would give rise to a private cause of action. Therefore, this allegation has no bearing whatsoever as to whether Defendant DeSanto played "some part in directing the enterprise's affairs."

The same deficiency is found with respect to the allegations of "solicitation." Assuming *arguendo* that a defendant did advise injured claimants of their medical rights and advise them of potential providers, there is no allegation

plausibly tying that activity to the RICO enterprise. Again, the conduct that State Farm alleges was wrongful and that caused State Farm injury, was the submission of inflated invoices. This is wholly-distinct from the supposed facilitation.

Further, under State Farm's own theory of liability, State Farm was injured by supposedly fraudulent billings, not by the fact that patients sought treatment (or were advised of treatment options). The "solicitation" is not the proximate of the alleged injury. Other courts have found similar allegations of patient "solicitation" insufficient to support a RICO claim. See *Allstate N.J. Ins. Co. v. Summit Pharm., Inc.,* 2014 U.S. Dist. LEXIS 61132 (D.N.J. May 1, 2014) (dismissing RICO claims and explaining that the insurer defendant could not establish an injury from similar allegations of patient solicitation). The complained of conduct did not injure State Farm and thus cannot be used to connect Defendant DeSanto to the conspiracy.

**B.    The RICO Claims are Reverse Preempted by the McCarran-Ferguson Doctrine**

State Farm argues the submission of fraudulent claims do not constitute the "business of insurance" and therefore do not satisfy the factors for reverse preemption. State Farm quotes *Merchants Home Delivery Serv. Inc. v. Frank B. Hall & Co. Inc.,* 50 F.3d 1486, 1490-91 (9th Cir. 1995) as stating "collecting money for false claims . . . is not even arguably the business of insurance." But the situation there concerned the relationship between a *self-insurer* and a claims processer. In that case, the *self-insuring* plaintiff retained an insurance broker to

process claims and the defendant billed plaintiff for uninsured claims that were never paid to claimants. The court was correct in holding that the situation it faced was not the "business of insurance." As the court explained:

> [T]hree factors [are] to be applied in determining whether a practice constitutes the business of insurance: (1) whether the practice has the effect of transferring or spreading the policyholders' risks, (2) whether the practice is an integral part of the policy relationship between the insurer and the insured, and (3) whether the practice is limited to entities within the insurance industry.

*Id.* at 1490 (citing *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129 (U.S. 1982). Here, submission of medical claims for services received as part of no-fault benefits directly implicates the business of insurance. The submission and payment of benefits under the No-Fault Act transfers and spreads risk. The submission and payment of benefits under the Act is an integral part of the relationship between Michigan's insurers and their insured, whether the claimant is the insured or otherwise. Finally, the benefits only arise from an insurance contract between an insurer and an insured.

Likewise, *United States v. Stewart,* 955 F. Supp. 385, 389 (E.D. Pa. 1997) is not on point. There, a RICO action was brought against the defendant for improperly acquiring a life insurance company. The court rightly determined that purchasing an insurance company is not the "business of insurance" under the factors identified in *Merchants Home.* This holding has no application to the present situation.

## CONCLUSION

For the reasons stated above and in his Motion to Dismiss, Defendant DeSanto respectfully requests that Plaintiff's claims against him be dismissed in their entirety.

Dated: June 16, 2014        Respectfully Submitted,

> By: /s/ Darryl Bressack
> David H. Fink (P28235)
> Darryl Bressack (P67820)
> FINK + ASSOCIATES LAW
> 100 West Long Lake Road, Suite 111
> Bloomfield Hills, MI 48304
> (248) 971-2500
> dfink@finkandassociateslaw.com
> dbressack@finkandassociateslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2014, I electronically filed the foregoing paper with the Clerk of the court using the ECF system which will send notification of such filing to all counsel of record registered for electronic filing.

> FINK + ASSOCIATES LAW
>
> By: /s/ Darryl Bressack
> David H. Fink (P28235)
> Darryl Bressack (P67820)
> 100 West Long Lake Road, Suite111
> Bloomfield Hills, MI  48304
> (248) 971-2500
> dfink@finkandassociateslaw.com