# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

State Farm Mutual Automobile
Insurance Company,

                Plaintiff,

v.

Universal Health Group, Inc.,
a/k/a Michigan Spine and Rehab;
UGH Management, LLC;
Professional Health Systems, LLC,
a/k/a Professional Medical Billing,
LLC; Scott P. Zack, D.C.; David M.
Katz, D.C.; Loren C. Chudler,
D.O.; Joseph F. DeSanto; Horizon
Imaging, LLC; Clear Imaging,
LLC; Jeff S. Pierce, D.O.; Thomas
D. Caruso, D.O.; and Katherine H.
Karo, D.O.,

                Defendants.

_____/

Case No. 14-cv-10266
Hon. Judith E. Levy
Mag. Judge David R. Grand

# OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS [45, 46, 49, 53] AND GRANTING PLAINTIFF'S MOTION TO STRIKE NOTICE OF JOINDER/CONCURRENCE [57]

This is a RICO case.  Pending are defendants Scott P. Zack, D.C.

and David M. Katz, D.C.'s motion to dismiss (Dkt. 45), Loren Chudler,

D.O.'s motion to dismiss (Dkt. 46), Universal Health Group, Inc.

("Universal") UHG Management, LLC ("UHG"), and Professional Health Systems' ("PHS") motion to dismiss (Dkt. 49), Joseph F. DeSanto's motion to dismiss (Dkt. 53), and plaintiff State Farm Mutual Automobile Insurance Company's ("State Farm") motion to strike the concurrence and joinder of defendants Jeff S. Pierce, D.O. and Thomas D. Caruso, D.O. in Zack, Katz, and Chudler's motions to dismiss. (Dkt. 57.)[1]

I.   Background

Plaintiff alleges that defendants are part of a racketeering enterprise that has the alleged purpose of fraudulently generating bills for unneeded medical services for individuals who are in automobile accidents and have Personal Injury Protection ("PIP") benefits under plaintiff's auto insurance policies. These bills are then submitted to plaintiff for payment.

The enterprise, in brief, allegedly consists of a group of doctors and their respective medical businesses, each of which work in concert to maximize billing for allegedly unnecessary treatment, largely focused

---

[1] In addition, Horizon Imaging, LLC and Clear Imaging, LLC joined in Zack and Katz's motion to dismiss. (Dkt. 47.) The disposition of Zack and Katz's motion will also address these parties' joinder.

on neck and spine injuries. Plaintiff alleges that the enterprise has been in existence in one shape or form since 2007. Plaintiff's complaint alleges that Zack was the owner of UHG, the entity that initially controlled Universal, and that Zack and Katz are officers and operators of PHS, the eventual successor-in-interest to UHG. Zack, Katz, and DeSanto are each alleged to be the owners and/or directors of the day-to-day operations of Universal.

Plaintiff accuses defendants Zack and Katz, each chiropractors, of falsely diagnosing patients with injuries through Universal. Zack and Katz then refer patients to Chudler, the Medical Director of Universal, who is accused of conducting sham examinations that consistently support the initial diagnosis and require prescriptions for extensive and unnecessary physical therapy. Zack and Katz, along with DeSanto, are also alleged to control Horizon Imaging, LLC ("Horizon") and Clear Imaging, LLC ("Clear"), which perform medically unnecessary magnetic resonance imaging ("MRI") tests. Pierce, Caruso, and Katherine Karo, D.O., as a part of this enterprise, are accused of performing unnecessary electrodiagnostic ("EDX") tests, which further increased the stream of billable procedures submitted to plaintiff. Collectively, Plaintiff refers

to these doctors and companies as Universal. The Court will refer to them as "the Universal Group."

Plaintiff's complaint is supported by several lists of what it claims are hundreds of fraudulent evaluations, assessments, treatments, and tests that the Universal Group conducted that led to bills being submitted to Plaintiff for payment. The complaint is also supported by affidavits from two doctors, Aria Sabit and Bharat Tolla, who performed some work for the Universal Group.[2]

Plaintiff requests a declaratory judgment stating that the corporate members of the Universal Group (Universal, Horizon, and Clear) are not entitled to reimbursement for any unpaid charges. Plaintiff also brings causes of action for common law fraud, unjust enrichment, and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d).

