# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

State Farm Mutual Automobile
Insurance Company,

                               Case No. 14-cv-10266

               Plaintiff,     Hon. Judith E. Levy

                               Mag. Judge David R. Grand

v.

Universal Health Group, Inc., *et al.*,

               Defendants.

_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTER-COMPLAINT [103]

This is one of a number of RICO cases brought by plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") against a variety of defendants that provide medical services to claimants under Michigan's No Fault Act in this district. Many of the defendants in this matter are also subject to a suit by Allstate Insurance Company ("Allstate"), Case No. 13-cv-15108, that similarly alleges RICO violations. Defendants, in response to plaintiff's complaint, filed a counter-complaint alleging that State Farm, Allstate, and other

insurers are engaged in a conspiracy to punish and control providers through sham litigation and price controls.  (Dkts. 94-97.)  Pending is plaintiff's motion to dismiss the counter-complaints.  (Dkt. 103.)

I.   Background

Plaintiff sued defendants on January 21, 2014, alleging that they were engaged in a conspiracy under the Racketeer Influenced and Corruption Organizations Act ("RICO").  (Dkt. 1.)  After the Court denied various defendants' motions to dismiss (Dkt. 82), those defendants who had not yet done so filed answers to the complaint on December 12, 2014.  (Dkts. 89-92.)  On December 23, 2014, and December 29, 2014, all defendants who had filed answers on December 12, 2014 filed amended complaints containing identical counter-complaints against plaintiff.  (Dkts. 94-97.)

The counter-complaints allege that defendant is involved in two conspiracies that violate the Sherman Act, 15 U.S.C. § 1: one with Allstate and unspecified other insurers to bring "sham litigation" against medical providers such as defendants, and another with other insurers to fix the reimbursement prices for MRIs performed by

2

defendants Clear Imaging, LLC ("Clear") and Horizon Imaging, LLC ("Horizon").

On February 13, 2015, plaintiff filed a motion to dismiss the counter-complaints. (Dkt. 103.) The motion is now fully briefed. Pursuant to E.D. Mich. Local R. 7.1(f)(2), the Court will determine the motion without oral argument.

## II.   Legal Standard

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.,* 684 F.3d 605, 608 (6th Cir.2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III.   Analysis

Defendants allege two violations of Section One of the Sherman Act, which "prohibits unreasonable contracts, combinations, and conspiracies in restraint of trade." *Erie Cnty., Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 867 (6th Cir. 2012) (citing *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885 (2007)). "To state a Section One claim, a plaintiff must plead more than a restraint of trade; it must plead an agreement in restraint of trade." *Id.* (citing *Twombly*, 550 U.S. at 553). Such an agreement may be proven either by direct or circumstantial evidence. *Id.*

"[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice" at the motion to dismiss stage. *Twombly*, 550 U.S. at 556. "[W]hen allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Id.* at 557. At the motion to dismiss stage, the complaining party must allege behavior such as "parallel behavior that would probably not result from chance, coincidence, independent responses to common stimuli, or mere

4

interdependence unaided by an advance understanding among the parties[.]" *Id.* at 556 n.4.

Defendants do not need to show that an unlawful agreement was probable, but instead they only need to "plausibly raise an inference of unlawful agreement[.]" *Erie Cnty.*, 702 F.3d at 869.

A. Sham Litigation Claim

Defendants claim that State Farm, Allstate, and unspecified other insurers, "[b]y parallel action and/or explicit agreement" are filing sham RICO litigation in this district and others around the country against medical providers.  (Dkt. 94 at 171.)  Defendants allege that "[r]ather than legitimate causes of action, State Farm's RICO cases against Providers are really a sham used as an implement in State Farm's scheme to leverage its market power and vast economic resources to intimidate and coerce Providers . . . ."  (Id. at 173-74.)  They also allege that "[o]ther major insurers, including Allstate, also engage in the same scheme as State Farm."  (Id. at 174.)

This, defendants argue, "evidence[s] at least a tacit understanding between State Farm and Allstate . . . to coordinate their conduct vis-à-vis Providers in Michigan, by filing federal civil actions as part of their

pattern of anti-competitive conduct." (Id. at 175.) In support of this alleged coordination, defendants provided a list of cases filed by State Farm and Allstate that defendants claim demonstrate a pattern of sham litigation. (Id. at 180-83.)