II.   Standard

---

[2] Zack and Katz attack the credibility of Dr. Sabit, citing among other things, investigations into whether Dr. Sabit engaged in fraud. (Dkt. 76.) When deciding a motion to dismiss, "[i]t is not the function of the court to weigh evidence or evaluate the credibility of witnesses." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). Instead, the Court tests only the sufficiency of the factual matter pleaded, and accepts that pleaded factual matter as true. *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014).

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III.   Analysis

Defendants, in their four motions to dismiss, raise a bevy of reasons the Court should dismiss plaintiff's claims against each of them. Because of the manner in which the motions are argued – the defendants share in and build on each other's arguments, raising new facets of the same argument in subsequently filed motions – the Court will treat the motions to dismiss as a single extended motion to dismiss, addressing the various arguments under the counts to which each argument applies.

5

## A. Plaintiff's Fraud Claim

Fed. R. Civ. P. 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."   Under this heightened pleading standard, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Indiana State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.,* 583 F.3d 935, 943-44 (6th Cir. 2009) (quotation marks and citation omitted).   A party must also identify the "alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of [the other party]; and the injury resulting from the fraud." *Coffey v. Foamex L.P.,* 2 F.3d 157, 161-62 (6th Cir. 1993).

Plaintiff alleges that all of the defendants conducted mail fraud in violation of 18 U.S.C. § 1341.  Defendants argue that plaintiff has failed to state how any of them committed fraud with the requisite particularity required of such a claim.  Ultimately, this boils down to a

6

claim that plaintiff engaged in impermissible "group pleading," and failed to specify which of the defendants engaged in fraudulent activity, and what fraudulent activity the defendants were to have engaged in.

Plaintiffs are not permitted, when asserting a fraud claim, to generally assert all claims against all defendants. *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992). "Group pleading run[s] afoul of *Central Bank* [*v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994)], [and] also fails to meet . . . Fed. R. Civ. P. 9(b)'s specificity requirements." *D.E. & J Ltd. Partnership v. Conaway*, 284 F. Supp. 2d 719, 730 (E.D. Mich. 2003).

As another court in this district recently held, when faced with a motion to dismiss for failure to plead fraud with particularity, "a court must factor in the policy of simplicity in pleading which the drafters of the Federal Rules codified in Rule 8." *Llewellyn-Jones v. Metro Property Group, LLC*, 2014 WL 2214209, at (E.D. Mich. May 27, 2014) (citing *Whalen v. Stryker Corp.*, 783 F. Supp. 2d 977, 982 (E.D. Ky. 2011) (further citations omitted). "The threshold test is whether the complaint places the defendant on sufficient notice of the misrepresentation allowing the defendants to answer, addressing in an

informed way plaintiff[']s claim of fraud." *Coffey v. Foamex L.P.,* 2 F.3d 157, 162 (6th Cir.1993).

Plaintiff has provided a nearly ninety-page description of how the defendants' alleged mail fraud worked, coupled with charts demonstrating the types of claims submitted as a part of this purportedly fraudulent enterprise. Each defendant has received sufficient notice of the misrepresentations it is alleged to have made. A party that causes a fraudulent bill to be submitted to an insurer may be as liable for fraud as the person whose name was on the fraudulent submission. *Allstate Ins. Co. v. Etienne*, 2010 WL 4338333, at *10 (E.D.N.Y. Oct. 26, 2010); *see also Fremont Reorganizing Corp. v. Duke*, 811 F. Supp. 2d 1323, 1337 (E.D. Mich. 2011) ("A person commits mail fraud if he devises a scheme to defraud, executes the scheme using the mail or causing it to be used, and acts with the intent to defraud.") (citing 18 U.S.C. § 1341).