With regard to cases from this district, defendants first draw the Court's attention to *Allstate Ins. Co. v. Spine Specialists of Mich., P.C., et al.*, Case No. 13-cv-13529, and *State Farm Mut. Auto. Ins. Co. v. Spine Specialists of Mich., P.C., et al.*, Case No. 14-cv-13299.

In the *Allstate* case, Allstate and other insurers sued Spine Specialists of Michigan, P.C., and Louis Radden, D.O. on August 16, 2013, claiming that those defendants submitted fraudulent bills for unnecessary medical treatments to plaintiffs. (Case No. 14-cv-13529, Dkt. 1.) Those plaintiffs' claims for declaratory relief, unjust enrichment, and payment under mistake of fact were resolved via stipulated order on July 7, 2014. (Id., Dkt. 40.)

In the *State Farm* case, State Farm sued both defendants from the *Allstate* case on August 25, 2014. (*See* Case No. 14-cv-13529.) State Farm, under a theory similar to Allstate's in its case, brought claims for common law fraud, violation of RICO, unjust enrichment, and

6

declaratory judgment. (Id., Dkt. 1.) That complaint survived a motion to dismiss (Id., Dkt. 32), and is still pending.

Also relevant are the two active cases that defendants are involved in: this case, and *Allstate Ins. Co. v. Universal Health Group, et al.*, Case No. 13-cv-15108. In Allstate's case, it brought suit on December 17, 2013 against the defendants in this case, as well as several others, alleging a RICO enterprise similar to the one that plaintiff asserts here, among other claims. (Case No. 13-cv-15108, Dkt. 1.) That case survived motions to dismiss (Id., Dkt. 229) and settled on April 27, 2015 as to many of the defendants in this case. (Id., April 27, 2015 Dkt. Entry.)

Defendants also reference, in their response to this motion, several other cases filed by plaintiff and Allstate. In *State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C., et al.*, Case No. 07-cv-00051 (E.D.N.Y. Jan. 5, 2007), plaintiff sued various providers under claims similar to those at issue in this case; that case settled in late 2007. (Id., Dkt. 77.) In *Allstate Ins. Co., et al. v. Hisham Elzanty, et al.*, Case No. 11-cv-03862 (E.D.N.Y. Aug. 11, 2011), Allstate sued some of the same defendants under some theories similar to those in the prior *State Farm*

case.  That case survived two motions to dismiss and eventually settled in late 2014.  (Id., Dkt. 277.)

The other cases defendants provide, both from this district and others, show a pattern of either plaintiff or Allstate suing a group of providers under the umbrella of common law fraud and RICO, and then the other insurance company eventually suing some or all of the same providers, asserting similar theories.  (*See generally* Dkt. 106-1.)

Before reaching the issue of whether the litigation defendants cite is sham litigation, the Court must determine whether defendants have plausibly raised the inference of an unlawful agreement to bring sham litigation.  In the light most favorable to defendants, and on review of their counter-complaint and the exhibits provided in support of their argument, they have not plausibly raised an inference of an unlawful agreement between State Farm and Allstate.

As previously stated, "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice."  *Twombly*, 550 U.S. at 556.  "[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."  *Id*. at 557.  At most, defendants allege "parallel action and/or explicit agreement," and state

8

that plaintiff and Allstate's tactics "evidence at least a tacit understanding" that they will bring alleged sham litigation. (Dkt. 94 at 171, 175.) The allegation of an agreement between the two parties is, at best, conclusory. Defendants' counter-complaint not only focuses almost entirely on plaintiff's conduct, alone and apart from any purported agreement with Allstate, but it is concerned largely with defendants' objections to the manner and direction of plaintiff's litigation activities, rather than any actual agreement plaintiff might have with Allstate to conduct those activities.

Further, the Court cannot infer from review of the complaints and course of litigation in the cases to which defendant refers any evidence of an agreement that advanced beyond plaintiff and Allstate engaging in conscious parallelism with their litigation. The lawsuits do not appear to constitute "parallel behavior that would probably not result from chance, coincidence, independent responses to common stimuli, or mere interdependence unaided by an advance understanding among the parties." Instead, they appear to constitute two large companies engaged in the same business in the same area, dealing with the same

providers, acting, at most, interdependently in their pursuit of litigation by monitoring the activities of the other.