As it did in *State Farm Mut. Auto Ins. Co. v. Physiomatrix, Inc.*, 2013 WL 509284, at *5 (E.D. Mich. Jan. 12, 2013), plaintiff has provided a listing of several hundred claims which each defendant is alleged to have contributed to or orchestrated: Zack and Katz make fraudulent

8

initial diagnoses through Universal, which was initially operated and directed through UHG and then PHS; Chudler conducts fraudulent examinations which lead to the prescription of unnecessary treatments; Pierce and Caruso fraudulently conduct unnecessary EDX tests while Zack and Katz, through Horizon and Clear, fraudulently conduct MRIs. DeSanto, as a non-doctor, works with Zack and Katz through Universal to design and direct the entire system. Each of these actions ultimately contributes to the fraudulent submission to plaintiff, in which each member has contributed in whole or in part to one of the hundreds of false representations specifically referenced in the complaint.

Accordingly, plaintiff has adequately pled that all defendants either executed or caused the execution of the mail fraud scheme at issue here.

### B. Plaintiff's RICO Claims

Defendants argue that plaintiff has failed to adequately plead RICO claims against them. Plaintiff contends that defendants violated 18 U.S.C. §§ 1962(c) and (d).

The statute states:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities

of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

Liability under § 1962(c) is determined by whether the plaintiff can establish "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 (1985).

Defendants challenge multiple aspects of plaintiff's RICO claim. The Court will address each challenge in turn.

### 1. Challenges to the Scope of the Enterprise

Plaintiff argues that the entire Universal Group constitutes an association-in-fact enterprise as defined by the Supreme Court in *Boyle v. United States.* "[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle,* 556 U.S. 938, 946 (2009).

10

Defendants' first objection to plaintiff's definition of their alleged enterprise is that it consists of a simple conspiracy, rather than a RICO enterprise. An association-in-fact enterprise "requires[s] a certain amount of organizational structure which eliminates simple conspiracies from the Act's reach." *VanDenBroeck v. CommonPoint Mortg. Co.,* 210 F.3d 696, 699 (6th Cir. 2000), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639 (2008). However, a plaintiff need only show "a continuing unit that functions with a common purpose." *Boyle*, 556 U.S. at 948. Other than simply stating that plaintiff alleges a conspiracy rather than an enterprise, defendants offer no colorable argument that plaintiff has failed to do so.

Plaintiff "delineates the specific roles and relationships of the defendants," alleges an ongoing enterprise since at least 2007, and alleges that it functioned for the common purpose of submitting fraudulent bills for reimbursement. *Ouwinga v. Benistar 418 Plan Servs., Inc.*, 694 F.3d 783, 794-95 (6th Cir. 2012). Accordingly, plaintiff has successfully pled an association-in-fact enterprise.

Next, defendants Universal, UHG, and PHS argue that plaintiff has failed to establish their role in the racketeering enterprise. These

defendants seek a near-atomic level of particularity that neither the Federal Rules nor the RICO statute require. Plaintiff has sufficiently argued that these defendants were a part of the enterprise by stating that UHG and then PHS were the corporate vehicles that ultimately controlled and directed Universal, and that Universal generated and directed, at the very least, the initial diagnoses leading to the allegedly unnecessary tests and procedures.

Finally, defendants argue that Horizon and Clear were founded in 2009, and thus cannot be a part of an enterprise alleged to have begun in 2007. There is no requirement under RICO that an enterprise remain static from the moment of its inception; members may come and go, and those who joined even years after the enterprise began are just as liable for their unlawful acts under RICO as founding members. *See, e.g.*, *Boyle*, 556 U.S. at 951 (upholding RICO liability for an enterprise member who joined three years after the enterprise began).

Accordingly, plaintiff has pled the existence of an association-in-fact enterprise consisting of all the members of the Universal Group.