Court filings are public records. As defendants lay out in their counter-complaint, companies such as plaintiff are constantly scouring their providers for indicia of potential fraud. That search certainly includes looking at public court dockets. Sometimes, Allstate sues a group of providers, and then plaintiff follows; other times, the opposite happens (if it does at all). The complaints that plaintiff and Allstate file, regardless of whether they are "sham" filings or legitimate, are extensive, tailored to the particular dealings both companies have with providers, and frequently involve different defendants. Sometimes the second suit comes while the first is still pending, while others are filed months or years after the first case settles.

Defendants do not need to plead with particularity the nature of the alleged agreement between plaintiff and Allstate for their claim to survive. However, similarly situated insurance companies suing similar providers for similar relief does not, by itself, an agreement or

conspiracy make.  Defendants' allegations lack any context that would give rise to a suspicion of an agreement.[1]

Defendants' allegation of a conspiracy is conclusory, and cannot survive a motion to dismiss.[2]

### B. MRI Price Fixing

Defendants Clear and Horizon allege that plaintiff, along with other insurers, engaged in a price-fixing conspiracy.  They allege that in December 2011, and January 2012, "the major private auto insurers [State Farm, Allstate, and Liberty Mutual] consistently began paying reduced reimbursements to Clear Imaging and Horizon Imaging, and upon information and belief, other MRI providers."  (Dkt. 94 at 176.)  In particular, Clear and Horizon allege that "the major insurers consistently paid approximately $1,500-$2,500.00 less than Clear's and Horizon's reasonable and customary charges."  (Id.)

---

[1] The Court also notes that defendants did not seek to join Allstate as a party in this suit, and did not raise these antitrust allegations against Allstate in the other suit before settling with Allstate.  When parties alleging conspiracy completely avoid involving one of the alleged conspirators in their counter-suit, despite multiple opportunities to do so, it raises the suspicion that the claim of conspiracy is not a legitimate, good-faith allegation, but instead an effort to frustrate the claims of the named "conspirator."

[2] Because the Court determines that defendants have failed to plausibly plead that an agreement existed between plaintiff and Allstate, it need not reach the issue of whether plaintiff's lawsuits constitute "sham" litigation.

The issue with Clear and Horizon's allegations, which constitute three paragraphs of their complaint, is that they lack context giving rise to an inference of an agreement or conspiracy. Clear and Horizon do not state what their reasonable and customary charges were, how long they charged those prices, whether adjustments such as those alleged are customary or out of the ordinary in the auto insurance industry, or give any context to the range of payments they received after the alleged change in reimbursement policies.

These omissions are important because most, if not all, of this information is or should be in the possession of Clear and Horizon. At this stage, an antitrust allegation should proceed if a party can "raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 550 U.S. at 556. At this juncture, Clear and Horizon have alleged only that they charged insurers a certain amount for MRIs, and in a two-month period, three or more insurers began paying them less than they were charging. The amount the payments were lowered diverged by up to a thousand dollars. Clear and Horizon's counter-complaint does not reveal what the resulting reimbursement

payments were, or how closely the reimbursement decreases mirrored each other.

Clear and Horizon argue in their response that there existed a "statistical improbability that the reimbursement amounts of the major insurers would track each other so significantly."  (Dkt. 106 at 41.) They also refer vaguely to "[d]ata" that allegedly supports their claims. (Dkt. 94 at 176.)  The Court is required to take defendants' allegations as true.  However, by failing to provide the alleged data or a summary thereof, or any other context that would tend to show that the insurers' adjustments were indicative of potential collusion, the Court is left only with the conclusory allegation that insurers "have agreed, at least tacitly, if not explicitly" to price-fix MRI reimbursements.  (Id.)

Accordingly, Clear and Horizon have failed to adequately and plausibly plead a violation of § 1 of the Sherman Act.

### C. Leave to Amend

Defendants seek leave to amend their counter-complaint pursuant to Fed. R. Civ. P. 15 if the Court dismisses any or all of their claims. The Court grants defendants leave to refile their counter-claims within twenty-eight days of this opinion being issued.

IV.   Conclusion

For the reasons stated above, it is hereby ordered that:

Plaintiff's motion to dismiss the counter-complaints (Dkt. 103) is GRANTED;

Defendants' counter-complaints are DISMISSED WITHOUT PREJUDICE; and

Defendants are granted twenty-eight days to file amended counter-complaints.

IT IS SO ORDERED.

Dated: May 1, 2015                   s/Judith E. Levy
Ann Arbor, Michigan                  JUDITH E. LEVY
                                     United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 1, 2015.


                                     s/Felicia M. Moses
                                     FELICIA M. MOSES
                                     Case Manager