## 2. Conducting the Affairs of the Enterprise

12

Defendants argue that plaintiff failed to allege that all defendants conducted the affairs of the enterprise, as required to state a RICO claim. *See* 18 U.S.C. § 1962(c) (parties may not "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."). "In order to participate, directly or indirectly, in the conduct of such enterprise's affairs, one must have some part in directing those affairs." *Reeves v. Ernst & Young*, 507 U.S. 170, 179 (1993). "This requirement confirms that the enterprise element demands evidence of a certain quantum of business-like organization – *i.e.,* a system of processes, dealings, or other affairs that can be 'directed.'" *Boyle*, 556 U.S. at 954.

Defendants' argument is essentially that the pleading is inadequate because plaintiff must draft its complaint at some level of factual detail greater than what is contained in the complaint, and that plaintiff did not use the specific phrase "conducting the affairs of the enterprise" at all times when discussing how each plaintiff conducted or participated in the conduct of the enterprise.

After a careful reading of the complaint, the Court finds that plaintiff alleged the course of conduct each defendant engaged in with

regard to the enterprise, and it has therefore sufficiently pled that each defendant had some part in directing the affairs of the enterprise.

3. The "Relationship Plus Continuity" Test

A party asserting a civil RICO claim must allege predicate acts in the preceding ten-year period that "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).  In other words, the party must show a "relationship plus continuity." *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 355 (6th Cir. 2008).   "Continuity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J.*, 492 U.S. at 240.

Defendant argues that plaintiff's allegations amount only to a "single, fraudulent scheme to accomplish a single objective," which the Sixth Circuit has held "does not possess the requisite RICO continuity." *Percival v. Girard*, 692 F. Supp. 2d 712, 722 (6th Cir. 2010) (citing *Moon v. Harrison Piping Supply*, 465 F.3d 719, 726 (6th Cir. 2006)) (further citations omitted).

14

However, *Percival* and *Moon*, which each found single schemes that failed to meet continuity requirements, are very different from this case. In *Percival*, the defendants were alleged to have prevented a single person from exercising his rights under a single settlement agreement. *Percival*, 692 F. Supp. 2d at 723. In *Moon*, the defendants were alleged to have conspired to cut a single person off from his unemployment benefits. *Moon*, 465 F.3d at 725. Neither case mirrors this case, in which plaintiff alleges that defendants conspired over the course of several years to submit fraudulent bills for hundreds, if not thousands, of patients.

Defendants seek to have the Court read the words "scheme" and "objective" at a level of abstraction that is inconsistent with RICO case law. Essentially, defendants would define an enterprise that has the purpose of repeatedly engaging in criminal conduct over a period of several years as a single "scheme" having only a single "objective" if the enterprise sought to repeatedly gain similar benefits from repeated instances of organized criminal conduct, no matter how many discrete instances it engaged in or discrete benefits it received. That is a flawed reading of *Percival* and *Moon*, which each concerned a single, discrete

15

scheme with a single goal that was not repeated and bore no threat of repetition once the goal was accomplished.

Plaintiff has sufficiently pled either a closed-ended pattern consisting of the discrete period of allegedly fraudulent submissions defendants made to plaintiff from 2007 on, or an open-ended pattern consisting of that same conduct, coupled with the threat of its indefinite continuance as long as defendants treat patients that plaintiff insures. Accordingly, plaintiff has satisfied the "relationship plus continuity" test.

### 4. Time-Barred Claims

Defendants argue that plaintiff's RICO claims are partially time-bared.

Michigan's Insurance Code requires that an insurer pay PIP benefits such as those at issue here within 30 days if an insurer receives "reasonable proof of the fact and of the amount of loss sustained." M.C.L. § 500.3142.  RICO claims must be brought within four years of the discovery of the injury giving rise to the RICO claim.  *Agency Holding Corp. v. Mally-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987); *Rotella v. Wood*, 528 U.S. 548, 555-57 (2000).  "The limitations period

for RICO claims accrues when a plaintiff knew or should have known of an injury." *Taylor Group v. ANR Storage Co.*, 24 Fed. Appx. 319, 325 (6th Cir. 2001).

Defendants argue that plaintiff either knew or should have known of each fraudulent submission paid within thirty days.   Because plaintiff paid those claims based on the "reasonable proof" defendants provided, defendants argue plaintiff is barred from bringing a RICO claim for any claim paid more than four years before the date this complaint was filed on January 21, 2014.   Because plaintiff now uses the patterns of treatment in defendants' submissions as far back at 2007 as a basis for its fraud allegations, defendants contend plaintiff should have noticed those patterns at the time of submission rather than years later.

Defendants further argue that, because plaintiff has filed other RICO suits against other defendants prior to filing this case, plaintiff should have been on notice concerning the alleged fraud here earlier.

It is premature at this stage of the litigation to dismiss a claim on statute of limitations grounds where plaintiff has plausibly pled that its claim arose within the statute of limitations.   Plaintiff contends it

learned of the fraud only shortly before it filed suit, based on depositions and evidence in other cases. Defendants' countervailing assertion is not evidence that plaintiff knew of the fraud, but instead an argument that plaintiff should have known – an argument that cannot be proved at this stage in the litigation.

Defendants' argument under the Michigan Insurance Code is unsupported by legal authority. Defendants do not allege that State Farm failed to request or review reasonable proof of each claim. Instead, they argue that any submission of proof constitutes sufficient notice of fraud, *even where the proof is itself fraudulent*. The Court can find no legal authority to support the argument that fraud itself should be considered *de facto* notice of fraud.

Finally, defendants' argument that the existence of alleged fraud of entirely different and unrelated parties, which may or may not bear resemblance to the fraud allegedly committed here, is irrelevant. Again, the Court can find no legal authority for the contention that the general discovery of fraud on the part of one party puts a plaintiff on notice as to fraud on the part of all other parties.

       5. Reverse Preemption Under the McCarren-Ferguson Act

Defendants argue that the McCarren-Ferguson Act, 15 U.S.C. § 1011, *et seq.*, "reverse-preempts" plaintiff's RICO claims. The Act provides that "[t]he business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a). It also provides that "[n]o act of Congress shall be construed to invalidate, impair or supersede any law enacted by any state for the purpose of regulating the business of insurance." Id. "The McCarran–Ferguson Act thus precludes application of a federal statute in face of state law 'enacted ... for the purpose of regulating the business of insurance,' if the federal measure does not 'specifically relat[e] to the business of insurance,' and would 'invalidate, impair, or supersede' the State's law." *Humana, Inc. v. Forsyth,* 525 U.S. 299, 307 (1999) (alteration in original) (quoting 15 U.S.C. § 1012(b)).

Defendants contend that plaintiff's RICO claims are reverse-preempted because (1) RICO does not specifically relate to the business of insurance; (2) Michigan's Insurance Code was enacted specifically to regulate the business of insurance; and (3) application of RICO would impair, invalidate, or supersede Michigan's no-fault laws.

19

The Court need not address the first two parts of the argument, as the application of RICO would not impair, invalidate or supersede Michigan's Insurance Code. Another court in this district, facing the identical argument, determined that the Insurance Code "provides for criminal prosecution and remedies for insurance fraud." *Physiomatrix*, 2013 WL 509284, at *3 (citing M.C.L. § 500.4511). As the Insurance Code provides for civil liability for fraud, the application of RICO is consistent with the Insurance Code. *Id.* (citing *Humana*, 525 U.S. at 311-12 (holding that the application of RICO was consistent with Nevada's insurance laws providing "both statutory and common-law remedies to check insurance fraud.").

### 6. Recovery for "Personal Injuries" Under *Jackson v. Sedgwick*

Defendants argue that the Sixth Circuit's decision in *Jackson v. Sedgwic Claims Mgmt. Inc.* bars recovery under RICO in this case. In *Jackson*, the Sixth Circuit held that plaintiffs seeking recovery for workers' compensation benefits were seeking recovery for personal injuries, rather than injuries to their business or property as required to state a claim under RICO, 18 U.S.C. § 1964(c). *Jackson*, 731 F.3d 556, 566 (6th Cir. 2013).

Defendants here argue that plaintiff's RICO claim is derivative of personal injuries, and is therefore barred by *Jackson*. *Jackson* does not bar a corporation that sells insurance covering personal injury claims from bringing a RICO suit, because the injuries alleged in relation to an enterprise seeking fraudulent reimbursements for services performed are to the business or property of the corporation. *See State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, 2014 WL 555199, at *2 (E.D. Mich. Feb. 12, 2014); *Allstate Ins. Co. v. Med. Evaluations, P.C.*, 2014 WL 2559230, at *1-2 (E.D. Mich. June 6, 2014).

Defendants' argument, if successful, would also have the effect of barring virtually all RICO claims by any company with business involving health insurance claims. If any claim merely *derivative* of a personal injury barred RICO liability, then not only would insurance companies be barred from seeking RICO recovery, but doctors, hospitals, and any number of nonprofits directly injured in their business dealings involving personal injuries would as well. This is not how the Court interprets the holding in *Jackson*.

7. Agreement to the Objective of a Violation of RICO

21

Defendants argue that plaintiff has failed to prove the agreement between the parties necessary to show that they conspired to violate RICO as required by 18 U.S.C. § 1962(d).   Defendants cite a Seventh Circuit case, *Goren v. New Vision Int'l, Inc.*, in support of this contention.   Plaintiff, defendants argue, failed to allege "(1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals." *Goren*, 156 F.3d 721, 732 (7th Cir. 1998).

"Unlike the general conspiracy statute, § 1962(d) requires no 'overt act or specific act' in carrying it forward." *U.S. v. Corrado*, 227 F.3d 542, 553-54 (6th Cir. 2000) (quoting *Salinas v. United States*, 522 U.S. 52, 63 (1997)).   "Supporters are as guilty as . . . perpetrators . . . so long as they share a common purpose, conspirators are liable for the acts of their co-conspirators." *Salinas*, 522 U.S. at 64. "A RICO conspirator may be convicted so long as he agrees with such other person or persons that they or one or more of them will engage in conduct that constitutes such crime." *Corrado*, 227 F.3d at 554 (quoting

22

*Salinas*, 522 U.S. at 65) (internal quotation marks and further citations omitted).

Plaintiff has adequately pled both the existence of an agreement between all members of the Universal Group to defraud it and the necessary predicate acts. Further, defendants seek to revitalize their argument that later-arriving members of a conspiracy cannot be members of the conspiracy. The Court rejects this argument, as set forth above.

### C. Application of Abstention Doctrines

Defendants argue that the Court should abstain from hearing this case under three doctrines of abstention: *Colorado River*, *Burford*, and *Wilton*. The Court will address each in turn.

### 1. *Colorado River* Abstention

Under the doctrine of abstention established in *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976), a district court may abstain from hearing cases "in situations involving the contemporaneous exercise of jurisdiction by state and federal courts." *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998) (citing *Colorado River*, 424 U.S. at 817).

In order for *Colorado River* abstention to apply, the Court must determine (1) if the state and federal cases are parallel, and (2) whether wise judicial administration justifies abstaining from hearing the federal case. *Colorado River*, 424 U.S. at 817.

To the extent defendants have made an effort to show the existence of parallel state court proceedings, they have only shown the existence of suits between former Universal Group patients, suing as individual plaintiffs, and State Farm for unpaid PIP benefits. The argument, as the Court understands it, is that because State Farm has asserted that the claims are fraudulent as an affirmative defense in the state court litigation, those state court cases are parallel to this federal case.

That is simply not so. First, the state court cases share only one party with this case: State Farm. The plaintiff in this case brings a series of claims against these defendants that will not and cannot be adjudicated in single-plaintiff state court litigation. Defendants do not argue that the adjudication of any case in state court will resolve whether they engaged in a conspiracy to defraud plaintiff.

24

Second, this case concerns either paid claims, and therefore not at issue in state court cases concerning unpaid claims, or unpaid claims, which plaintiff has stipulated will not be a part of this case if they are at issue in a state court case.  Defendants' argument for *Colorado River* abstention fails to show there is any action in state court that is parallel to this case.

Because there is no parallel state court case, the Court need not engage in the remainder of the *Colorado River* analysis.

### 2. *Burford* Abstention

Defendants also argue that the Court should abstain from hearing this case pursuant to the abstention doctrine outlined in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).  Under *Burford*,

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,* 491 U.S. 350, 361 (1989).

As a threshold matter, defendants fail to identify any ongoing proceedings or orders of *state administrative agencies* with which this case would interfere.

Defendants argue that because Michigan's no-fault insurance system is unique to Michigan, determination of any no-fault case should be left to state courts. The primary evidence relied on for the "substantial public import" prong of *Burford* abstention is the large number of state-court cases involving litigation of no-fault insurance claims.

Every owner or registrant of a motor vehicle in the state of Michigan is required to carry no-fault insurance on the vehicle in question. M.C.L. § 500.3101. Litigation will inevitably ensue on a variety of fronts as a result of automobile accidents. That there are a number of lawsuits in Michigan state courts under no-fault laws does not mean that any claim related to no-fault insurance is a matter of "substantial public import." It means that Michigan residents bring Michigan state law claims in Michigan courts. Moreover, this is not a no-fault case.

Abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l., Ltd.,* 556 F.3d 459, 467 (6th Cir.2009) (quoting *Colorado River,* 424 U.S. at 813). The fact that a law is "unique," alone, is insufficient to trigger the Court's discretion to abstain. Accordingly, defendants fail to convince the Court to abstain from hearing claims related to Michigan's no-fault insurance.

### 3. *Wilton* "Abstention"

Defendants also argue that the Court should abstain from hearing this case pursuant to the doctrine outlined in *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). In short, a Court may dismiss or stay an action in which solely declaratory relief is sought. *Id*. at 288, 290. The Supreme Court did not determine in *Wilton* whether that discretion extends to cases in which issues of federal law were raised, or where there were no parallel state court proceedings. *Id*. at 290.

The Court will not abstain here, particularly where the declaratory judgment action is inextricably dependent on and connect to the underlying substantive counts. As a matter of *Wilton*'s applicability

27

to complaints containing both a declaratory judgment action and other federal actions, such as this one, the Court does not believe it is a wise use of its discretion to decline to entertain a declaratory judgment action tied to a viable federal cause of action.

Accordingly, the Court will not abstain from hearing any of plaintiff's claims.

### D. Collateral Estoppel

Defendants argue that plaintiff is collaterally estopped from litigating issues in this case previously litigated in other cases. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980). Defendants, however, identify no prior cases and no prior issues to serve as the basis for the exercise of collateral estoppel.

### E. Voluntary Waiver

Defendants argue that plaintiff has voluntarily waived the right to contest the propriety of claims previously paid. Because Michigan's Insurance Code requires the submission of "reasonable proof" to the insurer before benefits may be paid, M.C.L. § 500.3142(2), defendants argue that the payment of any benefits constitutes a waiver as to all

claims arising from the payment, even if the payment was fraudulently gained.

Defendants cite no authority for the proposition that a reimbursement under Michigan's no-fault insurance system constitutes a waiver of claims related to the payment.

Michigan law codifies a number of fraudulent insurance acts as felonies punishable by up to ten years in prison. M.C.L. §§ 500.4503, 500.4511. There is no reasonable interpretation of Michigan law that punishes, for instance, the submission of "false information concerning any fact or thing material to [an insurance] claim," M.C.L. § 500.4503(c), but only if the claim is unpaid. In effect, defendants' interpretation of the law would only punish those who were incompetent fraudsters, letting their more intelligent or devious colleagues off the hook.

The Court will not dismiss this case on the basis of voluntary waiver.

F. Unjust Enrichment

Defendants argue that plaintiff's unjust enrichment claim is barred because the express contracts between plaintiff and the insureds

29

govern these claims. "[U]nless it is undisputed that there is an express contract between the same parties covering the same subject matter, State Farm is entitled to plead unjust enrichment as an alternative claim of relief." *Physiomatrix*, 2013 WL 509284, at *5. As plaintiff disputes the existence of an express contract between it and defendants, the claim will be permitted to go forward.

### G. The "Challenge" to Universal's Nonprofit Status

Defendant Universal argues that plaintiff is claiming Universal is unlawfully incorporated as a nonprofit entity, and seeks to have all portions of the complaint relating to that claim stricken.

Plaintiff argues that, although Universal is incorporated as a nonprofit, its real purpose is to engage in fraud with the rest of the Universal Group. Plaintiff does not dispute that Universal is properly incorporated as a non-profit, and does not seek to have its corporate status revoked or altered. Instead, plaintiff argues that the non-profit status is a ruse used to hide Universal's true nature as a key player in an enterprise that has defrauded plaintiff out of millions of dollars for the monetary benefit of its owners and operators.

Universal relies on *Miller v. Allstate Ins. Co.*, 481 Mich. 601 (2008), in support of the proposition that plaintiff may not argue that Universal's non-profit status is a sham.  In that case, an insurer attempted to directly challenge the corporate status of a health care provider the insurer believed was not legally allowed to provide health care services.  *Id.* at 606.  The question there, however, was "whether a corporation has been properly incorporated under the relevant law," not whether a purported non-profit was operating in accordance with its corporate status, and whether that alleged failure was a part of a conspiracy to commit fraud.  *Id.* at 615.

Here, plaintiff does not dispute that Universal was properly incorporated, and does not seek to revoke Universal's corporate charter. Instead, plaintiff argues that Universal is behaving contrary to its corporate status as a non-profit, and that this behavior makes it a part of an enterprise designed to defraud plaintiff.  *Miller* does not bar such a claim.  Accordingly, the Court will not strike references to Universal's alleged fraud or non-compliance with respect to its non-profit status.

H. Plaintiff's Motion to Strike Pierce and Caruso's Joinder

31

Plaintiff moves to strike defendants Pierce and Caruso's concurrence and joinder (Dkt. 52) in the motions to dismiss filed by defendants Katz, Zack, and Chudler.

Pierce and Caruso filed answers to the complaint on March 28, 2014.  (Dkt. 29, 31.)  The only other defendant to file an answer was Karo, on the same day.  (Dkt. 30.)  All other defendants filed motions to dismiss, or concurrences and joinders in the motions to dismiss of other defendants.

Fed. R. Civ. P. 12(b) states that a motion to dismiss under subsection (6) "must be made before pleading if a responsive pleading is allowed."  Pierce and Caruso's concurrence and joinder is therefore untimely under Rule 12(b)(6).

Pierce and Caruso argue that their concurrence and joinder should instead be treated as a motion for judgment on the pleadings.  A party may file a motion under Fed. R. Civ. P. 12(c) for judgment on the pleadings "[a]fter the pleadings are closed."

The pleadings in this matter are not closed, as all but three defendants have filed the instant motions to dismiss and various concurrences and joinders.  *See, e.g., Dunn-Mason v. JP Morgan Chase*

32

*Bank Nat. Ass'n*, 11-CV-13419, 2013 WL 4084676, at *4 (E.D. Mich. Aug. 13, 2013). Further, Pierce and Caruso's concurrence and joinder, if permitted, would convert the two motions to dismiss here into motions for judgment on the pleadings, even though the parties that filed the motions to dismiss have not answered. Rule 12(c) does not permit one defendant to change the procedural posture of another defendant's motion.

Accordingly, the Court will grant the motion to strike Pierce and Caruso's concurrence and joinder.

IV.   Conclusion

For the reasons stated above, it is hereby ordered that:

Defendants' motions to dismiss (Dkt. 45, 46, 49, 53) are DENIED; and

Plaintiff's motion to strike the concurrence and joinder of defendants Pierce and Caruso (Dkt. 57) is GRANTED.

IT IS SO ORDERED.

Dated: October 24, 2014                     s/Judith E. Levy
Ann Arbor, Michigan                         JUDITH E. LEVY
                                            United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 24, 2014.

s/Felicia M. Moses
FELICIA M. MOSES
Case Manager